# EXHIBIT 5

**PLAINTIFF'S APPENDIX OF MISTATMENTS OF FACT, INACCURACIES
AND OMISSIONS IN JUSTICE COOPER'S SEPTEMBER 18, 2015 DECISION**

    Plaintiff Anthony Zappin ("Zappin") hereby submits this Appendix to his October 28, 2015 Order to Show Cause.  The chart below plots the misstatements of fact, inaccuracies and material omissions contained in Justice Cooper's September 18, 2015 Decision in *Zappin v. Comfort*, Index No. 301568/14.

| Misstatements in the September 18 Decision | Contrary Evidence or Fact |
|---|---|
| Justice Cooper states:<br><br>    Throughout most of the litigation, plaintiff [Zappin] has represented himself ….<br><br>(September 18 Decision at 4.) | Zappin was represented by *Feldesman Tucker Leifer Fidell LLP* at the time of commencement of the action and entry of the November 20, 2013 Consent Order ("Consent Order") in *Zappin v. Comfort*, Case No. 2013 DRB 3821 pending in the Superior Court for the District of Columbia ("DC Superior Court").  (*See* App. Ex. A, Nov. 13, 2013 Complaint and Emergency Motion; App. Ex. B, Nov. 20, 2013 Consent Order.)<br><br>Zappin was represented by Ronald Colbert, Esq. subsequent to *Feldesman Tucker*.  (*See* App. Ex. C, Cover Page of Feb. 7, 2014 Tr.)<br><br>Zappin was represented by *Aronson Mayefsky & Sloan LLP* at the commencement of this litigation until July 2014.  (*See* App. Ex. D, eCourts Print-out.)<br><br>Zappin was represented by *Stein & Ott LLP* after the Court set trial dates in March 2015.  (*See id*.)<br><br>Zappin has been assisted and represented by David Schorr, Esq. since July 2014.  (*See id*.; App. Ex. E, eCourts Update E-mail.) |

| | |
|---|---|
| Justice Cooper states:<br><br>Plaintiff's [Zappin] difficulties as an attorney *pro se* began in the Superior Court of the District of Columbia, where the parties entered into a "Consent Order" on November 20, 2013.<br><br>(September 18 Decision at 4.) | Zappin was represented by *Feldesman Tucker Leifer Fidell LLP* entry of the Consent Order. (*See* App. Ex. 2, Nov. 20, 2013 Consent Order.)  This is evidenced by Katherine O'Rourke's signature on the Consent Order as Zappin's counsel.  (*See id*. at 3.) |
| Justice Cooper states:<br><br>[P]laintiff agreed to have no contact with defendant [Claire Comfort] ….<br><br>(September 18 Decision at 4.) | The Consent Order provided for contact between Zappin and Defendant Claire Comfort ("Comfort") concerning the child. (*See* App. Ex. B, Nov. 20, 2013 Consent Order.) |
| Justice Cooper states:<br><br>In a decision dated April 7, 2014, Superior Court Judge Anthony Epstein found that a motion brought by plaintiff [Zappin] was "replete with intemperate and uncivil language about which the Court previously cautioned him."<br><br>(September 18 Decision at 4.) | Justice Cooper has never reviewed the motion papers referred to by Judge Epstein.<br><br>The motion papers are attached hereto as Appendix Exhibit F.  It is unclear what is "intemperate and uncivil" in these motion papers, particularly considering it is a sanctions motion.<br><br>Justice Cooper fails to note that Zappin moved to disqualify Judge Epstein because Z███████████████████<br>████████████████████████████████<br>███████████████████ |

| | |
|---|---|
| Justice Cooper states:<br><br>Judge Epstein, in a decision dated May 28, 2014, in which he denied plaintiff's motion to reconsider his prior ruling, referred to an incident where he believed plaintiff had engaged in inappropriate conduct.<br><br>(September 18 Decision at 4-5.)<br><br>There is little question that the manner in which plaintiff spoke to Justice Kaplan, or for that matter, what he wrote to Judge Epstein in the District of Columbia proceeding, Constitutes a breach of the Rules of Professional Conduct.<br><br>(September 18 Decision at 10.) | Zappin presented evidence on October 31, 2014 that the purported "handwritten note" was not sent by him.  (*See* App. Ex. G, Excerpt of Oct. 31, 2014 Habeas Corpus Reply.)  The issue was not raised against for well-over a year until the canard was resurrected by Justice Cooper in the September 18 Decision.<br><br>Justice Cooper fails to note that Judge Epstein made no finding that Zappin sent the "handwritten note," did not impose any sanction or otherwise state that Zappin violated any rule.<br><br>Justice Cooper improperly makes a factual finding that Zappin sent the "handwritten note" without giving Zappin an opportunity to present evidence or be heard on the issue. |
| Justice Cooper states that Zappin make "contemptuous remarks directed at Justice [Deborah] Kaplan" at a hearing on March 3, 2015.  (September 18 Decision at 6.)<br><br>Justice Cooper quotes an excerpt of the March 3, 2015 hearing:<br><br>THE COURT:  Is there anything else, Mr. Zappin?<br><br>MR. ZAPPIN:  Yeah, your Honor.  I am tired of these lies coming from you on the record. ***The Motion about Dr. Ravitz was not fully briefed and you know that.  And you put in [sic] your order.  You put it in your order that I withdrew the*** | Justice Cooper fails to mention that the issues identified by Zappin on the record on March 3, 2015 were admitted by Justice Kaplan to be misrepresentations.  Specifically, she issued an order on March 4, 2015 amending the February 27, 2015 with respect to the issues raised in the emphasized text from the March 3, 2015 hearing transcript.  (*See* Ex. H, Mar. 4, 2015 Amended Order.)[1]<br><br>Justice Cooper fails to note that Justice Kaplan did not sanction Zappin, hold him in contempt or otherwise make any reference to his statements at the March 3, 2015 hearing.  Instead, Justice Kaplan apparently thought that the inaccuracies in the February |

---

[1] Notably, on pages 6-7 of the September 18 Decision, Justice Cooper quotes from the original rather than amended portion of the February 27, 2015 order.

| | |
|---|---|
| ***Article 78 proceeding after the attorney general had filed responsive papers. That's not true.*** He filed after I filed a notice of discontinuance.<br><br>(Mar. 3, 2015 Tr. at 21:24-22:6 (emphasis added); September 18 Decision at 5.) | 27, 2015 Order were so material that she issued an amended order the very next day. |
| Justice Cooper states:<br><br>Although plaintiff [Zappin] has repeatedly charged that he is being deprived of a prompt hearing to determine whether his access to the child must remain supervised, the record shows that he has acted in a manner actually designed to prevent such a hearing from happening.<br><br>(September 18 Decision at 6.) | The record shows that nearly all of the delay in this proceeding is attributable to Comfort and/or AFC Harriet Cohen.  (*See* Oct. 27, 2013 Zappin Aff. at Section V.) |
| Justice Cooper states:<br><br>After plaintiff [Zappin] interrupted the custody trial by discontinuing the action, only to then reinstate it, Justice Kaplan sought new dates for the trial to continue.<br><br>(September 18 Decision at 7.)<br><br>Despite these pronouncements, plaintiff [Zappin] persists in filing applications for interim relief and seeking discovery as if the case were in its early stages while ignoring the fact that ***the child custody and access trial … is set to resume imminently*** with a final decision to be rendered soon thereafter.<br><br>(September 18 Decision at 8 (emphasis added).) | The September 15, 2014 hearing was on the limited issue of supervised access, not a "custody trial" as proclaimed by Justice Cooper:<br><br>An expedited hearing will be held on the ***limited issue of supervised visitation*** on September 15 and 16, 2014.<br><br>(Aug. 8, 2014 Order at 13 (emphasis added).)<br><br>Two days later, in a decision and order dated August 8, 2014, the court directed that a hearing take place ***on the question of whether the husband's access time with the child should continue to be supervised***. |

| | |
|---|---|
| | (Feb. 27, 2015 Order at 9 (emphasis added).)<br><br>Additionally, Justice Cooper fails to note that a Habeas Corpus proceeding concerning custody of the child was filed concurrently with the discontinuation of the matrimonial action in October 2014.  Further, the notice of discontinuance was vacated in November 2014.  Yet, Justice Kaplan did not set "new dates for the trial to continue" until several months later on February 13, 2015.  (*See* App. Ex. 9, Feb. 13, 2015 Order.) |
| Justice Cooper states:<br><br>By an order dated February 13, 2015, she [Justice Kaplan] directed that the trial resume on ***March 6, 2015***.  However, the trial did not forward as scheduled and was adjourned to May, apparently at plaintiff's request.<br><br>(September 18 Decision at 7 (emphasis added).) | The February 13, 2015 Order directed that the evidentiary hearing on supervised access be recommenced on ***March 5, 2015***.  (*See* App. Ex. I, Feb. 13, 2015 Order.)<br><br>Trial dates for arch were adjourned at Comfort's request due to a "very important client meeting" at Weil Gotshal & Manges LLP on March 5, 2015 and conflicts with her counsel on other dates in March 2015.  (*See* Oct. 27, 2015 Zappin Aff. at Section V.)  Likewise, trial dates for April were adjourned because AFC Harriet Cohen claimed that they conflicted with her European vacation.  (*See id*.) |
| Justice Cooper states:<br><br>When May approached, plaintiff delayed the trial again.<br><br>(September 18 Decision at 8.) | Zappin's former employer, Mintz Levin, requested the adjourned of the trial.  (*See* Oct. 27, 2015 Zappin Aff. at Section V.)  The matter was delayed form some seven (7) months at the request of AFC Harriet Cohen.  (*See id*.) |

| Justice Cooper states: | Justice Cooper fails to mention that Comfort has served well over **15 subpoenas** in the past few months. (*See generally* Mot. Seq. #15.) |
|---|---|
| Within the last few weeks, he reportedly has served at least 14 new subpoenas, including one on defendant's attorney and one on the law firm where defendant is employed. | Justice Cooper fails to mention that the subpoena to Weil Gotshal & Manges LLP seeks relevant evidence concerning Comfort's plagiarizing domestic abuse allegations from a *pro bono* case she worked on at the firm. (*See* App. Ex. J, Weil Gotshal Press Release.) |
| (September 18 Decision at 8.) | Justice Cooper fails to mention that the subpoena to Weil Gotshal & Mangers LLP seeks relevant evidence concerning Comfort's alcoholism, including poor performance reviews and other documentation that she showed up to work and client meetings drunk and/or hungover. In one instance, Comfort went to a client meeting hungover with her clothes inside out. (*See* Comfort Pre-Separation Text Messages to Dr. Alan Ravitz.) |
| | Justice Cooper fails to mention that he bases his statement off an unsolicited e-mail sent from Ms. Comfort's counsel, Robert Wallack. (*See* App. Ex. K, Aug. 27, 2015 E-mail from R. Wallack.) |
| Justice Cooper states: | Justice Cooper fails to mention that Comfort has acknowledged being diagnosed and treated for mental illness and alcoholism as far back as college. (*See e.g.,* Nov. 15, 2013 Decl. of C. Comfort.) |
| Plaintiff [Zappin] has also made demands for defendant's medical records from doctors who treated her as far back as college. | |
| (September 18 Decision at 8.) | |

| Justice Cooper states:<br><br>    As that strategy has proven increasingly unsuccessful, plaintiff's tactic, and the language he employs in his motion papers, have grown evermore extreme and out of step with what is appropriate and permissible advocacy by an attorney, even one who is representing himself.<br><br>(September 18 Decision at 9.) | Justice Cooper fails to cite a single example of inappropriate or "extreme" language in my motion papers anywhere in his September 18 Decision.  Justice Cooper's assertion is false. |
|---|---|
| Justice Cooper states:<br><br>    His numerous forays into other courts include recently filing a petition against defendant in New York County Family Court; suing defendant, her family and her lawyers in the Federal District Courts for the Southern District of New York and the District of Columbia; and bringing Article 78 proceedings in the Appellate Division against the judges who have been assigned to this case ….<br><br>(September 18 Decision at 9, fn. 2.) | Zappin has never filed an action in "Federal District Court for … the District of Columbia."<br><br>Zappin filed a single Article 78 proceeding against Justice Deborah Kaplan to expedite the conclusion of the September 15, 2014 hearing on supervised access.  *See Zappin v. Kaplan*, 2013 NY Slip Op 07775 (1st Dept. 2014).  Zappin has not filed plural "Article 78 proceedings" against "judges."<br><br>Justice Cooper fails to mention the litany of litigations Comfort has filed across ***three jurisdictions***:<br><br>   •  *Comfort v. Zappin*, Case No. 13-2-4105-2 (Superior Court of Pierce Cnty., WA);<br><br>   •  *Comfort v. Zappin*, Case No. 2013 CPO 4492 (DC Superior Court);<br><br>   •  *Comfort v. Zappin*, Index No. 301578/2014 (Sup. Ct. New York Cnty., NY); and<br><br>   •  *Comfort v. Zappin*, Index No. 313020/2014 (Sup. Ct. New York Cnty., NY). |

| | |
|---|---|
| | Justice Cooper fails to mention that Comfort and her counsel have filed no less than 5 requests for orders of protection that have either been summarily denied or dismissed after Comfort failed to appear at an evidentiary hearing.<br><br>Justice Cooper fails to mention that Comfort refuses to dismiss the DC Superior Court custody action because she is seeking child support in that jurisdiction – which has a higher rate of 23% of gross income as opposed to 17% in New York. |
| Justice Cooper states:<br><br>    [P]laintiff is now representing himself in the New York State Court of Claims in a case entitled *Anthony Zappin v. State of New York*.  In that case he seeks damages for what he alleges are wrongs committed against him by a judge and court officer of the New York State Unified Court System, both of whom he contends are guilty of "assault & battery," "false arrest/imprisonment," and "civil conspiracy to commit assault & battery and false arrest/imprisonment."<br><br>(September 18 Decision at 9, fn. 2.) | Justice Cooper deliberately fails to mention that the Court of Claims action was filed against Justice Kaplan and her court officer after they engaged an unprovoked assault on Zappin after a court hearing on April 24, 2015.  (*See* App. Ex. L, April 28, 2015 Court of Claims Complaint.)  Zappin suffered extensive injuries.  (*See id*. at Ex. A.) |
| Justice Cooper states:<br><br>    Regrettably, plaintiff has treated his opposing counsel, Robert Wallack, Esq., in the same offensive and patently improper manner.  Justice Kaplan criticized plaintiff for having submitted papers in which he included | Justice Cooper fails to mention that the "submission" at issue was a letter to the Court explaining that Mr. Wallack had made materially false statements to the Court that his computer was broken preventing him from serving papers on Zappin as order by the Court on Friday August 1, 2014 and prejudicing Zappin's ability to submit a reply on the return date of August 6, 2014.  In fact, Mr. Wallack had been posting pictures to his Instagram in |

| | |
|---|---|
| "irrelevant, personal information about the wife's counsel."<br><br>(September 18 Decision at 10.) | his bathrobe the night before the opposition papers were due and had no "computer problems."  (*See* App. Ex. M, Aug. 2, 2014 Ltr. from A. Zappin.) |
| Justice Cooper states:<br><br>As I set forth in my July 22, 2015 decision, he [Zappin] persisted in sending Mr. Wallack and his associates taunting emails referring to Mr. Wallack's personal life and relationships.<br><br>(September 18 Decision 11.) | Zappin has ***never*** sent taunting e-mails to Mr. Wallack's associates.<br><br>Zappin's supposed "taunting e-mail" to Mr. Wallack was in response to a horrifically taunting e-mail from Mr. Wallack to Zappin.  Specifically, in response to Zappin's 22 NYCRR 202.7 e-mail noticing opposing counsel that he intended to seek interim relief concerning the welfare of the child, Mr. Wallack condescendingly responded:<br><br>So, it's a motion to prohibit you from having contact [with the Child]?<br><br>(App. Ex. N, May 8, 2015 E-mail from R. Wallack.) |
| Justice Cooper states:<br><br>[Zappin] refus[ed] to pay even one dollar of the fees incurred by Ms. Cohen for her services …<br><br>(September 18 Decision at 12.) | Zappin paid AFC Harriet Cohen's initial retainer of $5,000.<br><br>Justice Cooper fails to mention that there were substantial issues of fraud and attorney misconduct raised concerning AFC Harriet Cohen's billing practices.  (*See* App. Ex. O, May 19, 2015 Zappin Sur-Reply to Mot. Seq. #12.)  Zappin made numerous requests to confer with AFC Harriet Cohen about the issues with her bills, but she refused.  (*See id*.) |

| Justice Cooper states: | AFC Harriet Cohen's fee application was filed on March 3, 2015 |
|---|---|
| In spite of the threats made to her by plaintiff, the AFC pressed her claim by moving for an order directing plaintiff to pay her the many thousands of dollars he owes.  True to his word, plaintiff responding by "swiftly and publicly" retaliating against Ms. Cohen and her law firm.  He did so by having Zappin Enterprises … register the internet domain name www.harrietnewmancohen.com.  (September 18 Decision at 13.) | and fully submitted on May 15, 2015.  The website www.harrietnewmancohen.com was not registered until months later on July 15, 2015.  Justice Cooper's characterization of a "swift and public" retaliation is false. |
| Justice Cooper states: | Zappin is not listed as an "owner" or "member" of Zappin Enterprises and is not the registered agent.  (*See* App. Ex. P, WV SOS Entry for Zappin Enterprises.) |
| Zappin Enterprises, a company which lists plaintiff and his father as its owners and plaintiff as its designated agent, and is run from the same West Virginia address where plaintiff claimed to have lived when he left New York ….  (September 18 Decision at 13.) | The address for Zappin Enterprises is a commercial address of 809 21st Street, Huntington, WV.  (*See id.*)  Zappin's residential in West Virginia is 1827 Washington Blvd., Huntington, WV.  However, Zappin never used a "West Virginia address" in this proceeding and Justice Cooper relied on AFC Harriet Cohen's conclusory assertions in his September 18 Decision. |
| Justice Cooper states: | The quotes recited by Justice Cooper were private e-mails from Zappin's father, Jeffrey Zappin, to AFC Cohen: |
| The purpose of the website was chillingly clear from the various *posting* made under the name of plaintiff's father's name.    Illustrative of these *postings*, and indicative of the whole nature of the enterprise, are the following messages: | |

10

| | |
|---|---|
| Harriet. You're a very sick and greedy woman. I pray for you and hope you seek help.<br><br>I intend to keep the public apprised of your misconduct and disturbing behavior.<br><br>Quickly climbing up the Google rankings. Stay tuned for updates.<br><br>(September 18 Decision at 14 (emphasis added).) | 4. I had also received threatening and harassing emails on July 16th, purportedly emanating from the email account of Anthony Zappin's father, who was staying in Anthony Zappin's residence. They read as follows:<br><br>Email dated July 16, 2015, 1:01 a.m., Subject: Reid Zappin: "Harriet You're a very sick and greedy woman. I pray for you and hope you seek help. Jeff;"<br><br>Email dated July 16, 2015, 3:35 a.m., Subject: Reid Zappin: "Harriet My company now owns www.harrietnewmancohen.com, I intend to keep the public apprised of your continued misconduct and disturbing behavior. Jeff;" and<br><br>Email dated July 16, 2015 10:35 a.m., Subject: Harriet Cohen's New Website: "www.harrietnewmancohen.com. Quickly climbing up the Google rankings. Stay tuned for updates. Jeff Zappin." (Emphasis added.)<br><br>(App. Ex. Q, Excerpt of Sept. 2, 2015 Cohen Aff. at ¶ 4 (Mot. Seq. 19).) No defamatory statements were ever published on the website. |
| Justice Cooper states:<br><br>No sooner than I had made my rulings [on AFC Harriet Cohen's fee application on July 22, 2015], plaintiff, in what the AFC termed a clear act of retaliation, had Ms. Cohen served with a subpoena.<br><br>(September 18 Decision at 14-15.) | AFC Harriet Cohen admitted that the subpoena *duces tecum* was served at the July 22, 2015 hearing and prior to the Court's rulings. (*See* App. Ex. Q, Excerpt of Sept. 2, 2015 Cohen Aff. at ¶ 1 (Mot. Seq. 19).) It therefore could not have been "retaliatory" in nature for the Court awarding AFC Harriet Cohen fees. |
| Justice Cooper states:<br><br>The subpoena [served on AFC Harriet Cohen] demand that she produce a wide range of documents from her case file.<br><br>(September 18 Decision at 15.) | The subpoena *duces tecum* served on AFC Harriet Cohen did not ask for "documents from her case file. Instead, it sought two categories of documents: (i) receipts showing Comfort's payments to her as AFC Harriet Cohen had admitted to writing off fees for Comfort; and (ii) the source of a falsified text message purportedly sent by Zappin to Comfort attached to a motion paper submitted by AFC Harriet Cohen. (*See* App. Ex. R, Sept. 3, 2015 Zappin Sur-Reply (Mot. Seq. #19).) |

| | |
|---|---|
| Justice Cooper states:<br><br>Never once in [Zappin's] letter does he mention that the psychiatrist [Dr. Aaron Metrikin] was court-appointed pursuant to an order signed by Justice Kaplan on September 12, 2014.<br><br>(September 18 Decision at 17.) | Justice Kaplan's September 12, 2014 Order makes clear that Dr. Aaron Metrikin was ***retained*** by Dr. Aaron Metrikin, not court-appointed.  (*See* App. Ex. S, Sept. 12, 2014 Order.) |
| Justice Cooper states:<br><br>Never once does [Zappin] mention that the rate the psychiatrist as to be paid is specified in Justice Kaplan's order, the fee being set by the court, not by the doctor himself.<br><br>(September 18 Decision at 17.) | AFC Harriet Cohen's September 11, 2014 improper letter application to the Court makes clear that the rate of $700 was set and requested by Dr. Aaron Metrikin.  (*See* App. Ex. T, Sept. 11, 2014 Ltr. from H. Cohen.) |
| Justice Cooper states:<br><br>And never once does plaintiff mention that Justice Kaplan's order provides that the reason for the appointment [of Dr. Aaron Metrikin] is to enable the AFC to have her own expert review the report of the forensic evaluator and observe his testimony, something generally referred to as a "peer review."<br><br>(September 18 Decision at 17.) | Zappin's letter of August 7, 2015 letter to the Office of Professional Medical Conduct ("OPMC") makes clear that AFC Harriet Cohen did retain Dr. Metrikin to "peer review" the forensic custody report:<br><br>Ms. Cohen has stated that [Dr. Aaron Metrikin] has been retained to "assist [her] in [the] review of Dr. Alan Ravitz's forensic [child custody] report …."<br><br>***<br><br>First and foremost, Dr. Metrikin does not possess any relevant medical experience that would enable him to do a ***peer review of a forensic child custody report***. |

| | |
|---|---|
| | (App. Ex. U, Aug. 7, 2015 Ltr. to OPMC (emphasis added).) |
| Justice Cooper states:<br><br>As it turns out the OPMC acted swiftly on plaintiff's complaint against the doctor by finding the complaint was **without merit** and dismissing it less than three weeks after it was filed.<br><br>(September 18 Decision at 18.) | The OPMC's August 27, 2015 letter made no determination of the merits of the complaint. Instead, it was dismissed because the OPMC lacked "authority and jurisdiction" to entertain the complaint against Dr. Aaron Metrikin. (*See* App. Ex. V, Aug. 27, 2015 OPMC Letter.) |
| Justice Cooper states:<br><br>Plaintiff apparently has no problem adhering to a double standard in this litigation. On one hand, he has complained about any mention of the law firm where he is employed, contending that it will jeopardize his position there … On the other hand, plaintiff has issued subpoenas to the law firm where defendant is employed, regularly mentions defendant's law firm by name in his papers, and has attached as an exhibit to a prior motion a copy of an internal memo from her firm.<br><br>(September 18 Decision at 18.) | Justice Cooper mentioned the name of my former employer publicly in open court. (*See* July 22, 2015 Tr. at 11:13-14, 28:8-21.) To the extent Zappin has mentioned Comfort's employer, it has been in sealed papers. *See* Domestic Relations Law 235.<br><br>Zappin never attached an "internal memo from [Comfort's] firm." Instead, Zappin attached a print-out from AbovetheLaw.com with Weil Gotshal & Manges LLP's bonus scale. (*See* Aug. 10, 2015 Aff. of Zappin at ¶ 10.) |

| Justice Cooper states: | Neither the child's pediatrician nor the Court said anything of the sort.  Instead, the Court quoted from a prognosis of the child's physical therapist, who the child was referred to after Ms. Comfort failed to seek treatment for his torticollis at birth: |
|---|---|
| In my July 22, 2015 decision, I detailed the fact that there was nothing in the record to indicate that the child suffered from any developmental issues, and that all the evidence firmly established that he is a healthy, thriving infant, who, in the words of his pediatrician, "will reach developmental milestones in a timely fashion."<br><br>(September 18 Decision at 24.) | The May 1, 2014 report, this was an exhibit attached to Mr. Zappin's motion, it is clear:  "mild developmental delay of gross motor skills."  Below that, "Patient will reach developmental milestones in timely fashion in neutral positioning of cervical spine."<br><br>(July 22, 2015 Tr. at 21:13-17.)  It is unknown whether the child reached the prognosis because, as Justice Kaplan noted, Ms. Comfort "stopped therapy for the child after she met with Dr. Ravitz but right before the [forensic custody] report issued." (Jan. 9, 2015 Tr. at 10:8-11.) |
| Justice Cooper states:<br><br>Rather, it is the AFC advocating on behalf of her client, the child by seeking to have him avoid needless medical exams or unwarranted, and very likely harmful, intervention by the police or ***child protection officials.***<br><br>(September 18 Decision at 25 (emphasis added).) | AFC Harriet Cohen has continually "advocated" for the child to be subject to constant, "needless" and "very likely harmful" ***child protection officials***, through arguing for Zappin's supervised access with the child. |

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true to the best of my knowledge.

Dated:        October 27, 2015
              New York, NY

ANTHONY ZAPPIN

Sworn to before me this
27th day of October, 2015

Notary Public

Pendak J. Ravi
Notary Public, State of New York
No. 02RA6301488
Qualified in New York County
Commission Expires November 18, 2018

15

# APPENDIX

# EXHIBIT A

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Family Court
Domestic Relations Branch

ANTHONY ZAPPIN

        *Plaintiff,*

v.

CLAIRE COMFORT

        *Defendant.*

2013 NOV 13  PM 12 42

Case No. 13 DRB 3 & 2 A 1

## EMERGENCY MOTION FOR *EX PARTE* HEARING
## AND IMMEDIATE RETURN OF MINOR CHILD TO FATHER

Plaintiff, Anthony Zappin, by and through his attorneys, Jonathan M.
Dana, Katherine A. O'Rourke and Feldesman Tucker Leifer Fidell LLP,
hereby moves the Court for an *ex parte* hearing and an order commanding
Defendant, Claire Comfort, to immediately return the minor child to his
father in the District of Columbia.

1.     Plaintiff incorporates herein in its entirety his Verified
Complaint for Custody, For Emergency Return of Minor Child To Father, and
Other Related Relief.

2.     On November 10, 2013, Defendant, without Plaintiff's consent or
authorization and with no justifiable reason took the parties' minor child,
█████ Comfort Zappin █████ or "minor child"), who is less than six-weeks old,
from the District of Columbia to Washington State.

3.     Since Defendant left the District of Columbia with █████
Plaintiff has made repeated attempts to reach Defendant to determine

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

1



whether and when Defendant will return Reid to their home.  On November

11, 2013, Defendant stated that she did not have a flight back to D.C.  She

further asserted that "I want you to know that Reid and I have arrived safely

in Seattle...You might be right that I am slightly unstable right now after the

hellacious month that I have endured.  But I am committed to getting the

help that I need right away."  She further stated that "I have told ███ ████ hat

his daddy loves him very much.  I know that you are angry with me.  I hope

that someday you will be able to understand and find space in your heart to

forgive me."  (See Attachment 1)

      4.    On November 11, 2013, Defendant did not respond to Plaintiff's

messages and at one point, she turned off her phone altogether.  On

November 12, 2013, Defendant asserted that she will return with ███ ███ n

January of 2014, however, due to Defendant's history of mistruths, Plaintiff

does not believe that Defendant will ever return to D.C. with Reid.  In fact,

Plaintiff is confident that Defendant, through prodding and planning by her

parents (her father is an attorney licensed in Washington State and it

appears he pre-planned the removal of Defendant and the parties' son from

the District), intends to establish jurisdiction in Washington State so that she

can secure sole custody of Reid, and forever irreparably diminish Plaintiff's

role in ███ life.

      5.    Plaintiff is very concerned about ███ well-being as Defendant

has a history of mental health issues and alcohol misuse, including nursing

███ after having had several drinks.  Moreover, Plaintiff is concerned for

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

███ safety and well-being because Defendant has been suffering from post-partum depression since ███ birth and has been acting erratic and in some instances irresponsibly toward ███ care.   Plaintiff has no way of ascertaining whether ███ is in danger or ensuring ███ well-being. Without court intervention, Defendant will not return to the District of Columbia with ███ The District of Columbia has a vested interest in ensuring that the safety and security of this tiny child is not compromised.

**WHEREFORE**, Plaintiff, Anthony Zappin, respectfully requests that the Court order that Defendant, Claire Comfort, immediately return the parties' minor child, ███ Comfort Zappin, to the Plaintiff in the District of Columbia.

Respectfully submitted,

Jonathan M. Dana, #384622
Katherine A. O'Rourke, #475923
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, N.W., Fourth Floor
Washington, D.C. 20036
(202) 466-8960 (tel.)
(202) 293-8103 (fax)

*Attorneys for Plaintiff*

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

3

# IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## Family Court
### Domestic Relations Branch

| | |
|---|---|
| ANTHONY ZAPPIN | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| CLAIRE COMFORT | ) |
| | ) |
| *Defendant.* | ) |

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

1.  The Uniform Child-Custody Jurisdiction and Enforcement Act, D.C.

    Code §16-4601, *et. seq.*

2.  The record in this case.

3.  The attached supporting documents.

Respectfully submitted,

Jonathan M. Dana, #384622
Katherine A. O'Rourke, #475923
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, N.W. Fourth Floor
Washington, D.C. 20036
(202) 466-8960 (tel.)
(202) 293-8103 (fax)
*Attorneys for Plaintiff*

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

4

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Family Court**
**Domestic Relations Branch**

ANTHONY ZAPPIN                                )
                                              )
                    *Plaintiff,*              )
                                              )
v.                                            )        Case No.
                                              )
CLAIRE COMFORT                                )
                                              )
                    *Defendant.*              )

## ORDER

UPON CONSIDERATION OF the Emergency Motion for *Ex Parte*

Hearing and Immediate Return of Minor Child to Father, it is on this _____

day of November, 2013, hereby

**ORDERED** that Defendant, Claire Comfort, immediately return the

parties' minor child, █████ Comfort Zappin, to his father, Plaintiff Anthony

Zappin, in the District of Columbia.


_____
Judge, Superior Court for the District of Columbia

Copies to:

Jonathan M. Dana, #384622
Katherine A. O'Rourke, #475923
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, N.W., Fourth Floor
Washington, D.C. 20036
*Attorneys for Plaintiff*

Claire Comfort
238 Summit Drive
Fircrest, Washington 98466
*Defendant*

< Messages    **Claire**        Contact

Yesterday 3:28 PM

I want you to know that ███ and I have arrived safely in Seattle.  Reid was very calm and happy during the flight.  I nursed him during both takeoff and landing to protect his ears from the altitude change.

iMessage                    Send



‹ Messages     **Claire**     Contact

You might be right that I am slightly unstable right now after the hellacious month that I have endured. But I am committed to getting the help that I need right away.  I believe that making every effort to provide ███ with at least one happy and well-adjusted parent is the greatest gift that I can give him right now.  I hope that you join me in seeking the help that you need to achieve the same end.

iMessage     Send

●●○○○ AT&T LTE     3:08 PM     🔋 ▮▭

**‹ Messages**     **Claire**     Contact

I have told  that his daddy loves him very much. I know that you are angry with me. I hope that someday you will be able to understand and find space in your heart to forgive me.

When is your flight back?

I don't have one yet

📷 iMessage     Send

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of November, 2013, a copy of

Plaintiff's Emergency Motion for *Ex Parte* Hearing and Immediate Return of

Minor Child to Father Verified was hand-delivered to:

Claire Comfort
238 Summit Drive
Fircrest, Washington 98466
*Defendant*

Katherine A. O'Rourke, Esq
*Attorney for Plaintiff*

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
9th Floor
Washington, DC 20036
el 202.466.8960
ax 202.293.8103
www.FTLF.com

7

# IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## Family Court
### Domestic Relations Branch

2013 NOV 13  PM 12 33

ANTHONY ZAPPIN
1612 5th Street, N.W.
Apt. #2
Washington, D.C. 20001

       *Plaintiff*,

v.

CLAIRE COMFORT
1612 5th Street, N.W.
Apt. #2
Washington, D.C. 20001

       *Defendant*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **13 DRB 3821**

## VERIFIED COMPLAINT FOR CUSTODY, FOR EMERGENCY RETURN OF MINOR CHILD TO FATHER, AND OTHER RELATED RELIEF

Plaintiff, Anthony Zappin, by and through his attorneys, Jonathan M. Dana, Katherine A. O'Rourke and Feldesman Tucker Leifer Fidell LLP, states as follows in support of his Verified Complaint for Custody, for Emergency Return of Minor Child to Father, and Other Related Relief.

1.    The parties married on May 2, 2013 in New York City, where they were living and working at the time.

2.    On October 6, 2013, the parties' child, ▆▆▆ Comfort Zappin, ▆▆▆ or "minor child") was born in New York City.

3.    The parties relocated to the District of Columbia shortly after the birth of the minor child. Plaintiff is employed in the District as an

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1529 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

1



associate attorney for the law firm of Latham and Watkins LLP. Defendant is employed by the law firm of Weil Gotshal and Manges LLP; she is currently on a four-month maternity leave.

4.      On September 30, 2013, the parties closed on a condominium in the District of Columbia and then moved into it on October 21, 2013, when Reid was just 15 days old.

5.      On November 10, 2013, Defendant took the parties' five week old child across the country to Tacoma, Washington without Plaintiff's consent, and with no justifiable reason. Plaintiff made it clear to his wife that taking the child from the District of Columbia was against his will and without his legal consent. (See Attachment 1, "Claire, you're making a bad situation impossible. I ask that you come to your senses and not take that baby across the country and harm him. Regardless of what you think about me he deserves better than this. Your behavior is becoming increasingly erratic and unstable. I'm very very concerned about my son.")

## Background

6.      The parties have had a difficult marriage. Prior to the marriage and for most of Defendant's pregnancy, Defendant has struggled with alcohol misuse. This impacted the parties such that it caused Defendant to mistreat Plaintiff both physically (slapping, scratching and hitting him) and emotionally throughout their relationship. While Defendant did finally stop drinking during the last trimester, she has started drinking again, while

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

- 2 -

nursing. Moreover, it appears that Defendant is suffering from postpartum depression and has asserted to Plaintiff on numerous occasions that she is unstable and in need of professional help. Given the circumstances, her ability to care for a five week old baby is significantly compromised.

7.      Prior to Defendant's abrupt departure on Sunday, November 10, 2013, Defendant had been increasingly erratic and unstable. She left the minor child in soiled diapers for hours at a time, refused to burp the minor child (even when it was clear that he was filled with gas and very uncomfortable), and on occasion, has fallen asleep with the minor child in bed and, on at least one occasion, the minor child fell off the bed and landed on the floor. On another occasion, Plaintiff came home from work to a very strong smell of Marijuana permeating the home while the minor child was napping. In addition, Defendant frequently drinks and then nurses the minor child.

8.      Defendant's parents have greatly interfered in the parties' relationship and with the minor child. Defendant's parents (Plaintiff's in-laws) upon information and belief, instigated, planned and abetted Defendant in her ill-advised move to Tacoma, Washington, in order to deny Plaintiff reasonable access to Reid and to deprive Reid of his father. The in-laws have taken on a role and have interfered with Plaintiff's parenting relationship with Reid to a degree that is against Reid's best interests. To allow this arrangement to be prolonged is not in the minor child's best interest.

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

- 3 -

9.     On November 11, 2013, Defendant shut off her phone and Plaintiff did not have direct access to her.  On November 12, 2013, when contact was re-established, Defendant informed Plaintiff that she would be returning to D.C. in January of 2014 but she gave Plaintiff no specific date or time and offered no indication of when Plaintiff could see his son.  Due to Defendant's history of mistruths, Plaintiff is skeptical that Defendant will ever return to the District of Columbia and that unless the court issues an order for his return, Plaintiff's relationship with his son will be irreparably injured.

10.     This is an untenable situation.     Plaintiff has no way of ascertaining whether ███████ is in danger or ensuring ███████ well-being. Plaintiff is concerned for Reid's safety and well-being because Defendant has been suffering from postpartum depression and has a lengthy history of misusing alcohol. Defendant's care of ████ has been an area of great concern for Plaintiff, and an area of tension between the parties.

### Child Custody

11.     It is in Reid's best interest to be returned and remain in the care and custody of the Plaintiff.  For ██████ very short life, Plaintiff has been involved in every aspect of his care.  Plaintiff is a fit and proper parent to provide the care and support that his very young son requires and deserves.

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

- 4 -

12.     Conversely, at this point in time, Defendant is not a fit and proper person to have custody of the minor child.  Although Plaintiff believes that a part of Defendant loves her child, Defendant's significant mental health issues and alcohol misuse, have limited her ability to be a stable and nurturing parent.  In addition, Defendant's recent actions in taking the parties' child clearly demonstrate that Defendant is unable to think rationally and reasonably.

13.     While the parties have only resided in the District of Columbia ("District") for three weeks, there are significant connections between the parties and the District and no other state has jurisdiction.  The parties purchased property in the District and Plaintiff is employed here.  The parties' doctors[1] are in the District, and many of Plaintiff's and Defendant's friends live here as well.  Moreover, Defendant went to college at Georgetown University and lived in the District from July 2009 to October 2011.  Many of Defendant's social network is in the District.  Indeed, Defendant chose to have her baby shower in the District of Columbia in August 2013, despite the fact that the parties were still living in New York City at the time.

14.     Plaintiff has not participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the minor child.

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

_____

[1] Reid is scheduled for his six-week doctor's visit at Howard University's Pediatric Department this coming week of November 18, 2013.  Defendant is scheduled for her follow-up doctor's visit with her physician next Thursday, November 21, 2013.

15.    Plaintiff knows of no other proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, or adoptions.

16.    Plaintiff knows of no other person not a party to this proceeding who has physical custody of the child or claims rights of legal custody or physical custody, or visitation with the child.

WHEREFORE, Plaintiff, Anthony Zappin, respectfully requests that the Court:

A.    Issue an immediate Order requiring Defendant to return the parties' child to the District within five (5) days of said Order or, in the alternative, set an emergency hearing immediately on the issue of the minor child's return to the District;

B.    Award him sole legal and joint physical custody of the minor child, both *pendente lite* and permanently or, in the alternative, set an immediate hearing on issues related to the custody of the minor child;

C.    Grant such other relief that the Court may deem just and proper, including costs and attorney fees related to this action.

FELDMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8329
www.FTLF.com

- 6 -

## VERIFICATION

I solemnly swear or affirm under criminal penalties for the making of a false statement that I have read the foregoing Verified Complaint for Custody, for Emergency Return of Minor Child to Father, and Other Related Relief and that the factual statements made in it are true to the best of my personal knowledge, information and belief.

Anthony Zappin

Respectfully submitted,

Jonathan M. Dana, #384622
Katherine A. O'Rourke, #475923
Feldesman Tucker Leifer Fidell LLP
1229 20th Street, N.W., Fourth Floor
Washington, D.C. 20036
(202) 466-8960 (tel.)
(202) 293-8103 (fax)
*Attorneys for Plaintiff*

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

- 7 -



●●○○○ AT&T  LTE          3:06 PM

< Messages      **Claire**          Contact

Yesterday 12:16 AM

Claire you're making a bad situation impossible. I ask that you come to your senses and not take that baby across the country and harm him. Regardless of what you think about me he deserves better than this. Your behavior is becoming increasingly erratic and unstable. I'm very very concerned about my son.

iMessage                    Send

# APPENDIX

# <u>EXHIBIT B</u>

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Family Court**
**Domestic Relations Branch**

ANTHONY ZAPPIN,                          )
                                         )
              Plaintiff,                  )        2013 DRB 3821
                                         )        Judge Jennifer Di Toro
      v.                                  )        Related Cases:
                                         )
CLAIRE COMFORT,                          )
                                         )        Next Event:
              Defendant.                  )
                                         )                      NOV 2 0 2013

## CONSENT ORDER

By the agreement of the parties, this 20ᵗʰ day of November, 2013, it is hereby **ORDERED** as follows:

**ORDERED**, that Plaintiff shall not assault, threaten, harass, or stalk Defendant and/or the parties' minor child or destroy Defendant's property; and it is further

**ORDERED**, that Plaintiff shall stay at least 100 feet away from Defendant's person, workplace, vehicle, and, except as necessary for visitation with the child as expressly set forth herein, wherever she is residing; and it is further

**ORDERED**, that Plaintiff shall not contact Defendant, either directly or indirectly through a third party, in any manner, including (but not limited to) by telephone, in writing, or in any other manner, except the Plaintiff may email Defendant about their minor child or their mutual financial obligations relating to their jointly-owned real property, and as additionally provided herein relating to videoconferencing with the parties' minor child; and it is further

**ORDERED**, that temporary legal and physical custody of the parties' minor child, ▮▮▮▮▮ Comfort Zappin (born October 6, 2013) is awarded to Defendant, Claire Comfort, until further order of this Court; and it is further

FaceTime (or other similar technology), on Mondays, Wednesdays, and Fridays, at some time between 7PM and 9PM Eastern time, and initiated by Defendant, her parents, or another party designated by Defendant; provided, however, that during this access Plaintiff shall direct all comments to the minor child and shall not direct any statements toward Defendant, and either party may record the video and/or audio component of these sessions; and it is further

**ORDERED**, that the parties shall undergo a forensic custody evaluation (to include psychological testing) with a mutually-agreed custody evaluator, and that the parties shall file a motion with this Court setting forth the specific terms of such evaluation ~~at a later date~~; and it is further *by December 4, 2013*

**ORDERED**, that the parties shall move to dismiss without prejudice their respective domestic violence petitions, Case No. 13-2-4105-2 (*Comfort v. Zappin*) in the Superior Court of Washington for Pierce County; and Case Nos. 2013 CPO 4446 (*Zappin v. Comfort*) and 2013 CPO 4492 (*Comfort v. Zappin*) in this Court, by November 29, 2013.

**So ordered.**

Jennifer A. Di Toro, Associate Judge

Seen and Agreed:

Katherine O'Rourke
Counsel for Plaintiff

Matthew B. Andelman
Counsel for Defendant

3

# APPENDIX
# EXHIBIT C

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
FAMILY DIVISION

- - - - - - - - - - - - - - - x
                              :
ANTHONY ZAPPIN,               :    Docket Number: 2013 DRB 003821
        Petitioner,           :
                              :
                              :
    vs.                       :
                              :
                              :
CLAIRE COMFORT,               :
        Respondent.           :
                              :    Friday, February 7, 2014
- - - - - - - - - - - - - - - x    Washington, D.C.


          The above-entitled action came on for a hearing

before the Honorable ANTHONY C. EPSTEIN, Associate Judge,

in Courtroom Number 101.


              APPEARANCES:

              On Behalf of the Petitioner:

              RONALD A. COLBERT, Esquire
              Washington, D.C.

              On Behalf of the Respondent:

              MATTHEW B. ANDELMAN, Esquire
              Washington, D.C.


                                              14-00673

Deposition Services, Inc.
12321 Middlebrook Road, Suite 210
Germantown, MD 20874
Tel: (301) 881-3344  Fax: (301) 881-3338
info@DepositionServices.com  www.DepositionServices.com

# APPENDIX
# EXHIBIT D

# New York State Unified Court System



## *WebCivil Supreme - Case Detail*

Add to eTrack

| | |
|---|---|
| Court: | **New York Civil Supreme** |
| Index Number: | **301568/2014** |
| Case Name: | **ZAPPIN, ANTHONY vs. COMFORT, CLAIRE** |
| Case Type: | **Contested Matrimonial** |
| Track: | **Standard** |
| RJI Filed: | **02/20/2014** |
| Date NOI Due: | |
| NOI Filed: | |
| Disposition Date: | **10/15/2014** |
| Calendar Number: | |
| Jury Status: | |
| Justice Name: | **COOPER, MATTHEW F.** |

Attorney/Firm For Plaintiff:

**ADAM TURBOWITZ/ARONSON MAYEFSKY & SLOAN, LLP**  Attorney Type: **Attorney Of Record**  Atty. Status: **Inactive**  Inactive Date: **07/09/2014**
**485 LEXINGTON AV, 27TH FL**
**NEW YORK, NY 10017**
**212 521-3500**

**ANTHONY ZAPPIN, ESQ**  Attorney Type: **Attorney Of Record**  Atty. Status: **Active**
**194 W 10TH ST, #D1**
**NEW YORK, NY 10014**
**304 654-6195**

**STEIN & OTT, LLP**  Attorney Type: **Attorney Of Record**  Atty. Status: **Inactive**  Inactive Date: **05/07/2015**
**305 MADISON AV, 47TH FL**
**NEW YORK, NY 10165**
**212 867-7770**

**ANTHONY ZAPPIN - Prose**  Attorney Type: **Pro se**  Atty. Status: **Active**

**DAVID EVAN SCHORR**  Attorney Type: **Attorney Of Record**  Atty. Status: **Active**
**115 EAST 87TH STREET #6A**
**NEW YORK, NY 10128**
**917-756-5983**

Attorney/Firm For Defendant:

**WALLACK/WALLACK FIRM, PC**  Attorney Type: **Attorney Of Record**  Atty. Status: **Active**
**777 THIRD AV, 21ST FL**
**NEW YORK, NY 10017**
**212 223-1300**

**HARRIET COHEN/COHEN RABIN STINE SCHUMANN LLP**  Attorney Type: **Attorney Of Record**  Atty. Status: **Active**
**11 TIMES SQUARE 10TH FLOOR**
**NEW YORK, NEW YORK 10036**
**(212) 512-0825**

Close  Show Appearances  Show Motions

# APPENDIX

# EXHIBIT E

10/27/15, 3:33 PM



Anthony Zappin <anthony.zappin@gmail.com>

# eTrack Supreme: ZAPPIN, ANTHONY vs. COMFORT, CLAIRE (301568/2014) Updated

**eCourts@nycourts.gov** <eCourts@nycourts.gov>
To: anthony.zappin@gmail.com

Tue, Sep 15, 2015 at 3:28 PM

Index Number: 301568/2014
The following case which you have subscribed to in eTrack has been updated. Changes from the last update are shown in red and are annotated.

Court: New York Civil Supreme
Index Number: 301568/2014
Case Name: ZAPPIN, ANTHONY vs. COMFORT, CLAIRE
Case Type: Contested Matrimonial
Track: Standard
Upstate RJI Number:
Disposition Date: 10/15/2014
Date NOI Due:
NOI Filed:
Calendar Number:
RJI Filed: 02/20/2014
Jury Status:
Justice Name: COOPER, MATTHEW F.

Attorney/Firm for Plaintiff:
ADAM TURBOWITZ/ARONSON MAYEFSKY & SLOAN, LLP
485 LEXINGTON AV, 27TH FL
NEW YORK, NY 10017
Attorney Type: Attorney Of Record
Status: Inactive

Attorney/Firm for Plaintiff:
ANTHONY ZAPPIN, ESQ
194 W 10TH ST, #D1
NEW YORK, NY 10014
Attorney Type: Attorney Of Record
Status: Active

Attorney/Firm for Plaintiff:
STEIN & OTT, LLP
305 MADISON AV, 47TH FL
NEW YORK, NY 10165
Attorney Type: Attorney Of Record
Status: Inactive

Attorney/Firm for Plaintiff:
ANTHONY ZAPPIN - Prose

Attorney Type: Pro se

Case 1:16-cv-05985-KPF   Document 26-5   Filed 11/08/16   Page 45 of 215

Status: Active

<span style="color:red">Attorney/Firm for Plaintiff:</span> --- *Information updated*
<span style="color:red">DAVID EVAN SCHORR</span> --- *Information updated*
<span style="color:red">115 EAST 87TH STREET #6A</span> --- *Information updated*
<span style="color:red">NEW YORK, NY 10128</span> --- *Information updated*
<span style="color:red">Attorney Type: Attorney Of Record</span> --- *Information updated*
<span style="color:red">Status: Active</span> --- *Information updated*

Attorney/Firm for Defendant:
WALLACK/WALLACK FIRM, PC
777 THIRD AV, 21ST FL
NEW YORK, NY 10017
Attorney Type: Attorney Of Record
Status: Active

Attorney/Firm for Defendant:
HARRIET COHEN/COHEN RABIN STINE SCHUMANN LLP
11 TIMES SQUARE 10TH FLOOR
NEW YORK, NEW YORK 10036
Attorney Type: Attorney Of Record
Status: Active

Last Appearance:
Appearance Date: 09/09/2015
Appearance Time:
On For: Motion
Appearance Outcome: Adjourned
Justice: COOPER, MATTHEW F.
Part: IAS MOTION 51
Comments: 9:15 A.M.
OSC IN PT.51

Future Appearances:
Appearance Date: 10/02/2015
Appearance Time:
On For: Supreme Trial
Appearance Outcome:
Justice: COOPER, MATTHEW F.
Part: IAS PRE-TRIAL 51
Comments: 9:15 A.M.
TR;11/12-17,11/19,20
Appearance Date: 10/02/2015
Appearance Time:
On For: Motion
Appearance Outcome:
Justice: COOPER, MATTHEW F.
Part: IAS MOTION 51
Comments: 9:15 A.M.
OSC IN PT.51
Appearance Date: 10/02/2015
Appearance Time:
On For: Motion
Appearance Outcome:
Justice: COOPER, MATTHEW F.
Part: IAS MOTION 51
Comments: 9:15 A.M.

# APPENDIX

# EXHIBIT F

Filed
D.C. Superior Court
04/04/2014 15:42PM
Clerk of the Court

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Family Court
### Domestic Relations Branch

| | | |
|---|---|---|
| ANTHONY ZAPPIN | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 13 DRB 3821 |
| | ) | Judge Anthony Epstein |
| | ) | |
| CLAIRE COMFORT | ) | Next Event: |
| | ) | Status Hearing: March 5, 2015 |
| *Defendant*. | ) | |

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER FOR THE CRCC SUPERVISOR DEPOSITIONS DUE TO SCHEDULING CONFLICT CREATED BY DEFENDANT'S BAD FAITH

Pursuant to Dom. Rel. Rule 26(c), Plaintiff Anthony Zappin, proceeding *pro se*, hereby moves the Court for a protective order quashing the deposition notices of Julia Richardson, David Young and Crystal Powell of the Capital Region Children's Center ("CRCC Supervisors") noticed by Defendant Claire Comfort ("Ms. Comfort") on March 27, 2014 to sit for deposition on April 9, 2014.  (*See* Exs. A-C, Def.'s 3/27/13 Deposition Notices.)  Once again, Plaintiff is forced to resort to expensive and time-consuming motion practice due to Ms. Comfort and her counsel's, Matthew Andelman of *Delaney & McKinney LLP* ("Mr. Andelman"), abusive and downright egregious litigation tactics.  And yet once more, Plaintiff is compelled to highlight their conduct and implore this Court to take action.

Plaintiff has an unavoidable scheduling conflict that was created by Ms. Comfort's bad faith negotiation of a visitation schedule for Plaintiff and ███ for the month of April.  Pursuant to the April 2, 2014 Order by Justice Kaplan of the New York Supreme Court, Plaintiff is scheduled to have visitation with ███ on April 9, 2014 from 5-8 p.m. ET.  (*See* Ex. D, 4/2/14 Order of Justice Kaplan.)  Plaintiff has attempted to reach out to Mr. Andelman and Ms.

Comfort's New York counsel to discuss the CRCC Supervisor depositions and the conflict with the visitation schedule demanded by Ms. Comfort, but has yet to receive any response.  As demonstrated in the attached memorandum in support of this Motion, Ms. Comfort and Mr. Andelman deliberately manufactured a conflict so that Plaintiff would have to make the unfair and prejudicial choice of whether to attend the CRCC Supervisor depositions in the District to prevent Mr. Andelman from engaging in further abusive litigation tactics at the depositions or take his extremely limited visitation time with ███  Plaintiff brings this motion just one day after learning of the conflict and having reached out to Mr. Andelman with no response, and therefore has acted diligently in not only attempting to resolve this issue without Court intervention, but also bringing it to the Court's attention without undue delay.  Because Ms. Comfort and Mr. Andelman have acted in bad faith to manufacture the conflict, this Court should at the very least enter a protective order quashing the deposition notices of the CRCC Supervisors until a mutually-agreed upon date can be arranged.

Moreover, Ms. Comfort and Mr. Andelman have deliberately failed to act in good faith in scheduling these depositions from the beginning when they were originally noticed on March 18, 2014.  Plaintiff has repeatedly requested a meet-and-confer, as required in this Court's discovery rules, to discuss the issues surrounding the timing and occurrence of the CRCC Supervisor depositions and other discovery issues in this matter.  Plaintiff has been repeatedly ignored and Mr. Andelman has attempted to unilaterally impose his will in violation of not only this Court's discovery rules, but of the D.C. Rules of Professional Conduct.  Because Ms. Comfort and Mr. Andelman have acted in bad faith in violation of this Court's discovery rules, Plaintiff respectfully requests that they be sanctioned pursuant to Dom. Rel. Rules 26(c) and 37(a)(4).

Plaintiff submits the attached memorandum in support of this Motion.

**WHEREFORE**, Plaintiff respectfully requests that:

a.       The Court **GRANT** Plaintiff's Motion for Protective Order for the CRCC Supervisor Depositions Due to Scheduling Conflict Created by Defendant's Bad Faith;

b.       The Court issue a protective order preventing Defendant from conducting the CRCC Supervisor depositions on April 9, 2014;

c.       Sanction Defendant for improper conduct and violations of this Court's discovery rules;

d.       Sanction Defendant's counsel, Matthew Andelman of *Delaney & McKinney LLP*, for improper conduct and violation of this Court's discovery rules;

e.       Award Plaintiff his costs and fees in bringing this Motion;

f.       Order that Defendant's counsel, Matthew Andelman of *Delaney & McKinney LLP*, be personally responsible for Plaintiff's costs and fees pursuant to 28 U.S.C. § 1927;

g.       Schedule a hearing so that Defendant may be afforded an opportunity to be heard as to reasonable attorneys' fees; and

h.       The Court award any relief it finds just and proper.

ORAL HEARING REQUESTED

Dated:  April 4, 2014                              Respectfully submitted,


_/s/ Anthony Zappin_____
Anthony Zappin, #1008991
194 W. 10th Street, Apt. D1
New York, NY 10014
(304) 654-6195 (tel.)
(646) 365-3424 (fax)
anthony.zappin@gmail.com
*Plaintiff, Pro Se*

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Family Court**
**Domestic Relations Branch**

| | | |
|---|---|---|
| ANTHONY ZAPPIN | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.  13 DRB 3821 |
| | ) | |
| CLAIRE COMFORT | ) | |
| | ) | |
| _____*Defendant*. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE**
**ORDER FOR THE CRCC SUPERVISORS DEPOSITIONS**
**DUE TO SCHEDULING CONFLICT CREATED BY DEFENDANT'S BAD FAITH**

Plaintiff Anthony Zappin, proceeding *pro se*, hereby submits this memorandum in support of his Motion for Protective Order for the CRCC Supervisor Depositions Due to Scheduling Conflict Created by Defendant's Bad Faith.

**ARGUMENT**

1.      On March 21, 2014, Plaintiff sent Defendant's counsel, Matthew Andelman of *Delaney & McKinney LLP* ("Mr. Andelman"), a letter explaining Plaintiff's objections to Defendant Claire Comfort's ("Ms. Comfort") deposition notices of Julia Richardson, David Young and Crystal Powell of the Capital Region Children's Center ("CRCC Supervisors"). (*See* Ex. F, 3/21/14 Ltr. from A. Zappin to M. Andelman.)  In that letter, Plaintiff requested a meet-and-confer regarding the depositions along with other discovery issues. (*See id*.)  Additionally, Plaintiff represented that he was generally available for the week of April 7, 2014 if Mr. Andelman wished to re-notice the CRCC depositions as Plaintiff did not at that time have a scheduling conflict because no visitation schedule had been set for Plaintiff and the parties' minor-child ████████████ at that point and Plaintiff's visitations were exclusively taking

4

place on weekends.  (*See id*.)  Mr. Andelman never responded to Plaintiff's letter or reached out

in any fashion to arrange or discuss scheduling of the CRCC Supervisor depositions.

    2.     On March 25, 2014, Ms. Comfort's New York counsel sent a proposed visitation

schedule for Plaintiff and ███████ (*See* Ex. E, 3/25/14 E-mail from K. Fiscalini to A. Turbowitz.)

Ms. Comfort proposed that the schedule begin the first week of April.  (*See id*.)  The schedule

provided that for the second week of visitation, Plaintiff would have a mere two hours with ████

for the week to take place on Wednesdays from 6-8 p.m. ET.  (*See id*.)  Thus, Ms. Comfort's

proposed visitation schedule would require Plaintiff to have visitation with ████ on the evening

of April 9, 2014.

    3.     On March 27, 2014, Mr. Andelman re-noticed the depositions of the CRCC

Supervisors for April 9, 2014 to begin at 3:30 p.m. ET and ending at 6:30 p.m. ET.  (*See* Ex. A-

C, 3/27/14 Deposition Notices of CRCC Supervisors.)  The depositions are noticed to take place

in the District.  (*See id*.)  The noticed depositions directly conflict with Ms. Comfort's proposed

visit for Plaintiff and ████ on April 9, 2014 as set forth in Ms. Fiscalini's e-mail of March 25,

2014.  (*See* Ex. E., 3/25/14 E-mail from K. Fiscalini to A. Turbowitz.)  There is no doubt that

Ms. Comfort and Ms. Fiscalini were aware that Mr. Andelman was set to re-notice the CRCC

Depositions for April 9, 2014 when they proposed Plaintiff's visitation with ████ for April 9,

2014.

    4.     On March 31, 2014, Plaintiff filed a Motion for Protective Order for the CRCC

Depositions.  (*See* Pl.'s 3/31/14 Motion for Protective Order.)  Plaintiff additionally sent Mr.

Andelman an e-mail stating that it was his position the CRCC Supervisor depositions were

stayed pursuant to Dom. Rel. Rule 26(c) and asked Mr. Andelman to make a proposal as to how

we should proceed.  (*See* Ex. F, 3/31/14 E-mail from A. Zappin to M. Andelman.)  Specifically,

Plaintiff stated:

> Mr. Andelman:
>
> See the attached Motion for Protective Order for the Depositions of the CRCC Supervisors.
>
> Dom. Rel. Rule 26(c) provides in part:  "Upon the filing of a motion for a protective order, further action with respect to the matter i[n] dispute shall be stayed until the Court's determination of the motion."
>
> Please confirm you will not be going forward with the CRCC depositions on April 9, 2014 pending the Court's determination on the issue and/or propose how you believe we should proceed.
>
> Best Regards,
> Anthony Zappin

(*See id.*)   Plaintiff never received any type of response, acknowledgement, confirmation or

otherwise communication from Mr. Andelman despite Plaintiff's good faith attempt to reach out

to Mr. Andelman and Plaintiff's willingness try to find a workable solution for all parties.

5.      On March 31, 2014, Plaintiff's New York counsel, *Aronson Mayefsky & Sloan,*

*LLP*, sent Ms. Comfort's New York counsel an e-mail with a proposed visitation schedule for

Plaintiff and ████   (*See* Ex. G, 3/31/14 E-mail from A. Turbowitz to K. Fiscalini.)   That

schedule provided for Plaintiff's visitation with ████ to take place on April 8, 2014 from 5-8

p.m. ET.  This directly avoided the conflict that would be created if Mr. Andelman intended to

pursue the depositions of the CRCC Supervisors on April 9, 2014.

6.      On April 2, 2014, the parties had their Preliminary Conference in front of Justice

Kaplan of the New York Supreme Court concerning their divorce and custody dispute.  The New

York court chastised Ms. Comfort for proposing a visitation schedule in which Plaintiff only

received two hours of visitation per week with ████  The parties thus agreed to enter into a one-

month visitation schedule, which was remarkably similar to Plaintiff's proposed schedule of March 31, 2014.  However, Ms. Comfort demanded that weekday visitations take place on Wednesdays, instead of alternating Tuesdays and Wednesdays as Plaintiff had proposed.  In an effort to not bicker over minor details, Plaintiff agreed to Ms. Comfort's demand and Plaintiff now has a visitation scheduled with ███ on April 9, 2014 from 5-8 p.m. ET.  (*See* Ex. D, 4/2/14 Order of Justice Kaplan.)  Plaintiff did not think this would be an issue since Mr. Andelman had not responded and apparently acquiesced to his e-mail of March 31, 2014 concerning the automatic stay of the CRCC Depositions under Dom. Rel. Rule 26(c).

7.      On April 3, 2014, out of an abundance of caution, Plaintiff sent an e-mail to Mr. Andelman asking him to once again respond and confirm that he was not going forward with the CRCC Supervisors depositions on April 9, 2014.  (*See* Ex. H, 4/3/14 E-mail from A. Zappin to M. Andelman.)  Plaintiff stated that he now had a scheduling conflict created by Ms. Comfort's demand that his visitation with ███ take place on the evening of April 9, 2014.  (*See id*.)  Plaintiff additionally reiterated that he was available to meet-and-confer.  (*See id*.)  Specifically, the e-mail stated:

> Matt:
>
> Please confirm by COB today that you will not be[] going forward with the CRCC supervisor depositions on April 9 in light of the pending Motion for Protective Order and Dom. Rel. Rule 26 (c).
>
> Additionally, your client had scheduled a visitation with ███ for April 9th from 5-8 p.m.  If you intend to pursue these depositions in violation of the Court's rules, counsel in New York will have to notify Justice Kaplan that the visitation scheduled for April 9th will have to be changed and why.
>
> I am also available to meet-and-confer with regard to the various discovery issues pending before the Court.
>
> Regards,
> Anthony

(*See id*.)  Plaintiff never received any response from Mr. Andelman, despite raising the conflict created by Ms. Comfort.

8.     Later that same day on April 3, 2014, Ms. Comfort and Mr. Andelman filed an Opposition to Plaintiff's Motion for Protective Order for the CRCC Depositions filed on March 31, 2014.  (*See* Def.'s 4/3/14 Op. to Motion for Protective Order.)  Ms. Comfort alleged *inter alia* that "Because Plaintiff's motion is one for reconsideration and not a motion for a protective order, and the Court has already made a determination of the issues and permitted the depositions to take place, Defendant intends to proceed with the depositions as currently noticed, for April 9, 2014."[1]  (*See id* at 1, fn. 1.)  Thus, Ms. Comfort and Mr. Andelman filed the opposition despite Plaintiff repeatedly stating he was willing to meet-and-confer and further stated they intended to proceed with the CRCC Supervisor deposition despite being aware of the conflict between the depositions and visitation on April 9, 2014 created by Ms. Comfort.

9.     When Plaintiff received Defendant's Opposition to the Motion for Protective Order, Plaintiff immediately reached out to Mr. Andelman again to reiterate the scheduling conflict.  (*See* Ex. I, 4/3/14 E-mail from A. Zappin to M. Andelman.)  Specifically, Plaintiff stated:

> Matt:
>
> I am no longer available on April 9th given that your client has demanded my visitation with ███ take place on Wednesday evenings from 5-8 p.m.  (*See*

---

[1] Plaintiff's March 31, 2014 Motion for Protective Order for Depositions of the CRCC Supervisors cannot reasonable be characterized as a motion for reconsideration.  Plaintiff raises entirely news grounds for a protective order not considered by the Court at the March 5, 2014 hearing.  Those grounds are namely that Ms. Comfort has stated she intends to take the depositions for an improper purpose of establishing tort claims and the burden/expense that will result from the depositions when the forensic custody evaluator in New York will be able to objectively question and gather information from the CRCC Supervisors.  Thus, Ms. Comfort's attempts to characterize the Motion for Protective are not only improper, but disingenuous.

Attached Order.)  If you intended to proceed with these depositions, then you will
have to re-notice them immediately.

(*See id*.)  Plaintiff has yet to receive a response from Mr. Andelman.

10.     There can be little doubt that Ms. Comfort has deliberately attempted to manufacture a conflict between Plaintiff's visitation with ███ and the CRCC Supervisor depositions both scheduled for the evening of Wednesday April 9, 2014.  Ms. Comfort was aware that the conflict would arise when she sent her proposed visitation schedule on March 25, 2014 only to be followed by Mr. Andelman re-noticing the CRCC Supervisor depositions on March 27, 2014, without ever consulting or discussing potential dates with Plaintiff. Additionally, Ms. Comfort specifically demanded Wednesday weekday visitations at the parties' April 2, 2014 Preliminary Conference in New York Supreme Court to create the conflict.  This is evidenced by the fact that Mr. Andelman failed to respond to Plaintiff's repeated e-mails— including his e-mail of April 3, 2014 raising the conflict—and his waiting until after the parties' April 2, 2014 Preliminary Conference in New York Supreme Court to file Ms. Comfort's Opposition to the pending Motion for Protective Order in which Ms. Comfort stated she intends to go forward with the CRCC Supervisor depositions despite the conflict she created.

11.     Ms. Comfort and Mr. Andelman's behavior in deliberately manufacturing a conflict so as to prevent Plaintiff from either attending the CRCC Supervisor depositions or forego his extremely limited visitation time with ███ is egregious behavior in complete disregard for this Court's discovery rules and decorum as practicing attorneys.[2]  Moreover, their

---

[2] D.C. Rule of Professional Responsibility 3.2(a) provides:  "In representing a client, a lawyer shall not delay a proceeding when the lawyer knows or when it is obvious that such action would serve solely to harass or maliciously injure another."

D.C. Rule of Professional Responsibility 3.4(d) provides:  "In pretrial practice, make a frivolous discovery request or fail to make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party."

failure to even attempt to meet-and-confer with Plaintiff to attempt to resolve disputed issues or even discuss deposition scheduling is indicative of abusive litigation tactics demonstrated throughout this litigation.  Ms. Comfort and Mr. Andelman immediately resort motion practice, which is not only expensive and time-consuming, but smacks in the face of their obligation to litigate in good faith.  This Court should no longer tolerate their behavior that has only muddied the record and created undue expense and lost time for Plaintiff.  Ms. Comfort's behavior is consistent with her pattern and practice of engaging in offensive litigation practices solely in an effort to conceal ███ and deny Plaintiff his son.  This Motion only highlights the latest example of her conduct.

12.     Moreover, Ms. Comfort's actions in creating a conflict are representative of her behavior in interfering with Plaintiff's visitations with ███  Plaintiff is now faced with the impossible and extremely prejudicial choice of attending the CRCC Supervisor depositions or seeing his son.  Plaintiff cannot reasonable be expected not to attend the CRCC Supervisor depositions given Mr. Andelman's appalling conduct in this litigation thus far complete with falsified and spoliated evidence, outright misrepresentations to this Court and tactics executed to cause needless delay.  At the same time, Plaintiff should not be expected to forego spending time with his son.  Over the past five months, Plaintiff has spent approximately 1% of all available time with ███, which is horrendously lopsided given Ms. Comfort's demonstrably false allegations of domestic abuse that triggered the mess the parties are in today.  Thus, Ms. Comfort and Mr. Andelman's actions demonstrate little more than a deliberately executed strategy to

---

Ms. Comfort and Mr. Andelman have violated the spirit and letter of both rules cited above by knowingly manufacturing a conflict between Plaintiff's visitations with ███ and the CRCC Supervisor depositions in bad faith, and then representing to this Court that it intends to proceed with the CRCC Depositions and simultaneously holding Plaintiff to his visitation with ███April 9, 2014.

interfere with Plaintiff's visitations with ████ and at the same time fabricate inadmissible evidence in the form of the CRCC Supervisor deposition transcripts.

13.     Plaintiff respectfully requests that since Ms. Comfort and Mr. Andelman deliberately manufactured a conflict in bad faith between Plaintiff's visitation with ████ and the CRCC Supervisor depositions that this Court enter a protective order quashing the deposition notices of the CRCC Supervisors scheduled to be deposed on April 9, 2014.  Moreover, because Ms. Comfort and Mr. Andelman have through their conduct intentionally violated this Court's discovery rules, acted in bad faith and shirked their obligations under the D.C. Rules of Professional Conduct by knowingly and intentionally manufacturing such conflict, they should be sanctioned and ordered to pay Plaintiff's fees and costs.[3]

## CONCLUSION

Plaintiff respectfully requests that the Court enter a protective order quashing the deposition notices of the CRCC Supervisors scheduled to be deposed April 9, 2014 and award Plaintiff his fees and costs in bringing this Motion for Defendant and her counsel's flagrant and egregious bad faith conduct.

---

[3] Mr. Andelman is as culpable, if not more culpable, than Ms. Comfort for unreasonably and vexatiously increasingly this litigation given his abusive litigation tactics such as manufacturing the conflict resulting in this Motion.  28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Thus, the Court should sanction Mr. Andelman for his conduct with respect to his conduct in creating the conflict as well as advising his client Ms. Comfort to undertake actions to do the same and order him personally liable for Plaintiff's fees and costs.

Dated:  April 4, 2014            Respectfully submitted,

   /s/ Anthony Zappin              

Anthony Zappin, #1008991

194 W. 10th Street, Apt. D1

New York, NY 10014

 (304) 654-6195 (tel.)

(646) 365-3424 (fax)

anthony.zappin@gmail.com

*Plaintiff, Pro Se*

# APPENDIX
# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
The People of the State of
New York Ex. Rel. ANTHONY ZAPPIN,
acting on behalf of ███████ ZAPPIN,
an infant,

                      Petitioner,

        -- against --

CLAIRE COMFORT,

                     Respondent.

-------------------------------------------------------------------X

**REPLY AFFIDAVIT OF
ANTHONY ZAPPIN**

Index No. 350075/14

STATE OF NEW YORK     )
                            : ss
COUNTY OF NEW YORK  )

RECEIVED
OCT 31 2014
PART 20

      ANTHONY ZAPPIN, being duly sworn, deposes and says:

      I am the Petitioner in the above-captioned proceeding and also a member of the bar of the

State of New York.  I submit this reply affidavit pursuant to CPLR 7009(3)(b) in response to

Respondent Claire Comfort's ("Ms. Comfort") Formal Return to the Writ of Habeas Corpus

issued by this Court on October 23, 2014.[1]

## INTRODUCTION

      For me, this action is about ensuring the well-being of my son ███████ Zappin (DOB

10/06/13) ███████ and attempting to gain reasonable, frequent and meaningful access to him

sucb that we can bond in his ever-so-important formative years.  For Ms. Comfort, this action

and all the litigation before it has nothing to do with Reid at all.  In fact, by her own admission, it

---

[1] In her return papers, Ms. Comfort has also noticed a cross-motion for attorneys' fees.  I reserve the right
to respond to that portion of Ms. Comfort's papers on November 17, 2014 pursuant to CPLR 2214(b).

endure, however, through her continued false allegations of domestic abuse, which continue to change to fit the day.  Moreover, Ms. Comfort and her counsel have attempted, with great success, to perpetrate and manipulate fraud on the court by manufacturing "incidents."

Perhaps the best stunt Ms. Comfort and her counsel have pulled off to date is the purported May 5, 2014 "note" to Judge Epstein in DC Superior Court.  On May 5, 2014 at 3:36 AM and 4:09 AM, I filed two motions in DC Superior Court:



I had just finished editing the documents after arriving in Huntington, W.V. for my mother's plea hearing later that morning.  At 8:32 AM, I e-mailed the documents to my secretary in New York to FedEx overnight to Judge Epstein.  (*See* Ex. 1, 5-5-14 E-mail from A. Zappin.)  The shipment from the New York office is confirmed on my personal account statement from Latham & Watkins LLP:

```
0514
      FEDERAL EXPRESS                    ZAPPIN A J      NY   B   05/09/2014      11.08   49141704
      Judge Anthony Epstein
      WASHINGTON, DC 20001
      796756720159
      05/09/14 264919203
      264919203 050914/01
      ███.796756720159
```

(*See* Ex. 2, 07/03/14 Expense Statement from Latham & Watkins.)  Exhibit A to Mr. Wallack's August 25, 2014 Affirmation in the prior matrimonial action, which is a May 6, 2014 article from the Herald-Dispatch newspaper, confirms my mother's plea hearing the prior day.  (*See* Exhibit 3, May 6, 2014 Herald Dispatch Article (affixed to Wallack Aff.).)  Numerous witnesses (probably the entire town) put me at my mother's plea on May 5, 2014 in Huntington, W.V.[3]  I

---

[3] I am attempting to obtain photographs taken by various new outlets that confirm I was at the hearing, which I intend to present at any evidentiary hearing in this matter if the issue is raised and if I am able to obtain them.

did not arrive back in New York until May 6, 2014, whereby I even took my weekly 9:00 a.m.

session with my treating psychiatrist, Dr. Robert Brooks, by phone while I was en route[4]:



Thus, my hands never touched the package that went to Judge Epstein and my secretary did not

place any note on inside.

  The working theory is that Ms. Comfort or her counsel sent a duplicate paper copy of the

filing (since they had it in their possession from e-filing) to Judge Epstein appearing to be from

me with the purported note attached, if one was indeed attached. This is corroborated by the fact

that Judge Epstein has not produced the note to compare handwriting and that he chastised me in

his order of April 7, 2014 for failing to send paper copies of my submissions to chambers

(although I did, just not quickly enough). Ms. Comfort and her counsel continue to proffer this

"incident" as an illustration of my "rage" and disrespect for judicial authority. In reality, it is

Ms. Comfort who appears to have committed a fraud on the Court in order to prejudice me.

  It is evident that apart and aside from her false allegations of domestic abuse, Ms.

Comfort cannot be truthful to the Court. To make matters worse, she intentionally manipulates

and manufacturers "incidents" to deprive me access to Reid. Someone so devious and

manipulative should not be in a position to raise a young child, particularly where she seeks to

exclude the other parent. I do not want Reid to grow up to be a pathological liar like his mother.

---

[4] Dr. Brook's phone number is (212) 744-6555. *See* https://plus.google.com/101115208173638223210/
about?gl=us&hl=en#101115208173638223210/about?gl=us&hl=en

# APPENDIX
# EXHIBIT H

At the Matrimonial Term, Part 20, of the
Supreme Court of the State of New York,
held in and for the County of New York,
at the Courthouse thereof, 60 Centre
Street, New York, New York, on the 4th
day of March, 2015.

PRESENT: HON. DEBORAH A. KAPLAN

---------------------------------------------------X

ANTHONY ZAPPIN,

                Plaintiff,                Decision and Order

     -against-                    Index No. 301568/2014

CLAIRE COMFORT,

                Defendant.

--------------------------------------------------X
--------------------------------------------------X

CLAIRE COMFORT,

                Plaintiff,

     -against-                    Index No. 3015578/2014
                                             313020/2014

ANTHONY ZAPPIN,

                Defendant.

--------------------------------------------------X
--------------------------------------------------X

The People of the State of
New York Ex. Rel. ANTHONY ZAPPIN,
acting on behalf of ▮▮▮▮ ZAPPIN, an infant

                Petitioner,

     -against-                    Index No. 350075/2014

CLAIRE COMFORT,

                Respondent.

--------------------------------------------------X

The Decision and Order, dated February 27, 2015, is amended as follows:

1.  **The sentence starting on page 14, paragraph 2, line 4 is amended to the following:** "He also withdrew his motions to disqualify Ms. Cohen as AFC and to strike the testimony of Dr. Ravitz — the motion pertaining to Ms. Cohen was fully briefed and *sub judice* (Tr. 12/18/14 at 13:21–14:2), and a briefing schedule had been set on the motion concerning Dr. Ravitz (*id.* at 28:9–24).

2.  **The sentence starting on page 46, paragraph 2, line 11 is amended to the following:** "He also filed motions to disqualify the AFC and to strike the report and testimony of Dr. Ravitz, only to withdraw these applications after one was opposed by the AFC and fully submitted to the court, and the other had a briefing schedule set.

This constitutes the decision and order of the court.

                    ENTER

                                    _Deborah_

                                    HON. DEBORAH A. KAPLAN
                                    J.S.C.

                                    DEBORAH A. KAPLAN
                                                            J.S.C.

                                    2

# APPENDIX

# EXHIBIT I

At the Matrimonial Term, Part 20, of the
Supreme Court of the State of New York,
held in and for the County of New York, at
the Courthouse thereof, 60 Centre Street,
New York, New York, on the 13th day of
February, 2015.

PRESENT: HON. DEBORAH A. KAPLAN
--------------------------------------------------X
ANTHONY ZAPPIN,

         Plaintiff,               Decision and Order

  -against-                  Index No. 301568/2014

CLAIRE COMFORT,

         Defendant.
--------------------------------------------------X
--------------------------------------------------X
CLAIRE COMFORT,

         Plaintiff,

  -against-                  Index No. 301578/2014
                            313020/2014

ANTHONY ZAPPIN,

         Defendant.
--------------------------------------------------X
--------------------------------------------------X
The People of the State of
New York Ex. Rel. ANTHONY ZAPPIN,
acting on behalf of ██████ ZAPPIN, an infant

         Petitioner,

  -against-                  Index No. 350075/2014

CLAIRE COMFORT,

         Respondent.
--------------------------------------------------X

•

IT IS HEREBY ORDERED: that an evidentiary hearing in the above captioned matters is scheduled for March 5, 2015 at 10 a.m, March 6, 2015 at 10 a.m, March 9, 2015 at 10 a.m., March 10, 2015 at 10 a.m., March 12, 2015 at 10 a.m., and March 13, 2015 at 10 a.m. A decision and order concerning the consolidation of these matters for trial shall be issued separately.

The parties are directed to contact Dr. Alan Ravitz immediately to schedule a date and time for his continued testimony. The parties and the attorney for the child are further directed to file and serve an updated witness list on or before March 2, 2015.

This constitutes the decision and order of the court.

ENTER:

Hon. Deborah A. Kaplan
J.S.C.

**DEBORAH A. KAPLAN**
**J.S.C.**

2

# APPENDIX
# EXHIBIT J

**Weil**

## News & Announcements

# Weil Attorneys Help Cape Verde Woman Win Permanent Residence

September 25, 2014

Weil associates Olivia Greer and Claire Comfort and partner Liz Weiswasser assisted their client in successfully applying for legal status under the Violence Against Women Act and winning an employment visa and a green card.

In late 2012, Weil took up the case of a woman from Cape Verde who was referred to us through the Immigrant Women & Children Project at the City Bar Justice Center. Shortly after arriving in the United States, the client fell in love and was married.

Unfortunately, her marriage quickly turned abusive, and she fled her apartment and her husband. Weil helped her apply for legal status under the Violence Against Women Act (VAWA). VAWA provides a path to legal residence for women who might have applied for it by virtue of their marriage to a U.S. citizen, if they hadn't been forced to leave the relationship due to abuse.

In July 2013, our client passed her first hurdle and was granted a work permit. The security granted by the work permit gave her the confidence to negotiate better pay from her employer, and to pursue and earn certification as a home care aide. Nonetheless, without permanent residence, the client was still unable to leave the country to visit family in Cape Verde. The Weil team worked on her application for permanent status and, in September 2014, she received her green card, guaranteeing her right to travel and return to the United States.

Unfortunately, her marriage quickly turned abusive, and she fled her apartment and her husband. Weil helped her apply for legal status under the Violence Against Women Act (VAWA). VAWA provides a path to legal residence for women who might have applied for it by virtue of their marriage to a U.S. citizen, if they hadn't been forced to leave the relationship due to abuse.

In July 2013, our client passed her first hurdle and was granted a work permit. The security granted by the work permit gave her the confidence to negotiate better pay from her employer, and to pursue and earn certification as a home care aide. Nonetheless, without permanent residence, the client was still unable to leave the country to visit family in Cape Verde. The Weil team worked on her application for permanent status and, in September 2014, she received her green card, guaranteeing her right to travel and return to the United States.

### Related Topics

- Pro Bono

Copyright © 2015 Weil, Gotshal & Manges LLP, All Rights Reserved. The contents of this website may contain attorney advertising under the laws of various states.
Prior results do not guarantee a similar outcome.

# APPENDIX
# EXHIBIT K



Anthony Zappin <anthony.zappin@gmail.com>

## Zappin v. Comfort - Standby AFC

**Robert M. Wallack** <rwallack@wallackfirm.com>                Thu, Aug 27, 2015 at 3:55 PM
To: Timothy Corbo <tcorbo@nycourts.gov>
Cc: HCohen@crsslaw.com, David Schorr <deschorr@schorr-associates.com>, Anthony Zappin
<anthony.zappin@gmail.com>, Claire Comfort <clairekcomfort@yahoo.com>, mbelmont@wallackfirm.com, "Robert M.
Wallack" <rwallack@wallackfirm.com>

Mr. Corbo:

I respectfully request that Mr. Zappin not be provided and/or allowed to review any "subpoenaed documents
returned to the Court thus far."  On August 13, 2015, I received copies of a host of third-party subpoenas served
by Mr. Zappin, including subpoenas to my client's <u>current and former employers</u>.  As you will recall, this Court's
Order dated July 22, 2015, with respect to Motion Sequence #013, directed that Ms. Comfort "refrain from
serving subpoenas or otherwise seeking information from Mr. Zappin's current or former employers without
first obtaining leave of this court."  Judge Cooper stated that "[t]here is no reason for his current employers to
have anything to do with the case pending – the particular portion of the case that is now before me."  Since
Mr. Zappin's employers have nothing to do with this stage of the case, neither do my client's employers.  The
Court further stated that "there is to be no further discovery" in this custody case.

Yet, despite the Court's clear directives, Mr. Zappin continues to seek discovery that is of no relevance to this
matter.  What's most troubling is that, not only did Mr. Zappin serve subpoenas on Ms. Comfort's current and
former employers (as well as fourteen (14) other third-parties, including, the undersigned and the Attorney for
the Child) after the Court's order, but he did so without promptly serving me and Ms. Cohen with copies of the
subpoenas as required by CPLR § 2303.  In fact, many of the return dates passed before we even learned of the
existence of the subpoenas.

It is unknown which documents have been received by the Court, and there may be documents that Mr. Zappin
is not entitled to see.  Consequently, I ask that Mr. Zappin not be allowed to review any of these documents
until we (and the Court) can 'get to the bottom' of this situation, and discuss the matter at our appearance on
September 2nd.  This should also serve as a formal request for Mr. Zappin to withdraw all of his patently
improper third-party subpoenas.

Respectfully submitted,

Robert Wallack

Robert M. Wallack, Esq.

**THE WALLACK FIRM, P.C.**

777 THIRD AVENUE

NEW YORK, NEW YORK 10017

PHONE  (212) 223-1300

FAX      (212) 223-1301

EMAIL   rwallack@wallackfirm.com

WEB      www.wallackfirm.com

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

**From:** Anthony Zappin [mailto:anthony.zappin@gmail.com]
**Sent:** Thursday, August 27, 2015 11:13 AM
**To:** Timothy Corbo <tcorbo@nycourts.gov>
**Cc:** Robert Wallack <rwallack@wallackfirm.com>; HCohen@crsslaw.com; David Schorr <deschorr@schorr-associates.com>
**Subject:** Re: Zappin v. Comfort - Standby AFC

[Quoted text hidden]

# APPENDIX

# EXHIBIT L

STATE OF NEW YORK
COURT OF CLAIMS

------------------------------------------x

ANTHONY ZAPPIN,

                Claimant,

    - against -

STATE OF NEW YORK,

                Defendant.

------------------------------------------x

Claim No. _____

**CLAIM**

1.    Claimant Anthony Zappin ("Claimant") resides at 194 W. 10th Street Apt. D1, New York, NY 10014.

2.    Claimant asserts the following claims:

- Assault & Battery;

- False Arrest/Imprisonment; and

- Civil Conspiracy to Commit Assault & Battery and False Arrest/Imprisonment.

3.    The claims accrued on April 24, 2015 on or about 4:45 p.m. in and around Courtroom 540 at the Courthouse at 60 Centre Street, New York, NY 10007.

4.    The claims arise out of the matters *Anthony Zappin v. Claire Comfort*, Index No. 301568/14 and *People of the State of New York Ex. Rel. Anthony Zappin on Behalf of ▓ Zappin, an Infant, v. Claire Comfort*, Index No. 350075/14 pending in New York County Supreme Court before the Honorable Deborah A. Kaplan, J.S.C. ("Justice Kaplan").

## FACTUAL ALLEGATIONS

### Background

5.   On April 24, 2015, Justice Kaplan held a status conference in Courtroom 540 to discuss the matters referenced above.

6.   These matters have been before Justice Kaplan since at least on or about February 11, 2014. Other than with respect to Justice Kaplan herself (see below), for these past 15 months Claimant has always had extremely pleasant interactions with all court personnel, including, and most especially, Officer Jeffrey Katz ("Officer Katz"), Justice Kaplan's court officer. During numerous prior proceedings and appearances in Justice Kaplan's courtroom, Claimant and Officer Katz have engaged in casual and sometimes lengthy conversations. Indeed, Claimant and Officer Katz have often went out of their way to chat with each other. Claimant has also had lengthy and friendly conversations with Justice Kaplan's Attorney Advisor Andrew Coyle and Justice Kaplan's Part Clerk Ira Liffman.

7.   At no time in the past 15 months has Claimant ever been accused of causing a disturbance of any kind in the courtroom or surrounding areas, raising his voice, being agitated in any manner or constituting a threat in any form whatsoever to anyone while in the courtroom or the courthouse generally.

8.   In contrast to her court personnel, Justice Kaplan has exhibited an extreme personal antipathy towards Claimant.

9.   On information and belief, this antipathy first arose in earnest when Claimant filed an Article 78 proceeding against Justice Kaplan in order to force Justice Kaplan to hold a *pendente lite* custody and access hearing for Claimant's infant son. The

2

Article 78 proceeding was settled out of court pursuant to a stipulation between Claimant and the Attorney General's office.   However, the First Department's dismissal of the Article 78 proceeding pursuant to that stipulation was published in the New York Law Journal.   Justice Kaplan's animus towards Claimant appeared to intensify after the publication.

10.     Justice Kaplan retaliated against Claimant by, *inter alia*, issuing an Order dated February 27, 2015 in which she repeatedly referenced a recent conviction of Claimant's mother for embezzlement in West Virginia.   There was no issue of any kind pending before Justice Kaplan that involved Claimant's mother, either directly or indirectly.

11.     At a hearing on March 3, 2015, Claimant informed Justice Kaplan that he was deeply hurt by these attacks on his mother and noted that the attacks were particularly inexplicable and insensitive given the criminal history of her own father.

12.     Upon information and belief, Justice Kaplan retaliated against Claimant for his remarks about her father by contacting the West Virginia State Parole Board to recommend that Claimant's mother (who is currently incarcerated in West Virginia) be denied early parole.   Upon information and belief, Officer Katz's actions referenced herein were the result of further retaliation by Justice Kaplan for Claimant's remarks about her father, as well as for the Article 78 proceeding.

### The April 24, 2015 Conference

13.     The following individuals attended the April 24, 2015 conference: Defendant/Respondent Claire Comfort, Justice Kaplan, Attorney Advisor Andrew Coyle, Attorney Advisor Joan Levenson, Officer Katz, Harriet Cohen, Robert Wallack, Brittney

Hershkowitz, Lara Ott, a court reporter and Claimant. Part Clerk Liffman was also in the courtroom.

14.     During the conference, Justice Kaplan prohibited the parties (myself and Ms. Comfort) from sitting at counsels' table despite the conference taking place on the record. Prior to this time, Justice Kaplan had always permitted, and indeed required, the parties to sit at counsels' table. As a result, Claimant's counsel was forced to go "off-the-record" repeatedly in order to confer with Claimant who was forced to sit in the gallery approximately 20 feet away from counsel.

15.     At all times until Claimant exited the courtroom (discussed below), Officer Katz stood at his customary location at the jury box near Justice Kaplan approximately 25 feet from Claimant and Ms. Comfort.

16.     At no time did Claimant cause any disturbance in the courtroom, raise his voice in any manner, have any communication, verbal or otherwise, with anyone in the courtroom during the hearing other than his counsel, or act discourteously in any way to anyone in the courtroom.

17.     During the course of the conference, Justice Kaplan disparaged Claimant and his counsel, Ms. Ott, repeatedly. In the face of these repeated disparagements and his inability to confer effectively with his counsel, Claimant left the courtroom and sat outside in the hallway intending to stay there for the remainder of the conference.

18.     While exiting the courtroom, Claimant attempted to exit out of the wrong double door in the courtroom that was static and locked. He then pressed hard on the other opened door, which purportedly "made a loud noise" when he exited the courtroom.

19.    Approximately five minutes later, Officer Katz exited the courtroom and approached Claimant.   Officer Katz inquired as to whether Claimant intended to stay in the hallway or to leave the courthouse.   Claimant responded that he intended to remain in the hallway until the proceeding concluded.   He requested that Officer Katz inform his counsel to meet him in the hallway after the proceeding so Claimant and his counsel could leave the courthouse together.   Officer Katz stated that he would so inform counsel.

20.    Approximately  10  minutes  after  this  first  encounter,  Officer  Katz approached  Claimant  again  with  Claimant's  bag,  which  Claimant  had  left  in  the courtroom.   Claimant thanked Officer Katz for bringing it to him.   Officer Katz informed Claimant that Justice Kaplan was ending the proceeding shortly.   No further conversation took place.

21.    Approximately 10 minutes later, Claimant's counsel approached him in the hallway to discuss the proceeding.   Claimant was then approached by Officer Katz and informed that Justice Kaplan had directed that he be returned to the courtroom.   In compliance with Justice Kaplan's directive, Claimant then returned to the courtroom shortly after conferring with his counsel in the hallway.

22.    Upon returning to the courtroom, Claimant once again sat in the gallery as directed by Justice Kaplan.   Officer Katz stood near the jury box and the parties' counsel were seated at counsels' table.   Justice Kaplan and her Attorney Advisors were not present in the courtroom at this time.

23.    At this point, Justice Kaplan opened the door to her robing room and motioned for Officer Katz to come to her.   Upon entering the robing room, Officer Katz closed the door behind him.   Upon information and belief, Justice Kaplan and Officer

5

Katz engaged in a discussion behind closed doors in the robing room. Justice Kaplan and Officer Katz exited the robing room together, whereafter Justice Kaplan pointed her finger at Claimant while speaking with Officer Katz.

24.    Officer Katz then positioned himself in the gallery less than five feet from Claimant who was sitting in the gallery approximately 20 feet from counsels' table. Thereafter, Justice Kaplan resumed the proceedings on the record.

25.    After resuming the proceeding, Justice Kaplan forced Claimant's counsel to go off-the-record several times in order to confer with Claimant about factual issues. Claimant's only interaction with Officer Katz was handing him handwritten folded notes to pass to counsel.

26.    At the conclusion of the proceeding, Claimant stood up from his position in the first row of the gallery and took approximately one step forward next to the bar to wait for counsel while she gathered her papers. Ms. Comfort and her counsel were on the other side of the courtroom approximately 30 feet away.

27.    Justice Kaplan looked at Officer Katz and nodded at him before leaving counsels' table, where she had been sitting, to go to the Part Clerk's desk.

28.    Immediately thereafter, Officer Katz shoved Claimant in Claimant's back causing him to stumble forward. Officer Katz stated: "Move to the front." He then grabbed and twisted Claimant's left arm with extreme force and pulled Claimant to the front of the courtroom near the judge's podium and door to the jury room/hallway (the "side hallway"). At no time did Claimant resist or say anything to Officer Katz.

29.    Officer Katz stopped at the door near the jury box. He opened the door and pushed Claimant through it into the side hallway, which is a small contained area.

After the door shut, Officer Katz locked the door behind him.  Officer Katz grabbed Claimant and slammed Claimant against the wall.

30.    As a result of the above-referenced actions by Officer Katz, Claimant suffered bruising and swelling to his hip, ribs and arm as well as large cuts to his elbow. These injuries are depicted in the photographs attached hereto as **EXHIBIT A**.

31.    Officer Katz then proceeded to press his hand against Claimant's chest restraining Claimant against the wall.  At no time did Claimant resist.  During this time, Officer Katz refused to permit Claimant to leave the side hallway and kept his hand continuously pressed against Claimant's chest.  While Officer Katz detained Claimant in this side hallway against Claimant's will, Officer Katz refused Claimant's repeated requests that Officer Katz remove his hand from Claimant's chest and that Claimant be permitted to leave the side hallway.  Officer Katz also refused Claimant's multiple requests to permit Claimant to use Claimant's cell phone or to speak with his counsel.

32.    Officer Katz detained Claimant in the side hallway for approximately 20 minutes keeping Claimant pinned against the wall and pressing his hand against Claimant's chest for the entire period of time.  Other than making the requests referenced above, which Claimant made in a calm and polite manner, Claimant did not react in any other way.

33.    After approximately 20 minutes, Officer Katz unlocked the door and allowed Claimant's counsel into the side hallway.  Upon Officer Katz opening the door, Justice Kaplan was still in the courtroom and was observed staring in the direction of Claimant.  Officer Katz refused to allow Claimant and his counsel to leave through the

normal hallway and elevators and instead escorted Claimant and his counsel down several flights of stairs and out the back of the courthouse.

## CLAIM I – ASSAULT & BATTERY

34.      Claimant re-alleges and incorporates by reference paragraphs 1-33 of this Claim as though fully set forth herein.

35.      On April 24, 2015, Officer Katz intentionally caused and attempted to cause, or otherwise recklessly caused, an unwanted touching of Claimant with the intent to harm Claimant, causing injury to Claimant.

36.      Claimant did not consent to the touching.

37.      Upon information and belief, Officer Katz acted at the behest and direction of Justice Kaplan.

38.      Officer Katz is not entitled to any immunity, qualified or otherwise. Similarly, Justice Kaplan is not entitled to any immunity, qualified or otherwise.[1]

39.      As a proximate result of Officer Katz's actions, Claimant suffered physical and emotional harm entitling him to damages in an amount to be determined at trial.

## CLAIM II – FALSE ARREST/IMPRISONMENT

40.      Claimant re-alleges and incorporates by reference paragraphs 1 – 39 of this Claim as though fully set forth herein.

---

[1] Justice Kaplan does not have absolute judicial immunity under *Stump v. Sparkman*, 435 U.S. 349 (1978). Ordering and orchestrating an assault and false arrest/imprisonment has been held not to be a "judicial act" by courts throughout this country. *See, e.g., Gregory v. Thompson*, 500 F.2d 59, 65 (9th Cir. 1984) (judge's assault held not to be judicial act); *Ammons v. Baldwin*, 705 F.2d 1445, 1448 (5th Cir. 1983) ("[T]he threat of physical abuse is clearly not a normal judicial function"); *McCray v. Maryland*, 456 F.2d 1, 3-4 (4th Cir. 1972) (officials not exercising judicial discretion do not require protection of absolute judicial immunity for fear of "burdensome and vexatious litigation").

41.     Officer Katz intended to unlawfully confine and did unlawfully confine Claimant.

42.     Claimant was at all times conscious of the confinement and did not consent to the confinement.

43.     The confinement was not otherwise privileged.

44.     Upon information and belief, Officer Katz acted at the behest and direction of Justice Kaplan.

45.     As a proximate result of the confinement, Claimant suffered harm entitling him to damages in an amount to be determined at trial.

## CLAIM III – CIVIL CONSPIRACY

46.     Claimant re-alleges and incorporates by reference paragraphs 1 – 45 of this Claim as though fully set forth herein.

47.     Justice Kaplan directed Officer Katz to harm Claimant and to falsely arrest/imprison him constituting an ongoing conspiracy, express or implied, that was conceived no later than April 24, 2015.

48.     Based on Justice Kaplan's actions in the courtroom, Officer Katz began his assault on, and unlawful confinement of, Claimant only upon an apparent direction and signal from Justice Kaplan.  At all times Justice Kaplan and Officer Katz acted in concert in carrying out the assault and unlawful confinement.  Both Justice Kaplan and Officer Katz have, to varying degrees, participated in planning and carrying out the objectives of the conspiracy, but both are nevertheless liable for the concerted action of their fellow co-conspirator.

49.    The objective of the conspiracy was to commit assault and battery and to falsely arrest/imprison Claimant.

50.    In furtherance of this conspiracy, Justice Kaplan and Officer Katz undertook actions constituting civil conspiracy to commit the common law torts of assault and battery and false arrest/imprisonment by physically attacking and unlawfully confining Claimant as described in the preceding paragraphs.

51.    As a proximate result of this conspiracy, Claimant suffered the physical and emotional harm set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Claimant Anthony Zappin respectfully prays that this Court:

(a)    Enter judgment in favor of Claimant against Defendant;

(b)    Enter judgment awarding Claimant compensatory damages on all counts herein to compensate Claimant for Defendant's activity complained of herein and for any injury complained of herein, inclusive of interest and cost, in an amount to be determined at trial;

(c)    Enter judgment awarding Claimant his fees and costs reasonably incurred in this action as allowed by applicable state law; and

(d)    Order such other relief that the Court deems just and reasonable.

Dated:  New York, New York
        April 30, 2015

By:  _____
     ANTHONY ZAPPIN
     194 W. 10th Street, Apt. D1
     New York, NY 10014
     (304) 654-6195 (tel.)
     (646) 365-3424 (fax)
     anthony.zappin@gmail.com
     *Claimant, Pro Se*

11

VERIFICATION

STATE OF NEW YORK          )
                                                   ss:
COUNTY OF NEW YORK   )

       Anthony Zappin, being duly sworn, deposes and says that deponent is the Claimant in the within action; that deponent has read the foregoing Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes it to be true.

ANTHONY ZAPPIN

Sworn to before me this
30th day of April, 2015

Notary Public

SYLVIA A. BELARDO
Notary Public, State of New York
No. 01BE6016783
Qualified in New York County
Commission Expires November 9, 20__

12

EXHIBIT A









# APPENDIX
# EXHIBIT M

August 3, 2014

ANTHONY J. ZAPPIN
Attorney-at-Law

194 W. 10th St. Apt. D1
New York, NY 10014

(304) 654-6195 (voice)
(646) 365-3424 (fax)

anthony.zappin@gmail.com

**BY FACSIMILE AND OVERNIGHT MAIL**

Hon. Deborah A. Kaplan
Supreme Court New York County
60 Centre Street
New York, NY 10007

      Re:  Zappin v. Comfort – Index No. 301568/14

Dear Justice Kaplan:

I write to the Court as a follow-up to my letter of yesterday based on the discovery of new information concerning Ms. Comfort's failure to file opposition papers to my application for a hearing on supervised visitation and interim custody arrangements.

I have to admit that I am somewhat befuddled. It is unclear whether Ms. Comfort's counsel, Robert Wallack, deliberately intended to serve the opposition papers 3 days late after the August 1, 2014 deadline to delay resolution of my application, blew the deadline because he was busy "celebrating" as demonstrated below or a combination of both. Regardless, his actions are prejudicial and without excuse.

Over the past day, I have discovered new facts that I believe the Court should be aware of in deciding whether to consider any untimely opposition papers submitted by Ms. Comfort and whether sanctions are appropriate.

I will preface the following by saying I am the last person who will begrudge anyone of their free time. I will also note that I would not have even dared to burden the Court with these issues if Mr. Wallack provided reasonable notice of his filing/service issues and agreed to follow the proper procedure in filing an application for leave to submit the opposition papers out of time. However, Mr. Wallack's behavior over the past few days is quite egregious, particularly where he wants to dictate the conditions and times that I may visit with my son and seemingly disregard this Court's orders.

First, Mr. Wallack posted a picture to Twitter and Instagram on the night of July 31, 2014—the evening prior to the deadline for Ms. Comfort's opposition papers—where he appears to be partying for a suite at the Waldorf Astoria. The caption to the photograph says:

Zappin v. Comfort
August 3, 2014
Page 2 of 4

Hotel Waldorf Towers New York Presidential Suite
Just kick' it in the Crown Prince of Saudi Arabia's
suite courtesy of my [heart emoji] @britthersh
#bestgf     #waldorflowers     #nyc     #bday
#celebrationstarts early

(See Attachment A.)  Mr. Wallack's associate (and apparent girlfriend based on the tweets),
Brittney Herskowitz, replied that same evening with the following message:

Ain't no basic birfday b*tch  #lifeisgood

(See Attachment B.)  She appears to be the handle @britthersh in Mr. Wallack's tweet.  The
picture posted to Instragram depicts Mr. Wallack in a bathrobe in what appears to be a suite at
the Waldorf Astoria with at least two bottles of alcohol.  The picture is reproduced below:



Now if Mr. Wallack chose to party rather than completing Ms. Comfort's opposition papers the
night before they were due to this Court, I should not be faulted or prejudiced by any untimely
filing.  This matter involves serious allegations, including parental kidnapping, domestic
violence, child abuse, child neglect and potentially severe emotional and developmental harm to
my son while in Ms. Comfort's care.  These are issues that Judge Castel described as evidencing
"horrific conduct" on Ms. Comfort's part that I am requesting this Court entertain and hold a
hearing to make findings of fact.  If Mr. Wallack does not want to take that seriously and
completely disregard the Court's deadlines and orders, then the Court has the power to enforce
compliance through sanctions and rejection of untimely opposition papers.  I request that the
Court exercise that power.

Zappin v. Comfort
August 3, 2014
Page 3 of 4

Second, Mr. Wallack attempted to claim at 4:54 p.m. on August 1, 2014 that his office suffered "computer problems" preventing completion of the opposition papers due that day. Again, he never elaborated as to what "computer problems" were suffered and subsequently refused to file an affidavit to this Court explaining the missed deadline.

However, the evidence seems to contradict Mr. Wallack's claims. At 3:33 p.m. that day, Ms. Herskowitz confirmed a visit with the minor-child via e-mail from Mr. Wallack's office, which as an aside I had previously requested two days prior. (See Attachment C.) Presumably, Ms. Herskowitz had prior communications with Ms. Comfort that day via e-mail from Mr. Wallack's office to discuss the visit as well.

As a computer scientist, I am not aware of any "computer problems" that would prevent typing and printing a Word document, yet still give Mr. Wallack and his associate access to the Internet.

Lastly, in my letter of yesterday, I raised the question why Mr. Wallack could not go ahead and serve the opposition papers the evening of August 1, 2014 or over the weekend instead of waiting until Monday August 4, 2014. I am even more confused now after reading Ms. Herskowitz's Instagram as to why service of the opposition papers requires a 3 day delay.

On August 2, 2014, Ms. Herskowitz posted a photograph, with Mr. Wallack's son, with the caption:

Saturdaze in the burbs

Redacted



(See Attachment D.) Meanwhile, Mr. Wallack was sending unwarranted and improper e-mails from his iPhone to Comprehensive Family Services dictating the terms of my visitation with the minor-child:

Zappin v. Comfort
August 3, 2014
Page 4 of 4

Bettina:

Anthony knows that he is required to have his visits supervised by CFS. Thus, if
he is unwilling to arrange for and pay CFS to supervise his visit tomorrow, he
won't be having a visit. There's nothing more for me or Brittney to say.

Best,

Robert Wallack

(*See* Attachment E.) Mr. Wallack sent this e-mail in an apparent attempt to stir a conflict with
CFS after both Ms. Thompson and I asked that he merely confirm the pick-up and drop-off
locations of the visit. (*See id.*)

But I digress. If Mr. Wallack and Ms. Herskowitz want to spend their weekend in the "burbs," I
say good for them. However, when they disregard a filing deadline imposed by this Court
severely prejudicing my application for reasonable access to my son then go on social media to
flippantly brag about shirking their obligations, I very much take issue with it. The Court should
as well.

To put it simply, I am tired of the games by Ms. Comfort and her counsel. This has become an
epidemic. Mr. Wallack deliberately and/or recklessly blew a filing deadline, where the Court
gave him more than ample time to file opposition papers, 18 days in fact. He is now attempting
to delay resolution of my application and boast about his exploits on social media during which
time he should have been preparing, filing and serving opposition papers. Untimely serving the
opposition papers will severely prejudice me and Mr. Wallack has no reasonable excuse for his
conduct.

I respectfully ask the Court take appropriate action to remedy Mr. Wallack's conduct. I do
apologize for burdening the Court with multiple letters, but I feel that given the importance of
the application and the generous time the Court gave Ms. Comfort to file opposition papers,
these facts needed to be brought to the Court's attention.

Again, I thank the Court for its attention to this matter and continued courtesies.

Respectfully,

Anthony Zappin

cc: Robert Wallack (*by e-mail*)

Enclosures

# ATTACHMENT A





# ATTACHMENT B



# ATTACHMENT C



Anthony Zappin <anthony.zappin@gmail.com>

---

## Zappin/Comfort

**Brittney Hershkowitz** <BHershkowitz@wallackfirm.com>
To: Anthony Zappin <anthony.zappin@gmail.com>
Cc: Robert Wallack <rwallack@wallackfirm.com>

Fri, Aug 1, 2014 at 3:33 PM

Anthony:

You can have a visit from 12-6 on Sunday. Please confirm that you are able to secure supervision.

We are not authorized to accept service of district court litigation on Claire's behalf.

Brittney
[Quoted text hidden]

ATTACHMENT D



# ATTACHMENT E

8/3/14 10:00 AM



Anthony Zappin <anthony.zappin@gmail.com>

## Zappin Comfort

**Robert Wallack** <rwallack@wallackfirm.com>                                    Sat, Aug 2, 2014 at 4:30 PM
To: Anthony Zappin <anthony.zappin@gmail.com>
Cc: Bettina Thomsen <BThomsen@cfs-nyc.com>, Danielle Spector <DSpector@cfs-nyc.com>, Brittney Hershkowitz
<bhershkowitz@wallackfirm.com>, Robert Wallack <rwallack@wallackfirm.com>, clairekcomfort@yahoo.com

Bettina:

Anthony knows that he is required to have his visits supervised by CFS. Thus, if he is unwilling to arrange for and pay
CFS to supervise his visit tomorrow, he won't be having a visit. There's nothing more for me or Brittney to say.

Best,

Robert Wallack

Sent from my iPhone

On Aug 2, 2014, at 2:13 PM, Anthony Zappin <anthony.zappin@gmail.com> wrote:

> Bettina -
>
> Rob and/or Brittney (cc'd) should provide more information as to this today.
>
> Best,
> Anthony
>
> On Fri, Aug 1, 2014 at 7:04 PM, Bettina Thomsen <BThomsen@cfs-nyc.com> wrote:
>
>> Danielle Spector, copied on this email, can cover the requested time.  Please just confirm the
>> pick up/drop off location.
>>
>>
>> Thanks,
>>
>> Bettina
>>
>> _____
>>
>> **From:** Anthony Zappin [mailto:anthony.zappin@gmail.com]
>> **Sent:** Friday, August 01, 2014 6:06 PM
>> **To:** Bettina Thomsen
>> **Cc:** Robert Wallack; Brittney Hershkowitz
>> **Subject:** Zappin Comfort

Gmail - Zappin Comfort                                                                                      8/6/14 10:00 AM

Bettina -

Could you guys do a visit from noon to 8:00 this Sunday?  Apologies for the late request Thanks

Anthony

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

# APPENDIX

# EXHIBIT N



Anthony Zappin <anthony.zappin@gmail.com>

# Zappin v. Comfort - Emergency Motion Tuesday May 12, 2015

**Robert M. Wallack** <rwallack@wallackfirm.com>                         Fri, May 8, 2015 at 11:35 AM
To: Anthony Zappin <anthony.zappin@gmail.com>
Cc: HCohen@crsslaw.com, Brittney Hershkowitz <bhershkowitz@wallackfirm.com>, Michael Belmont
<mbelmont@wallackfirm.com>, Claire Comfort <clairekcomfort@yahoo.com>, "Robert M. Wallack"
<rwallack@wallackfirm.com>

So, it's a motion to prohibit you from having contact with 

Robert M. Wallack, Esq.

**THE WALLACK FIRM, P.C.**

777 THIRD AVENUE

NEW YORK, NEW YORK 10017

PHONE  (212) 223-1300

FAX      (212) 223-1301

EMAIL  rwallack@wallackfirm.com

WEB      www.wallackfirm.com

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

**From:** Anthony Zappin [mailto:anthony.zappin@gmail.com]
**Sent:** Friday, May 08, 2015 11:13 AM
**To:** Robert M. Wallack
**Cc:** HCohen@crsslaw.com; Brittney Hershkowitz; Michael Belmont
**Subject:** Re: Zappin v. Comfort - Emergency Motion Tuesday May 12, 2015

Rob,

Provisions to safeguard the well-being of the child.

Anthony

On Fri, May 8, 2015 at 10:47 AM, Robert M. Wallack <rwallack@wallackfirm.com> wrote:

An "emergency application" seeking what relief?

Robert M. Wallack, Esq.

**THE WALLACK FIRM, P.C.**

777 THIRD AVENUE

NEW YORK, NEW YORK 10017

PHONE    (212) 223-1300

FAX        (212) 223-1301

EMAIL    rwallack@wallackfirm.com

WEB      www.wallackfirm.com

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

**From:** Anthony Zappin [mailto:anthony.zappin@gmail.com]
**Sent:** Friday, May 08, 2015 10:26 AM
**To:** Robert Wallack; HCohen@crsslaw.com
**Subject:** Zappin v. Comfort - Emergency Motion Tuesday May 12, 2015

Rob and Harriet -

Please be advised that I intend to present an emergency application to the Court at 10:00 a.m. on Tuesday May 12, 2015.

Best,

Anthony Zappin

# APPENDIX
# <u>EXHIBIT O</u>

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------X

ANTHONY ZAPPIN

                     Plaintiff,        **SUR-REPLY AFFIDAVIT OF**
                                    **ANTHONY ZAPPIN**

    -- against --
                                      Index No. 301568/14

CLAIRE COMFORT,                   Mot. Seq. #12

                   Defendant.

---------------------------------------------------------------X

STATE OF NEW YORK     )
                      : ss
COUNTY OF NEW YORK  )

    ANTHONY ZAPPIN, being duly sworn, deposes and says:

    1.    I am the Plaintiff in the above-captioned proceeding.  I submit this sur-reply affidavit in opposition to the Attorney for the Child's application for counsel fees and other relief (Mot. Seq. #12).

    2.    I respectfully seek leave of the Court to file this sur-reply as Ms. Cohen has raised new facts and legal arguments in her reply affirmation dated May 15, 2015. *See Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 382 (1st Dept. 2006) (holding that a supplemental affirmation and/or sur-reply is permissible where moving party offers "newly presented claim or evidence.")

    3.    In her reply affirmation, Ms. Cohen attempts to improperly tack on nearly $9,000 in additional fees not included in her original application. These fees are from an invoice Ms. Cohen sent me on May 13, 2015—2 days before she submitted her reply affirmation—with billing



entries dating back to the beginning on February 2015.[1] (See Ex. A, May 13, 2015 Cohen Invoice.)

I sent a request to both Ms. Cohen and her secretary, Ms. Maherly Manigault, requesting a

telephone conference with Ms. Cohen to discuss the invoice.[2] Ms. Cohen did not respond to my

request. (See Ex. B, May 13, 2015 E-mails from A. Zappin.)

4.      It is improper for Ms. Cohen to request that this Court enter a money judgment

against me for an invoice sent to me a mere 2 days before presenting it to the Court in a reply

affirmation and without providing me an opportunity to discuss the invoice with her. This May

2015 invoice suffers from similar deficiencies as Ms. Cohen prior invoices. Namely, Ms. Cohen

bills for work that was never performed (e.g., never sending me her affirmation of actual

engagement on 2/17, never sending me HIPAA forms on 3/2, never serving me papers on 3/3),

inadequate and deceptive billing descriptions (e.g., 3/4 entry "Charging Anthony Zappin for ...

misleading emails that caused legal services by HNC") and having her paralegals bill thousands

of dollars for "busy work" more properly done by a secretary (e.g., 4/24 entry for 5 hours "Made

up new records and update sub folders. Update court records and order binders"). Simply put, Ms.

Cohen's bills are indecipherable requiring a telephone conference to go over them.

5.      Notably, in Ms. Cohen's May 15, 2015 reply affirmation she resorts to continued

ad hominem attacks on me instead of addressing any of the concerns raised in my letter of February

12, 2015. (See Ex. C, Feb. 12, 2015 Ltr. from A. Zappin to H. Cohen.)[3]  In that letter, I laid out in

---

[1] It is fundamentally unreasonable to allow nearly 100 days of billing entries and tens of thousands of dollars of legal expenses to accrue only for Ms. Cohen to demand immediate (literally within 2 days) payment before entry of a money judgment.

[2] I do not wish to meet with Ms. Cohen in person. Before the April 24, 2015 Status Hearing, Ms. Cohen accosted me in the hallway outside the courtroom demanding that I pay her bill thereby requiring Ms. Ott to intervene. Similarly, Ms. Cohen assaulted my mother at the conclusion of the September 15, 2014 evidentiary hearing, necessitating Court Officer Jeffrey Katz having to escort her out of the building.

[3] Ms. Cohen alleges that I have had her invoices "for months." However, she fails to mention that

great detail the deficiencies in Ms. Cohen's prior bills that included inaccurate descriptions of work (*e.g.*, entries only containing "More papers"), billing for work that was never performed (*e.g.*, opposition papers to the Article 78 proceeding never filed or served), double billing between the matrimonial action and habeas action and charging for work related to Ms. Cohen's improper service of a secret subpoena on Dr. Brooks among other issues.

6.   I am absolutely entitled to a telephone conference with Ms. Cohen to go over her invoices prior to payment. Ms. Cohen's invoices are not gospel and are subject to reasonable inquiry and review. Ms. Cohen's refusal to have a telephone conversation with me is unethical. By way of example, the Joint Order of the Departments of the Appellate Divisions of the Supreme Court require that an individual is "entitled to be charged reasonable fees and expenses" and have the attorney "explain before or within a reasonable time … how the fees and expenses [are] computed …." *See* 22 NYCRR 1210.1(4).

7.   As a general rule, a party resisting a counsel fee application is entitled to an evidentiary hearing as to the extent and value of the attorney's services, including to resolve any discrepancies in the billing invoices. *See Redgrave v. Redgrave*, 304 A.D.2d 1062, 1064 (3rd Dept. 2003); *Nee v. Nee*, 240 A.D.3d 478, 479 (2nd Dept. 1997) (holding trial court erred by failing to hold hearing before awarding counsel fees explaining "an evidentiary hearing is required so that the court may test the claims of [the] attorney regarding the extent and value of her services"); *see also Kumble v. Windsor Plaza Co.*, 128 A.D.3d 425, 426 (1st Dept. 1987); *McCauley v. Drumm*, 217 A.D. 2d 829, 830 (3rd Dept. 1995) ("[A] party is entitled to an evidentiary hearing on counsel fees in an adversarial setting.").

---

she has had my very detailed letter raising concerns about her billing entries and invoices for the same amount of time. My letter of February 12, 2015 was sent *one day* after her February 11, 2015 invoice. Ms. Cohen has never attempted to respond to my letter or resolve the billing disputes via a telephone conference.

8.     "When a party legitimately challenges the amount claimed and the legal services performed, a court's award of counsel fees may only occur following an adversarial hearing where counsel fees must be proved and the opposing party may assert the right to cross-examine." *Duprati v. 424 E. 77th St. Owner's Corp*, 862 N.Y.S.2d 807 (Sup. Ct. N.Y. Cnty. 2005); *see also Weinberg v. Weinberg*, 95 A.D.2d 828, 829 (2nd Dept. 1983) ("[The] court's award of counsel fees ... on the basis of an affirmation alone was improper. When challenged, counsel fees must be proved in an adversarial atmosphere where, upon the presentation of testimony, the opposing parties may assert the right to cross-examine."); *Ames v. Ames*, 212 A.D.2d 653, 655 (2nd Dept. 1995) (concluding that husband was "denied full and fair opportunity to challenge the charges incurred and the value of legal services when he was prevented from conducting a complete cross-examination of the ... attorney.").

9.     Ms. Cohen's application must be held in abeyance until such time that she has a telephone conference with me to answer my questions about her invoices and undertakes a reasonable good faith effort to resolve the billing disputes. Should Ms. Cohen fail to have such a telephone conference, this Court must hold an immediate hearing to determine the reasonableness of her fees and permit me to cross-examine her about her deficient and questionable billing entries in her invoices before ruling on her counsel fee application.

10.     Before awarding counsel fees a "sufficient evidentiary basis must exist for the court to evaluate the respective financial circumstances of the parties and the value of the services rendered," which includes testimony from the individual seeking fees. *Buono v. Fantacone*, 252 A.D.2d 917, 918 (3rd Dept. 1998). This Court has never held a hearing or made a factual finding that the parties' finances supported Ms. Cohen's very high billing rate of $600 per hour or Dr. Metrikin's still higher rate of $700 per hour. Before making any fee award, this Court must hold

4

a hearing to determine whether the parties' current financial situations support Ms. Cohen and Dr. Metrikin's billing rates.

11.      Ms. Cohen mischaracterizes my current financial situation.  Although I make $230,000 per year at Mintz Levin, Ms. Cohen notably fails to mention that well over half of my net income is expended on the cost of supervised visitation imposed on me without a hearing and "zealously" advocated for by Ms. Cohen. (See Ex. D, CFS Bills from November 2014 to April 2015.) Additionally, at the time of the March 3, 2015 hearing, I had approximately $70,000 in assets, which is no longer true.  I expended $35,000 as a retainer for Ms. Lara Ott. My only remaining assets are approximately $30,000 in a 401k account and a Ford Escape, to which I owe approximately $10,000. Ms. Cohen further fails to mention that I have approximately $40,000 in debt, primarily incurred as a result of supervised access.

12.      New York law requires that matrimonial lawyers bill their clients *at least* every 60 days.  *See* 22 NYCRR 1400 et seq.  "[A]n attorney's failure to provide written itemized bills at least every 60 days pursuant to 22 NYCRR 1400.2 will also preclude collection of a fee." *Gahagan v. Gahagan*, 51 A.D.3d 863, 859 (2nd Dept. 2008); *see also Wagman v. Wagman*, 8 A.D.3d 263 (2nd Dept. 2004); *Julien v. Machson*, 245 A.D.2d 122 (1st Dept. 1997). Thus, Ms. Cohen's assertion—lacking any citation to case law—that she is only required to maintain "substantial compliance" with this rule is *false*.  The "substantial compliance" argument only applies to recovery of legal fees from an *adversary spouse*, not an Attorney for the Child required to submit their invoices to the Court.  *See Verkowitz v. Torres*, 2009 N.Y. Misc. LEXIS 5669, at *2 (Sup. Ct. Nassau Cnty. 2009).  Even so, a similar fact pattern was addressed in *Verkowitz v. Torres*. There the Court held that an attorney was not entitled to recover legal fees contained in a billing invoice sent approximately 120 days after the attorney's prior invoice.  *See id.*

5

13.    Here, Ms. Cohen submitted a billing invoice to the parties on December 22, 2014 containing billing entries dating back to September 2014. (*See* Ex. E, Dec. 22, 2014 Cohen Invoice.) Her last invoice before that was dated September 9, 2014. (*See* Ex. F., Sept. 9, 2014 Cohen Invoice). Thus, Ms. Cohen allowed 104 days to pass between her invoices, nearly double the time permitted by New York law, which allowed thousands of dollars of legal fees to accrue. Even if Ms. Cohen were correct, such a delay in submitting an invoice cannot be considered "substantial compliance."

14.    Ms. Cohen similarly submitted a billing invoice to the parties on May 13, 2015 containing billing entries dating back to February 2014. (*See* Ex. A.) Her last invoice prior to that was dated February 11, 2015. (*See* Ex. G, Feb. 11, 2014 Cohen Invoice.) Ms. Cohen allowed nearly 100 days to pass between invoices.⁴ Again, even accepting Ms. Cohen's argument, such a delay cannot be considered "substantial compliance." Ms. Cohen's non-compliance with 22 NYCRR 1400.2 does not entitle her to recovery of fees. If the Court should in some way waive the rule, then Ms. Cohen is still required to have a telephone conference with me to discuss the invoices or participate in an evidentiary hearing to determine the reasonableness of her invoices.

15.    With respect to Dr. Metrikin, although he is a Board Certified Psychiatrist, he is an addiction specialist with no experience in custody disputes. He is not qualified to opine on Dr. Ravitz's forensic custody evaluation report. Moreover, as the Court is well aware, Dr. Metrikin's fee of $700 per hour is nearly double that of any of the First Department approved forensic

---

⁴ On top of Ms. Cohen submitting indecipherable and questionable bills, she has now on two occasions allowed over 100 days of billing entries to pile-up before submitting her invoices to the parties. Such a delay and accumulation of fees necessitates a telephone conference with Ms. Cohen to discuss her invoices given the substantial passage of time.

6

evaluators. Ms. Cohen's bare assertion that Dr. Metrikin's $700 per hour rate is "reasonable" is insufficient without proof thereof.

16.     Additionally, Dr. Metrikin is not entitled to charge the parties for "lost time." As an initial matter, his invoice claims he lost time for March 16, 2015, a date on which no hearing was ever scheduled in this matter. (See Ex. H, Mar. 31, 2015 Metrikin Invoice.) Regardless, Ms. Cohen does not provide any support that Dr. Metrikin would have otherwise been able to fill his schedule. Billing for "lost time" without providing evidence of lost income is improper and unethical. Also, it is unclear why Ms. Cohen told Dr. Metrikin to attend the custody trial at all because I did not intend to call Dr. Ravitz when the trial commenced and instead intended to call myself to testify. The parties should be required to incur fees for Ms. Cohen improperly summoning Dr. Metrikin to the courthouse when Dr. Ravitz was not going to testify.

17.     In conclusion, I respectfully request that the Court hold Ms. Cohen's fee application in abeyance and direct her to conduct a telephone conference with me to try to in good faith resolve the billing disputes. Otherwise, I request the Court conduct an evidentiary hearing to determine the sufficiency of Ms. Cohen's invoices and fee requests permitting me the chance to cross-examine her as required by law.

Dated:     May 19, 2015
           New York, NY                                    ANTHONY SABO

Sworn to before me this
19th day of May, 2015

Notary Public

7

HELEN ANN LALLY
Notary Public: State of New York
No. 01LA5017190
Qualified in New York County
Commission Expires August 30, 2017

# EXHIBIT A

**COHEN RABIN STINE SCHUMANN LLP**
Attorneys at Law
11 Times Square, 10 Floor
New York, New York 10036

Tel. No. (212) 512-0825    Fax No.: (212) 202-6100

Harriet Newman Cohen
Bonnie Rabin
Martha Cohen Stine
Gretchen Beall Schumann*
Paul C. Kurland
Tim James
Evridiki Poumpouridis
Amanda Laird Creegan*
Lindsay R. Pfeffer*
Laura A. Tucker*
Robert Pagano, Legal Assistant
*also admitted in New Jersey

Direct dial: 212-512-0801
E-Mail address: hcohen@crsslaw.com

May 13, 2015

BY EMAIL: anthony.zappin@gmail.com
PERSONAL AND CONFIDENTIAL
Anthony J. Zappin, Esq.
194 West 10th Street, Apt. D1
New York, NY 10014

Re:    Client No. 31834-004
       Statement Amount: $17,239.29

Dear Mr. Zappin:

Enclosed herewith please find your invoice for legal services from February 12, 2015 through April 24, 2015 showing your balance due for your prompt payment.

Sincerely yours,

COHEN RABIN STINE SCHUMANN LLP

By:_____
       Harriet N. Cohen

HNC/mem
Encl.

## Cohen Rabin Stine Schumann LLP

ATTORNEYS AT LAW

11 Times Square - 10th Floor
New York, New York 10036-8002

Tel. (212)512-0825          Fax: (212)202-6100

Zappin v Comfort

May 12, 2015

Client # 31834-004

Invoice #: 111605

### FOR PROFESSIONAL SERVICES RENDERED

| Description of Services | Date | Tkpr | Hours | Amount |
|---|---|---|---|---|
| Multiple Emails t/AZ threatening proceedings and actions. | 2/12/2015 | HNC | 0.25 | 150.00 |
| Assist HNC as instructed re OSC for counsel fees and other relief. | | RP | 0.50 | 150.00 |
| SATURDAY. Working on trial prep. | 2/14/2015 | HNC | 0.25 | 150.00 |
| Dealing with evidentiary hearing issues (actual engagement of HNC during potential dates for AZ/CC hearing) and motion practice by AZ and other issues. | 2/17/2015 | HNC | 0.25 | 150.00 |
| Legal research re enforcement. | | RP | 0.50 | 150.00 |
| OC w/RP re OSC for enforcement | 2/20/2015 | HNC | 0.50 | 300.00 |
| Receive assignment from HNC and OC with HNC; prep and assist HNC for CT; drafting OSC for enforcement pursuant to HNC's instructions; asssisting HNC with aff. draft re enforcement. | | RP | 4.00 | 1,200.00 |
| Assist HNC re aff and OSC re enforcement;Westlaw research and cite check. | 2/23/2015 | RP | 0.75 | 225.00 |
| Mark up RP's initial draft of OSC and supporting papers for enforcement of Justice Kaplan's orders.  100% charged against AZ. | 2/25/2015 | HNC | 0.75 | 450.00 |
| Trial prep for Friday including completing HIPAA form and sending to AZ for evidentiary hearing on his supervised visitation continuation..  Working on the osc against AZ for enforcement of his court ordered obligations to pay fees to AFC and her expert Dr. Metrikin. | 3/02/2015 | HNC | 2.25 | 1,350.00 |
| Receive Zappin emergency papers re stay and other relief--research; review 65 page order; prep and assist HNC for Ct on 3-2-15.  Assist HNC re editing AFF and OSC for Enforcement; more Westlaw research; checking case citations; begin marshalling the voluminous exhibits; | | RP | 4.50 | 1,350.00 |

| Zappin v Comfort | | | May 12/2015<br>Inv #11605<br>Page   2 |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| marshalling emails.; assist HNC throughout the day as instructed. | | | | |
| In Court on AZ's motion to stay Friday's trial and for appointed counsel and other relief. (Also completing and filing AFC's motion for fees and other relief, charged only against AZ not CC.) Give Judge subpoena to sign for AZ's mental health records. Copy served on RW and AZ. AZ has the HIPAA form and has 24 hours within which to sign or else consequences. Copy served on RW and AZ. | 3/03/2015 | HNC | 3.25 | 1,950.00 |
| Assist Ms. Cohen as instructed—research re Uniform Trial Rules re duty of AFC; case law research; assist in editing and drafting of OSC; finalize all exhibits for OSC for enforcement relief. Draft and finalize Subpoena for Dr. Brooks; Prep for Ct and travel to NY Supreme and process OSC for enforcement relief; meet Ms. Cohen in CT and assist at Ct and follow ups at office. | | RP | 5.00 | 1,500.00 |
| Trial prep work w/RP | 3/04/2015 | HNC | 0.50 | 300.00 |
| Trial prep work with HNC; reviewing exhibits; services re scheduling; research re trial points; receive amended order from the Court; assist HNC re Metrikin and Ravitz scheduling and misleading emails from AZ to Ravitz re status of trial. Charging Anthony Zappin for the enforcement work and his misleading emails that caused legal services by HNC. | | RP | 1.25 | 375.00 |
| Decision in from Justice Kaplan. She just canceled tomorrow's trial date and all subsequent trial dates. Notify Dr. Metrikin who notifies HNC he has canceled his patients and cleared his day for the trial. Prior to receiving decision, trial prep for tomorrow's trial. | 3/05/2015 | HNC | 1.50 | 900.00 |
| Received subpoena signed by Judge and signed order to show cause with service and briefing schedule. Email t/AZ | 3/06/2015 | HNC | 0.10 | 60.00 |
| SUNDAY Receive email t/AZ re CFS visitation schedule w/baby Reid for March. | 3/08/2015 | HNC | 0.05 | 30.00 |
| SUNDAY. Review subpoenas t/AZ t/Alan Ravitz, M.D. | 3/29/2015 | HNC | 0.05 | 30.00 |
| Services re upcoming trial dates; review subpoenas and new order. Charging 1/2 t/Anthony Z. | 4/15/2015 | RP | 0.25 | 75.00 |
| Review Justice Kaplan's Court Order and Lara Ott's letter t/Court now that she has been retained as AZ's lawyer. | 4/16/2015 | HNC | 0.13 | 78.00 |
| Made up new records and update sub folders. Update court records and order binder. | 4/17/2015 | DR | 5.00 | 375.00 |
| HNC spent 3 hours on Zappin: 2 hours in Court and after; 1 hour preparing for Court. Charging 50% to Anthony Zappin and 50% to Claire Comfort. | 4/24/2015 | HNC | 1.50 | 900.00 |
| Made up new records and update subpoena folders. | | DR | 1.00 | 75.00 |

**TOTAL FEES**                                                                          $12,273.00

Zappin v Comfort

May 12/2015
Inv #11605
Page      3

## BILLING RATE SUMMARY

| Tkpr Initals | Name | Hours | Rate | Amount |
|---|---|---|---|---|
| HNC | Harriet N. Cohen | 11.33 | 600.00 | 6,798.00 |
| RP | Robert Pagano | 16.75 | 300.00 | 5,025.00 |
| DR | Donald Rose | 6.00 | 75.00 | 450.00 |

## DISBURSEMENTS

| Description | Amount |
|---|---|
| Fax | $39.50 |
| Westlaw | $126.26 |
| Copies | $9.10 |
| WestLaw | $131.90 |
| WestLaw | $11.62 |
| Copies | $37.25 |
| **TOTAL DISBURSEMENTS** | **$355.63** |

| | |
|---|---|
| TOTAL FEES PLUS DISBURSEMENTS | $12,628.63 |
| PREVIOUS BALANCE DUE | $4,610.66 |
| BALANCE NOW DUE | $17,239.29 |

## Cohen Rabin Stine Schumann LLP
### ATTORNEYS AT LAW

11 Times Square - 10th Floor
New York, New York 10036-8002

Tel. (212)512-0625          Fax: (212)202-6300

### PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

Fees and Disbursements Due from Current Bill                    $12,626.63

Previous Balance Due                                            $4,610.66

Total Balance Now Due                                          $17,239.29

Amount of Your Payment                          $_____

# EXHIBIT B



Anthony Zappin <anthony.zappin@gmail.com>

## ZAPPIN v COMFORT

**Anthony Zappin** <anthony.zappin@gmail.com>                    Wed, May 13, 2015 at 3:10 PM
To: Maherly Manigault <MManigault@crsslaw.com>

Thank you Ms. Manigault.  Please let me know when Ms. Cohen is available for a telephone call to go over her bill.

Anthony

On Wed, May 13, 2015 at 3:07 PM, Maherly Manigault <MManigault@crsslaw.com> wrote:

Dear Mr. Zappin:  Harriet N. Cohen, Esq., asked me to email you the attached invoice.


Maherly Manigault

Cohen Rabin Stine Schumann LLP

11 Times Square, 10th Floor

New York, New York 10036

Phone: 212-512-0825

Fax:    212-202-6100

Dir. Dial: 212-512-0816

mmanigault@crsslaw.com



Anthony Zappin <anthony.zappin@gmail.com>

# ZAPPIN v COMFORT

**Anthony Zappin** <anthony.zappin@gmail.com>                          Wed, May 13, 2015 at 5:14 PM
To: "HCohen@crslaw.com" <HCohen@crslaw.com>

Harriet -

Please let me know when you are available this week for a telephone call to go over your bill. Also, I noticed that there are numerous entries in your invoice dated today for February 2015. Given that that an invoice for these entries was not sent within 60 days as required by NY Code, I ask that you go ahead and write them off as they are unlawful charges.

Best,
Anthony
---------- Forwarded message ----------
From: **Maherly Manigault** <MManigault@crslaw.com>
Date: Wed, May 13, 2015 at 3:07 PM
Subject: ZAPPIN v COMFORT
To: Anthony Zappin <anthony.zappin@gmail.com>


Dear Mr. Zappin:  Harriet N. Cohen, Esq., asked me to email you the attached invoice.



Maherly Manigault

Cohen Rabin Stine Schumann LLP

11 Times Square, 10th Floor

New York, New York 10036

Phone: 212-512-0825

Fax:       212-202-6100

Dir. Dial: 212-512-0816

mmanigault@crslaw.com

_____

 **ZAPPIN MAY INVOICE.pdf**
      118K

# EXHIBIT C

# Anthony Zappin

150 W. 16ᵗ Street, Apt. D1 • New York, NY 10011 • Phone: (914) 434-4193 • Fax: (540) 363-3031
E-Mail: anthony.zappin@gmail.com

Date: February 12, 2015

**BY E-MAIL**

Harriet Cohen
Cohen Rabin Stine Schumann LLP
11 Times Square 10ᵗ Fl.
New York, NY 10036

      Re:    *Zappin v. Comfort*, Index No. 301568/14; *Ex rel. Zappin*, Index No. 350075/14

Dear Ms. Cohen:

I write in response to your letter of yesterday containing your invoices for the above-referenced matters.

As an initial matter, I take much offense to your characterization that any payment to you is "past due." It was you who withheld invoices for nearly 4 months. Despite repeated requests from me that you provide your invoices in a timely fashion, you refused to provide any billing statements for the months of September, October and November 2014 until they were placed in regular mail on December 22, 2014. This withholding period corresponds to the time period in which Mot. Seq. #2 was pending which sought your disqualification for egregious misconduct and unethical behavior. In fact, Mot. Seq. #2 was fully submitted on December 18, 2014 and your invoices magically appeared just days later, even though they were relevant and necessary to brief the pending application seeking your disqualification.

And in the 4 months you failed to provide invoices, you let thousands of dollars in fees purportedly owed to you accumulate. Now, you expect payment in the drop of the hat. This is unreasonable and amounts to little more than abusive litigation tactics.

Your efforts to continue to bully me are transparent and will not be tolerated any further. Based on your most recent invoices, it is telling that you have already prepared an application for counsel fees precisely 30 days after your December 2014 invoice was sent. And such application was drafted well-prior to your most recent February 11, 2015 letter claiming payment was "past due." Your anxiousness to further prejudice this custody litigation is appalling and reprehensible. If it takes you 4 months to provide invoices, it is extremely disingenuous to claim just a smidgen over 1 month later that payment is "past due." I would advise you to guide your actions and statements more appropriately in the future.

But, this brings us to a larger point. Given the extraordinarily penal and excessively burdensome cost of supervised visitation—which you have staunchly advocated for—I am indigent and have no assets in which to pay your invoices. As you saw in my letter to the Court of February 10, 2015, the cost of supervised visitation was $6,300 for the month of January 2015. This is more than two-thirds of my net income. Factoring in my living expenses, I am now going into debt in order to se██████ hich cannot in any way, shape or form be in his best interests, particularly when his mother is six-figures in debt. I have no savings or other liquid assets as they have been depleted by the 12 months of delay by Justice Kaplan and 16 months of delay and fraud by Ms. Comfort.

I am truly sorry, but I have no money to pay you.

As you saw in my e-mail of yesterday to the New York State Attorney General, I intend to file an Article 78 proceeding against Justice Kaplan next week and seek interim relief. As part of the interim relief, I intend to request that the supervised access be purged or that an evidentiary hearing be commenced immediately and continue day-to-day until completion. I am hopeful that you will join my application for interim relief so that the supervised access can be purged without delay and that I can begin to pay you for your time.

Additionally, as you may have read in my e-mail to Ms. Herskowitz of yesterday, I intend to file an application re-allocating all yours fees and costs to Ms. Comfort given the extreme cost of supervised visitation and the fact that she is and always has been the more monied spouse. Should my interim relief be denied by the Appellate Division, I intend to wait for a decision from the Court on such an application before attempting to pay you any fees.

Unfortunately, I have a long memory and the transcripts. At each court appearance you have made the false claim that I have refused to pay your invoices despite that fact that you failed to provide them. I want to be clear, this letter is the first instance in which I am telling you that I will not pay your invoices. And, it is for the very justifiable reason that supervised visitation—which you have advocated for without any record in the case—has made me indigent.

More importantly, at each appearance court appearance, you have inappropriately threatened me with "judgments." Putting aside the lack of respect and cordiality you have displayed to a fellow member of the bar (but I suppose it is to be expected from an individual who advertises on her website by calling an opposing party the slang and derogatory terms "ex-stripper baby mama," http://www.crslaw.com/news.html), you are more than welcome to seek judgments against me if you feel it is appropriate. However, you should be aware that any such attempt will be swiftly and publicly met with claims against you and your firm for fraud, tortious interference with parental rights, legal malpractice and disgorgement among others.

Lastly, there are numerous discrepancies and suspicious entries in your invoices. This is troubling considering the long exposition you made to the Court at the December 18, 2014 hearing about how meticulous your time entries have been. Before I can even begin to consider paying your invoices, the following items must be addressed:

*Inadequate/Inaccurate Billing Descriptions*

- For the September 9, 2014 billing entry, you simply enter "SATURDAY. Trial prep." This is an inadequate and vague description of your work. There is no detail as to the work you did or what you did to prepare for trial. Please correct this entry with appropriate detail.

- For the September 10, 2014 billing entry, you simply enter "SUNDAY. Prepare for custody trial which starts tomorrow." This is an inadequate and vague description of your work. There is no detail as to the work you did or what you did to prepare for trial. Please correct this entry with appropriate detail.

- For the September 18, 2014 billing entry, you state that "[AZ] is seeking to recuse Justice Kaplan ..." This is an inaccurate description of the Article 78 papers. The papers only sought re-assignment of the matter if Justice Kaplan could not calendar the hearing within an appropriate amount of time. No recusal was sought. Please correct this time entry with an accurate description or strike the comment altogether.

Case 1:16-cv-05985-KPF   Document 26-5   Filed 11/08/16   Page 134 of 215

Zappin v. Comfort, Index No. 301568/14; Ex rel. Zappin, Index No. 450073/14
Page 3 of 5

* For the October 10, 2014 billing entry, you state: "More papers. Matrimonial action portion." The entry is deficient. There is no detail as to the work you did, which "papers" you are referencing or what you did with the "papers." Please correct this entry with appropriate detail or remove it entirely.

* For the October 11, 2014 billing entry, you state: "More papers." The entry is deficient. There is no detail as to the work you did, which "papers" you are referencing or what you did with the "papers." Please correct this entry with appropriate detail or remove it entirely.

* For the October 30, 2014 billing entry, you state: "More papers. Habeas Corpus portion." The entry is deficient. There is no detail as to the work you did, which "papers" you are referencing or what you did with the "papers." Please correct this entry with appropriate detail or remove it entirely.

* For the November 29, 2014 bill entry, you state: "Analyze AZ's OSC and supporting papers to enjoin HNC from representing baby Reid based on HNC's age – HNC is too old – and for other reasons." This entry is an entirely inaccurate representation of the application you are referencing. The application sought to disqualify you because you failed to conduct any investigation, you unethically served a secret subpoena on Dr. Brooks, you have made repeated misrepresentations to the Court and you have improperly injected yourself as a witness in the case. Please correct this time entry with an accurate description or strike the comment altogether.

* For your December 12, 2014 billing entry, you state: "Receive yet another threatening letter f'AZ." Again, this is an inaccurate description of the letter sent. The letter simply requested your billing invoices from September, October and November 2014, which were relevant and necessary to my reply papers to Mot. Seq. #2 to disqualify you. You failed to provide them and instead e-mail Justice Kaplan directly, which was highly inappropriate. Please correct this entry an accurate description or strike the comment altogether.

* For your December 17, 2014 billing entry you state: "Prepare for tomorrow in Court." This is an inadequate and vague description of your work. There is no detail as to the work you did or what you did to prepare for the appearance in Court. Please correct this entry with appropriate detail.

As an attorney with such vast experience, you are aware of the importance of detailed and accurate time entries. The above are merely a few examples of deficient entries littered in your invoices. I am afraid that the lack of detail or description for a significant portion of your time entries reeks of fee churning. Please correct your invoices immediately.

### *Double Billing and Billing for Work Never Done*

In your invoices, there are several instances where it appears that either you or Mr. Pagano double-billed the same time on both the matrimonial and habeas actions. For instance, the entry for Mr. Pagano for November 20, 2014 states: "Assist HNC re answering papers and affirmation in opposition; finalize and serve Zappin and Wallack per HNC. Matrimonial portion." This same exact entry appears on both bills for the matrimonial and habeas actions. There are several other entries where this is the case as well. Please correct all instances of such double-billing on your invoices immediately.

There are also several instances in which Mr. Pagano billed for work that was either never done or was simply made up. By way of example, Mr. Pagano's entry to October 17, 2014 states: "Assist HNC re recent

developments and voluminous submissions and litigation papers created by Zappin." As of October 17, 2014, I had not filed any "voluminous submissions or litigation papers." In fact, with the exception of the Notice of Discontinuance that was a single page, the last papers filed by me were in August 2014. It was not until October 20, 2014 when Ms. Comfort filed her Order to Show Cause to vacate the Notice of Discontinuance that any "voluminous submissions" were received by you or the Court. Thus, Mr. Pagano's entry is entirely fraudulent and once again reeks of fee churning.

Similarly, Mr. Pagano has an entry on October 8, 2014 that states: "Assist HNC re Response to Zappin AD Motion Art. 78 and Atty. Gen." You never filed any papers in response to the Article 78 petition referenced in the entry. Thus, once again Mr. Pagano's entry appears to be fraudulent fee churning.

The above are just a few examples. There are numerous other entries by both you and Mr. Pagano that record work either never done or in response to papers that were never filed and/or never existed. Please correct and remove all such billing entries on your invoices immediately.

### Laura Tucker

On your invoices there are numerous entries from another attorney at your firm, Laura Tucker. It was you, not Ms. Tucker or your firm, that Justice Kaplan appointed as [ ] attorney. Although you state that there is case law in the First Department permitting Ms. Tucker to "assist you," you have failed to cite it. In fact, such case law would be directly contrary to Justice Kaplan's orders appointing you. Please remove all time entries on the invoices from Ms. Tucker immediately.

### Entries on Order to Show Cause re: Dr. Brooks

I kindly request that you remove all time entries related to the submission of your October 1, 2014 Order to Show Cause to compel records and testimony from Dr. Brooks. As I have stated several times, such motion practice could have been avoided had you simply drafted the HIPAA release to permit in-camera review by Justice Kaplan of Dr. Brooks' records. This practice is well-settled in the First Department and in opinions written by Justice Kaplan, which you fail to cite in your papers yet wrote extensively about in an article in the New York Law Journal just a few years ago.

It is clear that your October 1, 2014 Order to Show Cause was merely an attempt to churn fees and paint me as a non-compliant party to further delay and prejudice the litigation. This is highly unethical and deceitful behavior for an Attorney for the Child. As a matter of principle, I will not pay for unnecessary work performed simply to churn fees and taint the litigation. Please remove all billing entries related to the application immediately.

### Entries Related to Mot. Seq. #2 to Disqualify You as Attorney for the Child

I kindly request that you remove all time entries related to your opposition papers to Mot. Seq. #2 seeking to disqualify you. Neither I, nor Ms. Comfort, should have to pay you to defend against your own misconduct. It was you who failed to conduct an investigation into the facts of the case. It was you who served a secret subpoena on Dr. Brooks, as you admitted in your opposition papers. It was you who has made repeated misrepresentations to the Court. And, it was you who has improperly and unethically injected yourself as a witness in this litigation. We should not be financially responsible for your unethical conduct.

Your conduct will be raised with First Department in the form of a disciplinary complaint since Justice Kaplan used Mot. Seq. #2 as a means to further stall and delay this proceeding. Please remove any billing entries related to your opposition papers on the application to disqualify you immediately. I am not paying you to

Zappin v. Comfort, Index No. 301568/14; Ex rel. Zappin, Index No. 350075/14
Page 5 of 5

defend against your own unethical and deceitful conduct that has prejudiced and delayed the litigation, which has cost me tens of thousands of dollars with inappropriate supervised visitation.

If you would like to discuss any of the issues raised in this letter further, please do not hesitate to contact me.

Best regards,

Anthony Zappin

cc:   Robert Wallack (by e-mail)
      Hon. Deborah Kaplan (by facsimile)

# EXHIBIT D



**Comprehensive Family Services**
Forensic & Therapeutic Services
Richard Spitzer, Director

291 Broadway
Suite 808
New York, NY 10007

tel. 212.267.2670
fax. 212.267.2665
www.cfs-nyc.com

May 07, 2015

Anthony Zappin

**Zappin v Comfort**

## STATEMENT OF SERVICES RENDERED

| Date | Start Time | | End Time | Hours | Rate/Hr | | Description of Activity | Amount |
|------|-----------|---|----------|-------|---------|---|------------------------|--------|
| 04/01/15 | 5:30 PM | to | 8:30 PM | 3.00 | $150.00 | JMG | Supervised Visitation | $450.00 |
| 04/07/15 | 6:00 PM | to | 8:00 PM | 2.00 | $150.00 | LN | Supervised Visitation | $300.00 |
| 04/10/15 | 5:30 PM | to | 8:30 PM | 3.00 | $150.00 | JJ | Supervised Visitation | $450.00 |
| 04/11/15 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | SN | Supervised Visitation | $600.00 |
| 04/12/15 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | SN | Supervised Visitation | $600.00 |
| 04/15/15 | 5:30 PM | to | 8:30 PM | 3.00 | $150.00 | JJ | Supervised Visitation | $450.00 |
| 04/21/15 | 5:30 PM | to | 8:30 PM | 3.00 | $150.00 | JMG | Supervised Visitation | $450.00 |
| 04/24/15 | 5:30 PM | to | 8:30 PM | 3.00 | $150.00 | LN | Supervised Visitation | $450.00 |
| | 10:00 AM | to | 11:00 AM | 1.00 | $150.00 | BT | Prepare Written Report | $150.00 |
| 04/25/15 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | SN | Supervised Visitation | $600.00 |
| 04/26/15 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | SN | Supervised Visitation | $600.00 |

| | | |
|---|---|---|
| Services Rendered (Total Hrs / Charges) | 34.00 | $5,100.00 |
| Previous balance | | $4,687.50 |
| 4/29/2015 Payment - Thank You | | ($4,687.50) |
| Total payments and adjustments | | ($4,687.50) |
| **Balance due** | | **$5,100.00** |

Please make check payable to "Comprehensive Family Services, Inc"
For your convenience we accept credit card payment: Visa _____ Mastercard _____
Card # _____ Exp. Date _____ Signature _____ Amount _____
You can also pay online via IntuitQuickbooksPayments.com



**Comprehensive Family Services**
Forensic & Therapeutic Services
*Richard Spitzer, Director*

291 Broadway
Suite 808
New York, NY 10007

tel. 212.267.2670
fax. 212.267.2665
www.cfs-nyc.com

April 09, 2015

Anthony Zappin

Zappin v Comfort

## STATEMENT OF SERVICES RENDERED

| Date | Start Time | End Time | Hours | Rate/Hr | Description of Activity | Amount |
|------|-----------|----------|-------|---------|------------------------|--------|
| 03/01/15 | 11:00 AM | to 3:00 PM | 4.00 | $150.00 | LN Supervised Visitation | $600.00 |
| 03/04/15 | 5:30 PM | to 8:30 PM | 3.00 | $150.00 | JMGSupervised Visitation | $450.00 |
| 03/10/15 | 5:30 PM | to 8:30 PM | 3.00 | $150.00 | JJ  Supervised Visitation | $450.00 |
| 03/13/15 | 5:30 PM | to 8:30 PM | 3.00 | $150.00 | JJ  Supervised Visitation | $450.00 |
| 03/14/15 | 11:30 AM | to 3:30 PM | 4.00 | $150.00 | JJ  Supervised Visitation | $600.00 |
| 03/15/15 | 9:00 AM | to 1:15 PM | 4.25 | $150.00 | CH Supervised Visitation | $637.50 |
| 03/24/15 | 5:30 PM | to 8:30 PM | 3.00 | $150.00 | CH Supervised Visitation | $450.00 |
| 03/27/15 | 5:30 PM | to 8:30 PM | 3.00 | $150.00 | JMGSupervised Visitation | $450.00 |
| 03/29/15 | 11:00 AM | to 3:00 PM | 4.00 | $150.00 | CH Supervised Visitation | $600.00 |

| | | |
|---|---|---|
| Services Rendered (Total Hrs / Charges) | 31.25 | $4,687.50 |
| Previous balance | | $4,200.00 |
| 4/1/2015 Payment - Thank You | | ($4,200.00) |
| Total payments and adjustments | | ($4,200.00) |
| **Balance due** | | **$4,687.50** |

Please make check payable to "Comprehensive Family Services, Inc"
For your convenience we accept credit card payment: Visa _____ Mastercard _____
Card # _____ Exp. Date _____ Signature _____ Amount _____



**Comprehensive Family Services**
Forensic & Therapeutic Services
*Richard Spitzer, Director*

291 Broadway
Suite 808
New York, NY 10007

tel. 212.267.2670
fax. 212.267.2665
www.cfs-nyc.com

March 05, 2015

Anthony Zappin

Zappin v Comfort

## STATEMENT OF SERVICES RENDERED

| Date | Start Time | End Time | Hours | Rate/Hr | Description of Activity | Amount |
|------|-----------|----------|-------|---------|------------------------|--------|
| 02/01/15 | 11:00 AM | to 3:00 PM | 4.00 | $150.00 | JMGSupervised Visitation | $600.00 |
| 02/05/15 | 5:00 PM | to 7:00 PM | 2.00 | $150.00 | BT Supervised Visitation | $300.00 |
| 02/10/15 | 5:00 PM | to 7:00 PM | 2.00 | $150.00 | JJ Supervised Visitation | $300.00 |
| 02/13/15 | 5:00 PM | to 7:00 PM | 2.00 | $150.00 | JJ Supervised Visitation | $300.00 |
| 02/14/15 | 11:00 AM | to 3:00 PM | 4.00 | $150.00 | JJ Supervised Visitation | $600.00 |
| 02/15/15 | 11:00 AM | to 3:00 PM | 4.00 | $150.00 | JJ Supervised Visitation | $600.00 |
| 02/24/15 | 5:30 PM | to 8:30 PM | 3.00 | $150.00 | CH Supervised Visitation | $450.00 |
| 02/27/15 | 5:30 PM | to 8:30 PM | 3.00 | $150.00 | JMGSupervised Visitation | $450.00 |
| 02/28/15 | 11:00 AM | to 3:00 PM | 4.00 | $150.00 | JMGSupervised Visitation | $600.00 |

| | | |
|---|---|---|
| Services Rendered (Total Hrs / Charges) | 28.00 | $4,200.00 |

Previous balance     $6,300.00
2/24/2015 Payment - Thank You     ($6,300.00)

Total payments and adjustments     ($6,300.00)

**Balance due**     **$4,200.00**

Please make check payable to "Comprehensive Family Services, Inc"
For your convenience we accept credit card payment: Visa _____ Mastercard _____
Card # _____ Exp. Date _____ Signature _____ Amount _____



Comprehensive Family Services
Forensic & Therapeutic Services
*Richard Spitzer, Director*

291 Broadway
Suite 308
New York, NY 10007

tel: 212.267.2670
fax: 212.267.2665
www.cfs-nyc.com

February 06, 2015

Anthony Zappin

Zappin v Comfort

## STATEMENT OF SERVICES RENDERED

| Date | Start Time | | End Time | Hours | Rate/Hr | | Description of Activity | Amount |
|------|-----------|---|----------|-------|---------|---|------------------------|--------|
| 01/01/15 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | NO | Supervised Visitation | $300.00 |
| 01/02/15 | 4:45 PM | to | 7:15 PM | 2.50 | $150.00 | CH | Supervised Visitation | $375.00 |
| 01/03/15 | 10:45 AM | to | 3:15 PM | 4.50 | $150.00 | CH | Supervised Visitation | $675.00 |
| 01/04/15 | 10:45 AM | to | 3:15 PM | 4.50 | $150.00 | CH | Supervised Visitation | $675.00 |
| 01/07/15 | 4:45 PM | to | 8:00 PM | 3.25 | $150.00 | CH | Supervised Visitation | $487.50 |
| 01/08/15 | 8:00 AM | to | 10:00 AM | 2.00 | $150.00 | BT | Prepare Written Report | $300.00 |
| 01/13/15 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | JMG | Supervised Visitation | $300.00 |
| 01/15/15 | 4:45 PM | to | 7:15 PM | 2.50 | $150.00 | CH | Supervised Visitation | $375.00 |
| 01/17/15 | 11:00 AM | to | 2:45 PM | 3.75 | $150.00 | CH | Supervised Visitation | $562.50 |
| | 2:45 PM | to | 3:15 PM | 0.50 | $150.00 | MF | Supervised Visitation | $75.00 |
| 01/18/15 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | KA | Supervised Visitation | $600.00 |
| 01/21/15 | 4:45 PM | to | 7:15 PM | 2.50 | $150.00 | CH | Supervised Visitation | $375.00 |
| 01/28/15 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | JMG | Supervised Visitation | $300.00 |
| 01/30/15 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | JJ | Supervised Visitation | $300.00 |
| 01/31/15 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | SN | Supervised Visitation | $600.00 |

| | | |
|---|---|---|
| Services Rendered (Total Hrs / Charges) | 42.00 | $6,300.00 |
| Previous balance | | $4,575.00 |
| 1/23/2015 Payment - Thank You | | ($4,575.00) |

Anthony Zapplin

Page 2

Total payments and adjustments

($4,575.00)

Balance due

$6,300.00

Please make check payable to "Comprehensive Family Services, Inc"
For your convenience we accept credit card payment: Visa _____ Mastercard _____
Card # _____ Exp. Date _____ Signature _____ Amount _____



**Comprehensive Family Services**
Forensic & Therapeutic Services
*Richard Spitzer, Director*

291 Broadway
Suite 806
New York, NY 10007

tel. 212.267.2670
fax. 212.267.2665
www.cfs-nyc.com

January 08, 2015

Anthony Zappin

Zappin v Comfort

### STATEMENT OF SERVICES RENDERED

| Date | Start Time | | End Time | Hours | Rate/Hr | Description of Activity | Amount |
|------|-----------|---|----------|-------|---------|------------------------|--------|
| 12/02/14 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | JMG Supervised Visitation | $300.00 |
| 12/05/14 | 6:00 PM | to | 8:00 PM | 2.00 | $150.00 | JMG Supervised Visitation | $300.00 |
| 12/06/14 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | DS Supervised Visitation | $600.00 |
| 12/07/14 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | CH Supervised Visitation | $600.00 |
| 12/10/14 | 7:00 PM | to | 9:00 PM | 2.00 | $150.00 | JMG Supervised Visitation | $300.00 |
| 12/16/14 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | NO Supervised Visitation | $300.00 |
| 12/17/14 | 5:00 PM | to | 6:30 PM | 1.50 | $150.00 | BT Prepare Written Report | $225.00 |
| 12/19/14 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | BT Supervised Visitation | $300.00 |
| 12/20/14 | 10:45 AM | to | 3:15 PM | 4.50 | $150.00 | MF Supervised Visitation | $675.00 |
| 12/21/14 | 10:45 AM | to | 3:15 PM | 4.50 | $150.00 | DS Supervised Visitation | $675.00 |
| 12/30/14 | 5:00 PM | to | 7:00 PM | 2.00 | $150.00 | NG Supervised Visitation | $300.00 |

| | | |
|---|---|---|
| Services Rendered (Total Hrs / Charges) | 30.50 | $4,575.00 |
| Previous balance | | $2,137.50 |
| 12/10/2014 Payment - Thank You | | ($2,137.50) |
| Total payments and adjustments | | ($2,137.50) |
| **Balance due** | | **$4,575.00** |

Please make check payable to "Comprehensive Family Services, Inc".
For your convenience we accept credit card payment: Visa _____ Mastercard _____
Card # _____ Exp. Date _____ Signature _____ Amount _____



**Comprehensive Family Services**
Forensic & Therapeutic Services
Richard Spitzer, Director

291 Broadway
Suite 808
New York, NY 10007

tel. 212.267.2670
fax. 212.267.2665
www.cfs-nyc.com

December 04, 2014

Anthony Zappin

Zappin v Comfort

## STATEMENT OF SERVICES RENDERED

| Date | Start Time | | End Time | Hours | Rate/hr | | Description of Activity | Amount |
|------|-----------|---|----------|-------|---------|---|------------------------|--------|
| 09/01/14 | 10:00 AM | to | 4:00 PM | 6.00 | $150.00 | BT | Supervised Visitation | $900.00 |
| 11/22/14 | 11:00 AM | to | 12:00 PM | 1.00 | $150.00 | AM | Supervised Visitation | $150.00 |
| | 12:00 PM | to | 1:15 PM | 1.25 | $150.00 | RS | Supervised Visitation | $187.50 |
| 11/23/14 | 11:00 AM | to | 3:00 PM | 4.00 | $150.00 | BT | Supervised Visitation | $600.00 |
| 11/26/14 | 5:30 PM | to | 7:00 PM | 1.50 | $150.00 | ME | Supervised Visitation | $225.00 |
| | 5:00 PM | to | 5:30 PM | 0.50 | $150.00 | NO | Supervised Visitation | $75.00 |

| | | |
|---|---|---|
| Services Rendered (Total Hrs / Charges) | 14.25 | $2,137.50 |
| Previous balance | | $3,225.00 |
| 11/17/2014 Payment - Thank You | | ($3,225.00) |
| Total payments and adjustments | | ($3,225.00) |
| **Balance due** | | **$2,137.50** |

Please make check payable to "Comprehensive Family Services, Inc"
For your convenience we accept credit card payment: Visa _____ Mastercard _____
Card # _____ Exp. Date _____ Signature _____ Amount _____

# EXHIBIT E

## Cohen Rabin Stine Schumann LLP
### ATTORNEYS AT LAW
11 Times Square - 10th Floor
New York, New York 10036-8002

Tel. (212)512-0825    Fax: (212)202-6100

Zappin v Comfort

December 22, 2014

Client # 31834-002

Invoice #: 111422

## FOR PROFESSIONAL SERVICES RENDERED

| Description of Services | Date | Tkpr | Hours | Amount |
|---|---|---|---|---|
| Services in habeas corpus proceeding - arguing re continuing the hearing. | 10/20/2014 | HNC | 0.50 | 300.00 |
| Oral argument by phone before Justice Kaplan re the new habeas corpus pcdg AZ filed today. Follow up. | 10/22/2014 | HNC | 0.50 | 300.00 |
| Assist HNC with latest email from Zappin. Habeas Corpus portion. | 10/23/2014 | RP | 0.25 | 75.00 |
| Attend at Court at request of Andrew Coyle, court atty. AZ has brought on a habeas corpus proceeding. HNC is appointed attorney for child in that proceeding. Child is delivered to court and Judge inspects him. He is fine. | 10/27/2014 | HNC | 2.00 | 1,200.00 |
| Assist HNC and follow ups re habeas corpus petition and request for Order. | 10/28/2014 | RP | 0.75 | 225.00 |
| More papers. Habeas Corpus portion. | 10/30/2014 | HNC | 0.25 | 150.00 |
| Receive most recent Zappin OSC seeking disqualification of HNC in habeas proceeding; review; brief oc with HNC and cal dates. | | RP | 0.75 | 225.00 |
| Assist HNC as instructed re Fiduricary papers; habeas corpus portion. | 11/17/2014 | RP | 0.25 | 75.00 |
| Meet w/RP re the answering papers. Habeas Corpus portion. | 11/20/2014 | HNC | 0.50 | 300.00 |
| Assist HNC re answering papers and affimation in opposition; finalize and serve Zappin and Wallach per HNC. Matrimonial portion. | | RP | 0.75 | 225.00 |
| Emails w/the Court re new date for arguing against multiple motions and t/request more time to respond; receive Court Order re same. Working on reviewing the papers in preparation for response to multiple motions. Habeas corpus portion. | 11/25/2014 | HNC | 0.50 | 300.00 |
| SATURDAY. Analyze AZ's OSC and supporting papers to enjoin HNC from representing baby Reid based on HNC's | 11/29/2014 | HNC | 5.00 | 3,000.00 |

Zappin v Comfort

December 22/2014
Inv #11422
Page    2

age -- HNC is too old -- and for other reasons.  First draft
HNC AFF in OPP.

**TOTAL FEES**                                                        $6,375.00

## BILLING RATE SUMMARY

| Tkpr Initals | Name | Hours | Rate | Amount |
|---|---|---|---|---|
| HNC | Harriet N. Cohen | 9.25 | 600.00 | 5,550.00 |
| RP | Robert Pagano | 2.75 | 300.00 | 825.00 |

TOTAL FEES PLUS DISBURSEMENTS                                $6,375.00

BALANCE NOW DUE                                              $6,375.00

*One-half owed*
*by A.Z.*

*$ 3,187.50*

**Cohen Rabin Stine Schumann LLP**

ATTORNEYS AT LAW

11 Times Square - 10th Floor
New York, New York 10036-8002

Tel. (212)512-0825          Fax: (212)202-6100

Zappin v Comfort

December 19, 2014

Client # 31834-001

Invoice # 111420

## FOR PROFESSIONAL SERVICES RENDERED

| Description of Services | Date | Tkpr | Hours | Amount |
|---|---|---|---|---|
| Emails w/counsel; reading material; receive copy of Order appointing Dr. Ravitz. | 9/03/2014 | HNC | 0.50 | 300.00 |
| Communications trying to get HIPAA forms signed. Emails f/AZ. | 9/04/2014 | HNC | 0.25 | 150.00 |
| SUNDAY. Read Anthony Zappin's letter t/Justice Kaplan. Review other documents in the case in preparation for the trial. | 9/07/2014 | HNC | 0.50 | 300.00 |
| MONDAY. Contact t/court that Ravitz Report is in. Start the review process in the courtroom. Sign affirmation about reading the Report in courtroom. | 9/08/2014 | HNC | 1.50 | 900.00 |
| Court Order that Dr. Metrikin may have access to the report outside of the courtroom. Trial prep. | 9/12/2014 | HNC | 1.00 | 600.00 |
| SATURDAY. Trial prep. | 9/13/2014 | HNC | 2.50 | 1,500.00 |
| SUNDAY. Prepare for custody trial which starts tomorrow. | 9/14/2014 | HNC | 5.00 | 3,000.00 |
| On trial - first day of trial. Make opening statement; Xamine two witnesses from CFS; objections including w/Dr. A. Ravitz on the stand. | 9/15/2014 | HNC | 7.00 | 4,200.00 |
| Follow up to yesterday in Court. Review notes; create files. | 9/16/2014 | HNC | 0.25 | 150.00 |
| Email exchanges w/AZ re he will make a motion to set visitation w/Reid. | 9/17/2014 | HNC | 0.25 | 150.00 |
| Receive notice of motion f/Anthony Zappin notifying HNC to be in the App Div 1st Dept on Monday at 2pm: he is seeking to recuse Justice Kaplan to complain about the date of the next hearing date. Emails re visitation; issues re the HIPAA form; AZ has emailed HNC a revocation of the HIPAA form he executed. | 9/18/2014 | HNC | 0.50 | 300.00 |
| Attend at App Div for a no-show (no notification thereof) on a notice of motion to recuse Justice Kaplan by AZ. Send letter to counsel re same. T/C and emails w/AAG. | 9/22/2014 | HNC | 1.00 | 600.00 |

Zappin v Comfort

December 19/2014
Inv #11420
Page       2

| | | | | |
|---|---|---|---|---|
| SUNDAY. Write osc and moving papers for AZ's mental health records. Gather exhibits. | 9/29/2014 | HNC | 3.00 | 1,800.00 |
| Finalize the OSC and papers in support. | 9/29/2014 | HNC | 0.25 | 150.00 |
| Review HNC OSC and AFF; brief legal research and draft legal points; finalize OSC for filing with the Court on 9-30-14. | | RP | 2.25 | 675.00 |
| Finalize all papers; travel to Court; have OSC reviewed and have OSC processed for submission to Justice Kaplan. | 9/30/2014 | RP | 1.75 | 525.00 |
| OSC processed and served. Emails f/AZ. | 10/01/2014 | HNC | 0.50 | 300.00 |
| Went to court to pick up Zappin papers and obtain return date; returned to office. | | LT | 1.30 | 487.50 |
| Assist HNC re Subpoenas to Dr. Brooks; and OSC. | | RP | 1.00 | 300.00 |
| Assist HNC re Response to Zappin AD Motion Art. 78 and Atty Gen. | 10/08/2014 | RP | 0.75 | 225.00 |
| Assist HNC re OSC and compelling HIPAA authorization; services and research re Notice of Discontinuance just served by Zappin. | 10/13/2014 | RP | 2.50 | 750.00 |
| Emails regarding status of case and re today's "compliance conference." And from AAG. | 10/15/2014 | HNC | 0.25 | 150.00 |
| Assist HNC re recent developments and voluminous submissions and litigation papers created by Zappin. | 10/17/2014 | RP | 2.25 | 675.00 |
| Argue motions including to vacate discontinuance by phone. Judge issues TRO's. Follow up. | 10/20/2014 | HNC | 0.75 | 450.00 |
| Services re Comfort's OSC for injunctive relief. | | RP | 0.50 | 150.00 |
| Emails f/AZ and BH. | 10/21/2014 | HNC | 0.25 | 150.00 |
| Assist HNC re Zappin proposal; analyze and oc with HNC to review. | | RP | 1.00 | 300.00 |
| Oral argument by phone before Justice Kaplan. portion of the argument that related to the matrimonial action. Follow up. | 10/22/2014 | HNC | 0.25 | 150.00 |
| Assist HNC with latest email from Zappin. Matrimonial action portion. | 10/23/2014 | RP | 0.25 | 75.00 |
| Review Anthony Z's motion to "vacate." | 10/29/2014 | HNC | 0.50 | 300.00 |
| More papers. Matrimonial action portion. | 10/30/2014 | HNC | 0.25 | 150.00 |
| More papers. | 10/31/2014 | HNC | 0.50 | 300.00 |
| Assist HNC as instructed re Fiduciary docs. Matrimonial portion. | 11/17/2014 | RP | 0.25 | 75.00 |
| Meet w/RP re the answering papers. Matrimonial portion. | 11/20/2014 | HNC | 0.50 | 300.00 |
| Assist HNC re answering papers and affirmation in opposition; finalize and serve Zappin and Wallach per HNC. Matrimonial portion. | | RP | 0.75 | 225.00 |
| Draft Affidavit of service and arrange for delivery of papers to Court. | 11/24/2014 | RP | 0.50 | 150.00 |
| Emails w/the Court re new date for arguing against multiple motions and Visquest more time to respond; receive Court Order re same. Working on reviewing the | 11/25/2014 | HNC | 0.50 | 300.00 |

Zappin v Comfort

December 19/2014
Inv #11420
Page   3

papers in preparation for response to  multiple motions.
Matrimonial portion.
SUNDAY: Analyze AZ's OSC and supporting papers to     11/30/2014     HNC     3.00     1,800.00
dismiss and vacate the TRO.  First draft HNC AFF in OPP.

TOTAL FEES                                                                       $23,062.50

## BILLING RATE SUMMARY

| Tkpr Initials | Name | Hours | Rate | Amount |
|---|---|---|---|---|
| HNC | Harriet N. Cohen | 30.75 | 600.00 | 18,450.00 |
| LT | Laura Tucker | 1.30 | 375.00 | 487.50 |
| RP | Robert Pagano | 13.75 | 300.00 | 4,125.00 |

## DISBURSEMENTS

| Description | Amount |
|---|---|
| Federal Express | $49.23 |
| Local Transportation | $53.90 |
| Motion Fee - Zappin/Comfort | $45.00 |
| Copies | $1.00 |
| Fax | $106.00 |
| WestLaw | $88.64 |
| Copies | $15.50 |
| Copies | $13.75 |
| Local Transportation | $21.50 |

TOTAL DISBURSEMENTS                                                    $376.32

TOTAL FEES PLUS DISBURSEMENTS                             $23,438.82

AMOUNT OF RETAINER APPLIED TO CURRENT BILL        $6,925.00

BALANCE NOW DUE                                                    $16,513.82

*One-Half owed
by A.Z.*

*$ 8,256.91*



# Cohen Rabin Stine Schumann LLP

ATTORNEYS AT LAW

11 Times Square - 10th Floor
New York, New York 10036-8002

Tel. (212)512-0825          Fax: (212)202-6100

Zappin v Comfort

September 08, 2014

Client #  31834-001

Invoice #  112285

## FOR PROFESSIONAL SERVICES RENDERED

| Description of Services | Date | Tkpr | Hours | Amount |
|---|---|---|---|---|
| Assist HNC re incoming court papers and Order. | 8/12/2014 | RP | 0.25 | 75.00 |
| Email b/the parties and the Court regarding Sept. 16th, a date HNC cannot be present at a hearing. | 8/14/2014 | HNC | 0.25 | 150.00 |
| Long t/c t/AZ and review emails t/AZ. | 8/15/2014 | HNC | 0.50 | 300.00 |
| T/C t/CC and t/Court and email t/AZ.  Court is Monday, not Wednesday.  AZ replies ok. | 8/22/2014 | HNC | 0.25 | 150.00 |
| Assist HNC. | | RP | 0.50 | 150.00 |
| In Court.  Judge directs that AZ's mother can be deposed in New York this week but no out of state depositions.  Trial starts on 9/15.  Make apptmt to see baby tomorrow w/each of the parents. | 8/25/2014 | HNC | 2.00 | 1,200.00 |
| email t/AZ that his mother will not be coming to NY for deposition after all but will attend as a witness on 9/15. | 8/26/2014 | HNC | 1.50 | 900.00 |
| Meetings w/baby Reid: first at CFS to observe father w/baby; then in City Hall Park to observe mother w/baby. Issue of HIPPAA forms.  Follow up to yesterday's visit w/baby in presence of dad and mom. | 8/27/2014 | HNC | 0.25 | 150.00 |

**TOTAL FEES**                                                                $3,075.00

## BILLING RATE SUMMARY

| Tkpr Initals | Name | Hours | Rate | Amount |
|---|---|---|---|---|
| HNC | Harriet N. Cohen | 4.75 | 600.00 | 2,850.00 |
| RP | Robert Pagano | 0.75 | 300.00 | 225.00 |

Zappin v Comfort

September 8/2014
Inv #12285
Page    2

| | |
|---|---|
| TOTAL FEES PLUS DISBURSEMENTS | $3,075.00 |

PAYMENT(S) RECEIVED SINCE LAST BILL

| Aug 20/14 | Retainer | $5,000.00 | |
|---|---|---|---|
| Aug 22/14 | Retainer | $5,000.00 | |
| TOTAL PAYMENT(S) APPLIED TO PREVIOUS BILL(S) | | | $0.00 |

| | |
|---|---|
| AMOUNT OF RETAINER APPLIED TO CURRENT BILL | $3,075.00 |

| | |
|---|---|
| BALANCE NOW DUE | $0.00 |

| | |
|---|---|
| CREDIT BALANCE | $6,925.00 |

*One-half credited to*
*A.Z.*

*$3,462.50*

# EXHIBIT G

# COHEN RABIN STINE SCHUMANN LLP

Attorneys at Law
11 Times Square - 10th Floor
New York, New York 10036
Tel. (212) 512-6825     Fax (212) 202-6100

Harriet Newman Cohen
Bonnie Rabin
Martha Cohen Stine
Gretchen Beall Schumann*
Paul C. Kurland
Tim James
Evridiki Poumpouridis
Amanda Laird Creegan*
Lindsay B. Pfeffer*
Laura A. Tucker
Robert Pagano, Legal Assistant
*also admitted in New Jersey

Direct dial: (212) 512-0801
E-mail: hcohen@crsslaw.com

**BY EMAIL:** anthony.zappin@gmail.com
**PERSONAL AND CONFIDENTIAL**

February 11, 2015

Anthony J. Zappin, Esq.
194 West 10th Street, Apt. D1
New York, NY 10014

Dear Mr. Zappin:

Enclosed herewith please find two invoices dated February 9, 2015 as follows:

Matrimonial Action Invoice #111472 (12/7/14-1/25/15):          $12,867.57
Habeas Corpus Action Invoice #111475 (12/7/14-12/18/14):      $ 5,418.75

Total Payable:          $18,286.32

These invoices are for your one-half of legal services rendered and disbursements posted during the time period noted above. They include your past due amounts since you have never paid anything beyond your $5,000 retainer fee (paid on 8/22/14). I am also enclosing your prior invoices for your ease of reference. The adjustment for the one-half credit appears as a 12/31/14 entry on Invoice #111475, and as a 1/31/15 entry on Invoice #111472.

Please remit promptly.

Sincerely yours,

COHEN RABIN STINE SCHUMANN LLP

By: _____

Harriet Newman Cohen

HNC/mem
Encls.

G:\ZZAPPIN\\COMPORTLETTERS\BILL LETTER (ANTHONY) 2-11-15.wpd

**Cohen Rabin Stine Schumann LLP**

ATTORNEYS AT LAW

11 Times Square - 10th Floor
New York, New York 10036-8002

Tel. (212)512-0825          Fax: (212)202-6300

Zappin v Comfort

February 09, 2015

Client # 31834-003

Invoice #: 111472

## FOR PROFESSIONAL SERVICES RENDERED

| Description of Services | Date | Tkpr | Hours | Amount |
|---|---|---|---|---|
| Review status of the three motions in the two Indexed numbered matrimonial actions that need to be responded to by Wednesday 12/10. | 12/07/2014 | HNC | 0.25 | 150.00 |
| Working on affs in opp to two motions brought on by A.Z in matrimonial action(s). Receive and initial review of another motion (142 pages) brought on by A.Z. for duplicative relief. Receive email f/A.Z. that he is suing HNC and CRSS for malpractice. Receive yet another threatening letter f/AZ | 12/10/2014 | HNC | 3.75 | 2,250.00 |
| Worked w/ HNC getting Zappin papers that HNC wrote organized and sent out; meeting w/HNC re same and tracking exhibits in document as HNC finishes editing her Aff in Opposition to Motion to Dismiss the Mother's matrimonial action and in Opp re Pediatrician issue; compiled, copied and organized exhibits; began assembling bluebacks; dropped off at Fed Ex copies of two HNC Affs in Opposition addressed to Anthony Zappin. Counsel and AZ have also been served by email. | | LT | 2.50 | 937.50 |
| Email t/Court for more time to answer AZ's latest motion to get rid of Dr. Ravitz, the court appointed neutral forensic mental health evaluator who is in the midst of testifying. | 12/12/2014 | HNC | 1.00 | 600.00 |
| Assist HNC re research and assist re various motion and analyze responses to emails per HNC and meeting with HNC. | 12/16/2014 | RP | 1.50 | 450.00 |
| Prepare for tomorrow in Court. | 12/17/2014 | HNC | 1.00 | 600.00 |
| Travel to CT and attend call of motion cal and submit. | | RP | 0.75 | 225.00 |
| Matrimonial action: R/D in Court. And prep and follow up. Responding to AZ's notice of motion and arguments on the record. | 12/18/2014 | HNC | 2.50 | 1,500.00 |
| Update court records. | 1/05/2015 | DR | 0.75 | 56.25 |

Zappin v Comfort

January 8/2015
Inv #11472
Page   2

| Description | Date | Tkpr | Hours | Amount |
|---|---|---|---|---|
| Inspect the baby in my offices; argue against the TRO's in AZ's new OSC for a protective order and to restrict the mother's access to the baby from HNC's telephone; Judge has a court reporter; Ms. Comfort's lawyer, B Hershikowitz argues in Court. Judge denies the relief requested. Mr. Z changes his mind about whether he is withdrawing his motion to disqualify Dr. Ravitz. Receive AZ's motion and Judge's conformed OSC by email. | 1/09/2015 | HNC | 1.50 | 900.00 |
| Receive letter t/AZ:  he w/draws three motions including the motion to disqualify HNC as attorney for child  so he can expedite the continued hearing. | 1/13/2015 | HNC | 0.25 | 150.00 |
| Meet w/RP re research and counsel fee motion AZ is compelling us to write. | 1/23/2015 | HNC | 0.25 | 150.00 |
| Meet w/HNC re: Research counsel fee motion. | | RP | 0.25 | 75.00 |
| SUNDAY.  First draft osc counsel and expert fee motion against AZ. | 1/25/2015 | HNC | 1.75 | 1,060.00 |
| Fifity percent of Counsel fee. | 1/31/2015 | HNC | 0.00 | -4,546.86 |

**TOTAL FEES** $4,546.87

### BILLING RATE SUMMARY

| Tkpr Initials | Name | Hours | Rate | Amount |
|---|---|---|---|---|
| HNC | Harriet N. Cohen | 12.25 | 600.00 | 2,803.12 |
| LT | Laura Tucker | 2.50 | 375.00 | 937.50 |
| RP | Robert Pagano | 2.50 | 300.00 | 750.00 |
| DR | Donald Rose | 0.75 | 75.00 | 56.25 |

### DISBURSEMENTS

| Description | Amount |
|---|---|
| Copies | $54.63 |
| Federal Express | $9.17 |

**TOTAL DISBURSEMENTS** $63.80

**TOTAL FEES PLUS DISBURSEMENTS** $4,610.67

**BALANCE NOW DUE** $4,610.67

**PAST DUE BALANCE** $8,256.91

$12,867.57

## Cohen Rabin Stine Schumann LLP

ATTORNEYS AT LAW

11 Times Square – 10th Floor
New York, New York 10036-8082

Tel. (212)512-0825       Fax: (212)202-6100

Zappin v Comfort

February 09, 2015

Client # 31834-005

Invoice #: 111475

## FOR PROFESSIONAL SERVICES RENDERED

| Description of Services | Date | Tkpr | Hours | Amount |
|---|---|---|---|---|
| Review status of the habeas corpus motion that needs to be answered by 12/10. | 12/07/2014 | HNC | 0.25 | 150.00 |
| Working on affs in opp to motion to disqualify HNC brought on by A.Z in habeas proceeding. | 12/10/2014 | HNC | 2.25 | 1,350.00 |
| Worked w/ HNC getting Zappin papers that HNC wrote on habeas corpus proceeding organized and sent out; meeting w/HNC re same and tracking exhibits in document as HNC finishes editing her Aff in Opposition to Motion to Enjoin HNC from Representing Baby Reid; compiled, copied and organized exhibits; began assembling bluebacks; dropped off copies of HNC Aff in Opposition addressed to Anthony Zappin at Fed Ex. Counsel and AZ  have also been served by email. |  | LP | 1.50 | 637.50 |
| Prepare for tomorrow in Court. | 12/17/2014 | HNC | 1.00 | 600.00 |
| Travel to Ct and attend call of motion cal and submit opps and travel to Courtroom and deliver courtesy copies of opp papers to Justice Kaplan's staff and follow up with HNC at office. |  | RP | 0.75 | 225.00 |
| Habeas Corpus action:  R/D in Court.  And  Prep and follow up.  Responding to AZ's notices of motion and arguments on the record. | 12/18/2014 | HNC | 2.50 | 1,500.00 |
| Fifty percent of Counsel Fee. | 12/31/2014 | HNC | 0.00 | -2,231.25 |

TOTAL FEES

$2,231.25

## BILLING RATE SUMMARY

| Tkpr Initals | Name | Hours | Rate | Amount |
|---|---|---|---|---|
| HNC | Harriet N. Cohen | 6.00 | 600.00 | 1,368.75 |

Zappin v Comfort

February 9/2015
Inv #11475
Page       2

| | | | | |
|---|---|---|---|---|
| LP | Lindsay Pfeffer | 1.50 | 425.00 | 637.50 |
| RP | Robert Pagano | 0.75 | 300.00 | 225.00 |

**TOTAL FEES PLUS DISBURSEMENTS**  $2,231.25

**BALANCE NOW DUE**  $2,231.25

PAST DUE BALANCE  $3,187.50

$5,418.75



*Aaron S. Metrikin, M.D.*
*115 Central Park West*
*Suite 12*
*New York, New York 10023*
*(212) 988-6230*
*ametrikin@verizon.net*

TIN:077829138
NP1:1861563124

Zappin/Comfort
C/O Harriet Cohen

Mar 31, 2015

For professional services

Expert Psychiatric Witness

$700/hr

March 16, 2015

5 hours @$700/hour - lost revenue due to
last minute cancellation of court proceedings.
(I was able to reinstate 3 hours of clinical practice)

Total        $3,500.00

# APPENDIX
# EXHIBIT P

# West Virginia Secretary of State — Online Data Services

## Business and Licensing

Online Data Services Help

## Business Organization Detail

*NOTICE: The West Virginia Secretary of State's Office makes every reasonable effort to ensure the accuracy of information. However, we make no representation or warranty as to the correctness or completeness of the information. If information is missing from this page, it is not in the The West Virginia Secretary of State's database.*

## ZAPPIN ENTERPRISES LLC

### Organization Information

| Org Type | Effective Date | Established Date | Filing Date | Charter | Class | Sec Type | Termination Date | Termination Reason |
|---|---|---|---|---|---|---|---|---|
| **LLC l Limited Liability Company** | 5/28/2014 | | 5/28/2014 | Domestic | Profit | | | |

### Organization Information

| | | | |
|---|---|---|---|
| **Business Purpose** | 5419 - Professional, Scientific and Techincal Servies - Professional, Scientific and Techincal Servies - Other Professional/Scientific/Technical Services (marketing research, public opinion polling, photographic, translation & interpretation, veterinary services) | **Capital Stock** | |
| **Charter County** | Cabell | **Control Number** | |
| **Charter State** | WV | **Excess Acres** | |
| **At Will Term** | A | **Member Managed** | MBR |

| At Will Term Years | Par Value |
|---|---|

| Authorized Shares | |
|---|---|
| | |

## Addresses

| Type | Address |
|---|---|
| Designated Office Address | 819 21ST STREET<br>HUNTINGTON, WV, 25703 |
| Mailing Address | 819 21ST STREET<br>HUNTINGTON, WV, 25703 |
| Notice of Process Address | JEFFREY ZAPPIN<br>1827 WASHINGTON BLVD.<br>HUNTINGTON, WV, 25701 |
| Principal Office Address | 819 21ST STREET<br>HUNTINGTON, WV, 25703 |
| Type | Address |

## Officers

| Type | Name/Address |
|---|---|
| Member | SUSAN ZAPPIN<br>29 BIG OAK PLACE<br>PAWLEY'S ISLAND, SC, 29585 |
| Member | JEFFREY ZAPPIN<br>1827 WASHINGTON BLVD.<br>HUNTINGTON, WV, 25701 |
| Member | LEIGH ANNE ZAPPIN<br>1827 WASHINGTON BLVD.<br>HUNTINGTON, WV, 25701 |
| Organizer | ANTHONY ZAPPIN<br>1827 WASHINGTON BLVD.<br>HUNTINGTON, WV, 25701 |
| Type | Name/Address |

## DBA

| DBA Name | Description | Effective Date | Termination Date |
|----------|-------------|----------------|------------------|
| ZAPPIN ENTERPRISES | TRADENAME | 5/28/2014 | |
| **DBA Name** | **Description** | **Effective Date** | **Termination Date** |

## Annual Reports

| Date | Filed For |
|------|-----------|
| **6/30/2015** | 2015 |
| **Date** | **Filed For** |

For more information, please contact the Secretary of State's Office at 304-558-8000.

Tuesday, October 27, 2015 — 4:00 PM

© 2015 State of West Virginia

# APPENDIX
# EXHIBIT Q

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

ANTHONY ZAPPIN,

Plaintiff,

-against-

CLAIRE COMFORT,

Defendant.
-------------------------------------------------------------X

Index No. 301568/2014
Mot. Seq. #19

**AFFIRMATION OF AFC
HARRIET NEWMAN COHEN IN
REPLY TO ANTHONY
ZAPPIN'S OPPOSITION TO
AFC'S OSC TO QUASH
ANTHONY ZAPPIN'S
IMPROPER DISCOVERY
SUBPOENA *DUCES TECUM,*
DATED JULY 22, 2015**

**HARRIET NEWMAN COHEN,** the attorney for the 23-month-old child ▮▮▮ Zappin, duly

licensed to practice law in the State of New York, hereby affirms under penalties of perjury:

1.     I make this reply affirmation in further support of my Order to Show Cause, dated

August 6, 2015, for an Order, *inter alia*, quashing Mr. Zappin's improper CPLR R. 3120 discovery

Subpoena *Duces Tecum* that was served on me personally, outside Room 212, at the New York

County Supreme Court, New York County, on July 22, 2015, by Anthony Zappin's father.

**Acts of Retaliation for AFC's 7/15/15 Cross Motion for Restraints**

**First Act: Harassing Discovery Subpoena Is Served on AFC by Zappin**

2.     The timing of the discovery subpoena *duces tecum,* that Jeffrey Zappin, Anthony

Zappin's father, handed me on July 22ⁿᵈ, cannot have escaped the notice of this Court. It was the

second of two harassing acts that Anthony Zappin took against me between July 15ᵗʰ and July 22ⁿᵈ,

in retaliation for my serving on him a Notice of Cross Motion and related papers on July 15ᵗʰ for

certain restraints. He did not like those papers. Mr. Zappin had been harassing the Child's

Anthony Zappin was one of its principals, and (d) additional principals were members of the Zappin

family.

4.      I had also received threatening and harassing emails on July 16th, purportedly

emanating from the email account of Anthony Zappin's father, who was staying in Anthony Zappin's

residence. They read as follows:

> Email dated July 16, 2015, 1:01 a.m., Subject: Reid Zappin: "**Harriet You're a very sick and greedy woman. I pray for you and hope you seek help**. Jeff;"
>
> Email dated July 16, 2015, 3:35 a.m., Subject: Reid Zappin: "**Harriet My company now owns www.harrietnewmancohen.com, I intend to keep the public apprised of your continued misconduct and disturbing behavior. Jeff**," and
>
> Email dated July 16, 2015 10:35 a.m., Subject: Harriet Cohen's New Website: "www.harrietnewmancohen.com. **Quickly climbing up the Google rankings. Stay tuned for updates. Jeff Zappin**." (Emphasis added.)

5.      This Court granted me a temporary restraining order on July 16, 2015, and, although

on July 22nd, this Court decided that further injunctive relief would not be available in this Court, it

did remind Mr. Zappin in open court on July 22nd of his obligations as a licensed New York State

attorney. Upon information and belief, the scurrilous material has been removed from the website,

but the website still exists, and Mr. Zappin still controls the website.

## Anthony Zappin's Third Bad Act Against the AFC.

**Anthony Zappin Files Disciplinary Committee Complaint With OPMC Against AFC's Board Certified Psychiatrist, Appointed to Assist AFC by Justice Kaplan, in Campaign to Get Rid of AFC's Expert, and in Retaliation for This Court's July 22nd Order Awarding AFC's Expert His Court-Ordered Fees**

6.      On July 22nd, this Court, as part of its multiple Orders issued on that date, ordered

# APPENDIX
# EXHIBIT R

COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------ x
ANTHONY ZAPPIN,

                  Plaintiff,

        - against -

CLAIRE COMFORT,

                  Defendant.
------------------------------------------------------------------ x

STATE OF NEW YORK     )
                    : ss
COUNTY OF NEW YORK  )

Index No. 301568/14

**OPPOSITION AFFIDAVIT
OF ANTHONY ZAPPIN**

Mot. Seq. #21

**RECEIVED**

SEP 0 1 2015

**PART 51**

ANTHONY ZAPPIN, being duly sworn, deposes and says:

1.    I submit this affidavit and exhibits attached hereto in opposition to Harriet Cohen's August 18, 2015 Order to Show Cause seeking damages and other relief on behalf of Dr. Aaron Metrikin. I respectfully request that the Court deny Ms. Cohen's applications entirely.

**I.   BACKGROUND**

2.    Since November 20, 2013 – two (2) years by the commencement of trial – I have been subject to supervised visitation without ever having been afforded a hearing or fact-finding on the issue. This unlawful state of affairs has continued despite 22 months of continuous excellent reports from two different third-party supervisory agencies. And, it has continued despite the fact that supervised access has been demanded based on demonstrably falsified allegations of domestic abuse. Even if the allegations were true – which they are categorically not – they do not justify the punishment of continuing supervised access for two (2) years without a hearing as no allegation has ever been made that I have endangered or harmed Reid.

3.     Contrary to this Court's assertions that I am litigating this case to somehow hurt Ms. Comfort, my sole motive has been – and will continue to be – to cause this unlawfully imposed supervised supervision to cease, which Ms. Comfort has used to create an unnatural parenting relationship Reid and myself to her own advantage. With all due respect to this Court, the contention that I have prolonged this case and delayed a hearing on the matter – apparently as part of some ill-intended scheme to hurt Ms. Comfort – is false. It is a mystery to me why I would want to delay resolution of this matter given that the current status quo prevents me from spending any substantial or meaningful time with my only child in addition to causing me to spend between $5,500 and $6,500 a month in supervised visitation costs.

4.     It bears reminding that this unlawful and shameful set of circumstances was allowed to continue and amplified to the levels we are at today by a judge, Justice Deborah Kaplan, whose career was effectively brought to an end as a result of her gross misconduct in this case. On April 24, 2015, Justice Kaplan orchestrated and directed an unprovoked assault on me in her own courtroom and adjacent hallway. As a result of the attack, I was forced to file an action in the Court of Claims, which was served on the Attorney General on May 7, 2015. (*See* Ex. A, Apr. 28, 2015 *Zappin v. State of New York* Claim.) The Attorney General subsequently confirmed that Justice Kaplan was "reassigned" to a "Coordinating Judge" position as a result of her misconduct in this litigation.

5.     After Justice Kaplan was effectively removed from the bench in May 2015, this matter was transferred to Justice Matthew Cooper on May 22, 2015 under highly irregular circumstances. It was one of the first, if not the first, case transferred from Justice Kaplan's docket. (*See* Ex. B, Spreadsheet of Justice Kaplan's Reassigned Cases.) *Out of over 120 cases transferred from Justice Kaplan's docket, the above-captioned matter was the only case*

2

*transferred to Justice Cooper.*[1] Neither this Court, nor the Office of Court Administration, have provided a meaningful explanation as to why or how this matter was chosen to be transferred to Justice Cooper rather than Justice Nervo, who was assigned nearly all of Justice Kaplan's cases.

6.      The explanation for this unlawful and highly irregular assignment, however, is clear: Justice Cooper was assigned in retaliation as a result of Justice Kaplan's effective removal from the bench. Since unlawfully taking over this case on July 22, 2015, Justice Cooper has attacked me personally and impugned my character and integrity relentlessly, going so far as to endanger my legal career by threatening to file disciplinary charges and gratuitously mentioning the name of my employer on the record and in various court orders. I would ask that this Court consider whether destroying my ability to make a living would be in the best interests of Reid, the 2-year old little boy in question.

7.      Finally, I would note that in this Court's haste to portray all my actions as lacking merit, Justice Cooper overruled Judge Carol Goldstein of the New York County Family Court – a judge extremely familiar with this family – even after she heard testimony and saw evidence that Ms. Comfort accosted me and harassed me for months. In attempting to resurrect the career of his college Justice Kaplan, Justice Cooper regrettably slighted another. In my opinion, Justice Cooper's characterization of Judge Goldstein's order as "farcical on its face" is unfortunate.

## II.      MS. COHEN REQUESTED IS PREMATURE AT BEST

8.      I spoke with the Office of Professional Medical Conduct ("OPMC") on August 27, 2015. The OPMC stated that it would be another 8-10 weeks before the complaint against Dr. Metrikin is even reviewed. Pursuant to Section 230(10) of New York's Public Health Law,

---

[1] Aside from a single matter reassigned back to Justice Ellen Gesmer and a stayed matter assigned to Justice Laura Drager, no other cases were assigned to existing matrimonial judges.

the OPMC has the discretion to take various actions, including no action at all. Accordingly, until the complaint against Dr. Metrikin is reviewed by the OPMC, any requested relief by on his behalf is premature and not ripe.

## III.   SHORT OF HOLDING A JURY TRIAL, THIS COURT LACKS JURISDICTION TO GRANT MS. COHEN'S REQUEST FOR DAMAGES

9.   In her motion, Ms. Cohen requests that I be ordered to pay Dr. Metrikin's "legal fees" and his "lost billable time." (Aug. 17, 2015 Cohen Aff. at ¶ 17.) Thus, in effect, Ms. Cohen is requesting that the Court award damages to Dr. Metrikin. However, she fails to cite any legal authority for this Court to make such an order.

10.   Section 230(11)(b) of the New York Public Health Law provides that: "Any person ... who reports or provides information to the board in good faith, and without malice shall not be subject to an action for civil damages or other relief as a result of such report." Accordingly, my complaint against Dr. Metrikin is entitled to qualified immunity. *See Kirell v. Vytra Health Plans Long Island*, 29 A.D.3d 638, 639 (2nd Dept. 2006).

11.   In order to pierce the qualified immunity, Ms. Cohen would need to show "bad faith" beyond the mere "conclusory allegations of malice" that are contained in Ms. Cohen's affirmation. *See id.* Indeed, she does not even address, let alone attempt to refute, the substance of my complaint against Dr. Metrikin to the OPMC. These allegations are limited to the facts that Dr. Metrikin: (i) has committed malpractice by attempting to peer review a child custody report without having any relevant experience; (ii) he is committing fraud by engaging in fee gauging at an unreasonable rate of $700 per hour; and (iii) he committed misconduct by submitting a fraudulent bill to me.

12.   This is all academic, however, because the issue of whether my qualified immunity should be pierced is not for this Court to decide. Rather, in order to grant Ms. Cohen's

requested relief for damages, this Court would be required to empanel a jury to make a determination of that issue. Short of that, this Court lacks any authority to grant "legal fees" and "lost billable time" to Dr. Metrikin.

13. In passing I note that Ms. Cohen has made absolutely no showing that Dr. Metrikin has incurred any damages. Her application strikingly lacks any affidavit from Dr. Metrikin. Even so, Ms. Cohen does not affirm that he has incurred any legal fees as a result of my complaint against him to the OPMC. In fact, Dr. Metrikin's medical malpractice insurer would need to be notified and would be the proper entity to request legal fees from me. To that same end, Ms. Cohen makes no showing that Dr. Metrikin has suffered any "lost billable time." Simply put, Ms. Cohen has failed to show any damages whatsoever.

## IV. MS. COHEN SHOULD BE ENJOINED FROM RELEASING SEALED RECORDS

14. Pursuant to DRL 235, the record in this matter is confidential and prevents the disseminating information contained therein unless done so by a party. Ms. Cohen is not a party to this action. Thus, in order for this Court to permit Ms. Cohen to release any records from this proceeding to the OPMC, she must show that the "evidence contained in the records ... is both significant and relevant to a separate proceeding ...." *People v. Maluty*, 4 Misc. 3d 525, 529 (Sup. Ct. Kings Cnty. June 4, 2004) (*citing Janecka v. Casey*, 121 A.D.3d 28 (1st Dept. 1986)).

15. On its face, Ms. Cohen's request to release records in this proceeding to the OPMC fails because there is no "separate proceeding." As stated above, the OPMC will not even review the complaint against Dr. Metrikin for 8-10 weeks. Until such time an actual investigation is initiated against Dr. Metrikin, such a request for a release of the records in this proceeding at the very least premature.

16.     Moreover, Ms. Cohen has failed to make any showing that the requested disclosure to the OPMC is "significant and relevant" to any potential investigation against Dr. Metrikin. The papers she requests be released have nothing to do with Dr. Metrikin's conduct in this proceeding and would therefore be irrelevant to an OPMC investigation against Dr. Metrikin.[2] Ms. Cohen has not her burden that disclosure of the requested records are necessary. Thus, the Court must deny Ms. Cohen's request for permission to release portions of the record in this matter.

## V.     CONCLUSION

17.     For the foregoing reasons, I respectfully request that Ms. Cohen's application be denied in its entirety.

Dated:          September 1, 2015
                New York, NY

ANTHONY GAPPIN

Sworn to before me this
1st day of September, 2015

Notary Public

Melanie M. Padilla
Notary Public, State of New York
-No. 01PA6209902
Qualified in New York County
Commission Expires December 16th, 2017

---

[2] Notably missing from the list of proposed disclosure is any briefing on Mot. Seq. 12, which outlines Dr. Metrikin's misconduct and malpractice in my affidavits.

6

# APPENDIX

# EXHIBIT S

At the Matrimonial Term, Part 20, of the
Supreme Court of the State of New York,
held in and for the County of New York,
at the Courthouse thereof, 60 Centre
Street, New York, New York, on the 12th
day of September, 2014.

PRESENT: HON. DEBORAH A. KAPLAN
-------------------------------------------------------X
ANTHONY ZAPPIN,

                Plaintiff,               Order

   -against-                    Index No. 301568/2014

CLAIRE COMFORT,

                Defendant.
-------------------------------------------------------X

The Order, dated August 11, 2014, appointing Harriet Cohen as the attorney for the child
in this matter permitted Ms. Cohen, upon consent of the parties or application to the court, to
retain experts to protect, preserve, and insure the best interests of the child. The August 11 Order
provides that fees for any expert retained by the attorney for the child shall be paid by the parties
in the same proportion as the fees for the attorney for the child, which is 50% by the plaintiff and
50% by the defendant.

In a letter, dated September 10, 2014, Ms. Cohen requests permission from the court to
retain Aaron A. Metrikin, M.D. to review Dr. Alan Ravitz's forensic report and other medical
records, and to observe any testimony given by Dr. Ravitz. Dr. Metrikin requests a $10,000
retainer and an hourly rate of $700 per hour. Ms. Cohen's request to retain Dr. Metrikin is
granted. Dr. Metrikin shall be compensated at a rate of $700 per hour. The parties are directed
to pay Dr. Metrikin a retainer of $5,000 ($2,500 each) on or before September 15, 2014.

In a letter, dated September 11, 2014, Ms. Cohen further requests that Dr. Metrikin be
permitted to remove a copy of Dr. Ravitz's forensic report from the courtroom. While neither
the parties nor counsel may remove the forensic report from the courtroom, any expert retained to
provide a peer review of the forensic report shall be permitted to remove a copy of the report,
after executing an affidavit setting forth the conditions for the use of the report. Therefore, Ms.
Cohen's request that Dr. Metrikin be permitted to remove the forensic report from the courtroom
is granted.

                                         Deborah A. Kaplan

                                    HON. DEBORAH A. KAPLAN
                                    J.S.C.

                                    **Deborah A. Kaplan**
                                         **J.S.C.**

# APPENDIX

# EXHIBIT T

**COHEN RABIN STINE SCHUMANN LLP**
**Attorneys at Law**
**7 Times Square, 38th Floor**
**New York, New York 10036**

Tel.:  (212) 512-0825                                          Fax:  (212) 202-6100

Harriet Newman Cohen
Bonnie E. Rabin                                                    Direct dial: 212-512-0812
Martha Cohen Stine                                          E-Mail address: brabin@crsslaw.com
Gretchen Beall Schumann*
Paul C. Kurland
Tim James
Amanda Laird Creegan*
Evridiki Poumpouridis
Lindsay R. Pfeffer*
Robert Pagano, Legal Assistant
          *also admitted in New Jersey                 September 10, 2014

**BY HAND**
Hon.  Deborah A.  Kaplan, J.S.C.
Supreme Court of the State of New York
County of New York
60 Centre Street, Part 20, Courtroom 540
New York, New York 10007                         Re:    Zappin v. Comfort
                                                              Index No. 301568/14

Dear Justice Kaplan:

        I am the attorney for the child ▮ Zappin.  The evidentiary hearing as to whether
supervised visitation for the father shall be continued or discontinued is scheduled to begin on
September 15th.  In connection therewith, I respectfully request that the parties be directed to pay
a $10,000 retainer to:        Aaron S. Metrikin, M.D. (CV attached)

                                115 Central Park West, Ste. 12

                                New York, New York 10023,  212 - 988-6230

        Dr. Metrikin is a board certified licensed psychiatrist and Diplomat, American Board of
Psychiatry and Neurology.  Dr. Metrikin will assist me in my review of Dr. Alan Ravitz's forensic
report and other medical records and sit at counsel table during the hearing. Dr. Metrikin's customary
hourly charge for a 45 minute hour is $800.  Dr. Metrikin has agreed to accept $700 an hour for a 60
minute hour in this case.  I am submitting this letter to the Court with copies to both sides in
accordance with the provisions of the Order appointing me ▮ Zappin's attorney.

                                Respectfully submitted,

                                COHEN RABIN STINE SCHUMANN LLP
                                By: /s/_____

                                    Harriet Newman Cohen

HNC/so

cc:    Robert Wallack, Esq.  (via email)
Anthony Zappin, Esq. (*pro se*)(via email)

G:\Z\ZAPPIN v. COMFORT\LETTERS\COURT\9-10-14.wpd

# APPENDIX
# EXHIBIT U

# Anthony Zappin

194 W. 10ᵗʰ Street, Apt. D1 • New York, NY 10014 • Phone: (308) 654-6193 • Fax: (540) 361-5424
E-Mail: anthony.zappin@gmail.com

Date:   August 7, 2015

**BY OVERNIGHT MAIL**

NYS Department of Health
Office of Professional Medical Conduct
Riverview Center 150 Broadway, Suite 355
Albany, New York 12204-2719

  Re: Dr. Aaron Metrikin

Dear Sir or Madam:

I write to file a formal complaint of professional misconduct, negligence and fraud against Dr. Aaron Metrikin maintaining an office at 115 Central Park West #12, New York, NY 10023. Dr. Metrikin appears to also work as an Attending Psychiatrist at Lenox Hill Hospital in New York, NY. Upon information and belief, Dr. Metrikin maintains a license to practice medicine in New York State. As explained below, Dr. Metrikin's egregious conduct warrants discipline by this Office of Professional Medical Conduct ("OPMC").

Dr. Metrikin has been retained as an "expert" in the matrimonial styled *Anthony Zappin v. Claire Comfort*, Index No. 301568/14 (Sup. Ct. N.Y. Cnty.) by the Attorney for the Child, Harriet Newman Cohen of Cohen Rabin Stine & Schumann LLP. He began work in the matter in September 2014 and apparently continues to perform work on behalf of Ms. Cohen at present. Although his role in the matter remains vague, Ms. Cohen has stated that he has been retained to "assist [her] in [the] review of Dr. Alan Ravitz's forensic [child custody] report ...." (*See* Attachment A.) Ms. Cohen also intends to call him as a witness at a hearing on custody and access of the child. (*See* Attachment B.)

First and foremost, Dr. Metrikin does not possess any relevant medical experience that would enable him to do a peer review of a forensic child custody report. A simple review of his CV and his LinkedIn profile reveals that Dr. Metrikin has absolutely no experience in child custody or child-related matters. Any work performed by him on the matter necessarily amounts to medical malpractice and negligence as well as is tantamount to fraud.

Dr. Metrikin claims to a psychiatrist specializing in addiction disorders. Specifically, on his LinkedIn profile captured in April 2015, Dr. Metrikin summarized his practice as follows:

  Specialist in evaluation of anxiety, depression, mood, cognitive and all addiction
  disorders, including alcohol, cocaine, opiate, amphetamine, prescription drug
  abuse and sex addition. I provide comprehensive assessments of the biological
  phsyosocial issues that may result in stress, conflict, interpersonal problems,
  depression, work related difficulties and substance use [sic] disorders. State of

*Dr. Aaron Metrikin*
Page 2 of 3

the art psychopharmacology as well as intensive focused talk therapy are the cornerstones of my practice.

(Attachment C.)  None of these disorders are substantially at issue in the matrimonial custody proceeding for which Dr. Metrikin was retained by Ms. Cohen.  In fact, shortly after Dr. Metrikin's April 2015 LinkedIn profile was brought to the attention of the Court, he removed the summary section to further propagate his fraud hiding the fact that his practice has been devoted to an entirely unrelated area of psychiatric medicine.  (See Attachment D.)  Moreover, Dr. Metrikin's CV is devoid of any experience in child related matters and affirmatively demonstrates that he has never been involved in a child-custody matter.  (See Attachment A.)

Simply put, Dr. Metrikin does not have the experience and is not qualified to evaluate or opine on a forensic child custody report.  In the two (2) years that the proceeding has been ongoing, there has never been an allegation that either myself or Ms. Comfort suffer from any cognitive or addiction disorder relevant to Dr. Metrikin's experience.  As an addiction specialist, Dr. Metrikin's involvement in the matrimonial custody proceeding is medical malpractice on its face and he should be disciplined by the OPMC for accepting such an engagement.

By way of analogy, Dr. Metrikin's involvement in the matrimonial custody proceeding would be like me – an intellectual property litigator – attempting to complete or review a corporate merger.  I have no experience in corporate mergers or acquisitions.  If I was engaged on such a matter alone, it would constitute attorney misconduct and malpractice causing me to lose my law license.  Such a situation is no different than the sham that Dr. Metrikin is attempting to undertake by peer reviewing a forensic child custody evaluation report without any relevant experience and specializing in an entirely different field of medicine.

This leads into the question of why Dr. Metrikin is attempting to engage in such a fraudulent scheme.  The answer is simple:  Dr. Metrikin is charging an outrageous and unconscionable rate of *$700 per hour*.  This is well outside of the bounds of a reasonable hourly rate for forensic custody evaluators, which range between $350 - $500 per hour.

Both Ms. Comfort and I have *no assets*.  In fact, we are both in substantial debt due to the cost of the custody litigation.  Our salaries are entirely consumed by attorneys' fees, court expenses and child-related expenses.  There is nothing to justify such an outrageous hourly fee by Dr. Metrikin.

It appears that Dr. Metrikin did not undertake any investigation into whether Ms. Comfort's finances or my finances justify his extreme and fraudulent rate.  Had he done so, it would have been apparent that he could not ethically undertake the engagement by Ms. Cohen as it would cripple Ms. Comfort and me to the detriment of our child.  In furtherance of his fraudulent scheme, however, Dr. Metrikin appears seek payment through filing frivolous money judgements against Ms. Comfort and me, which will include foreclosing on assets and garnishing our wages.  Such clearly dishonest behavior by a medical professional warrants discipline by the OPMC.

Dr. Metrikin's misconduct is further highlighted by his attempt to submit fraudulent bills to Ms. Comfort and me.  Specifically, Dr. Metrikin sent us a bill for "lost time" for a purported court

Dr. Aaron Metrikin
Page 3 of 3

hearing on March 16, 2015. (*See* Attachment E.) However, there was never a court hearing scheduled for March 16, 2015 as demonstrably shown in the attached order from the court setting the hearing dates. (*See* Exhibit F.) Dr. Metrikin, through Ms. Cohen, nonetheless attempted to seek a money judgment for such fraudulent fees, which was denied by the court. Such billing practices and conduct by Dr. Metrikin is deceitful and dishonest, which required that he be disciplined for such a fraudulent scheme.

Finally, and perhaps most disturbing, Dr. Metrikin intends to testify in the custody proceeding and has been included on Ms. Cohen's witness list. Accordingly to Ms. Cohen, Dr. Metrikin apparently intends to opine on the mental state of Ms. Comfort and myself. However, he has never spoken to us, let alone evaluated us. Any evaluation of our mental states by Dr. Metrikin would therefore be malpractice as it is impossible to provide a diagnosis for an individual that he has never been properly evaluated.

In that same vein, Ms. Cohen has made clear that Dr. Metrikin will use the litigation strategy of the parties as at least a partial basis for his mental evaluation of Ms. Comfort and myself. Dr. Metrikin is not a lawyer. Any attempt to evaluate the litigation strategy of trained and skilled litigators such as Ms. Comfort and myself as a basis for a medical diagnosis is farcical and constitutes malpractice.

In closing, I further reiterate that Dr. Metrikin's conduct is unconscionable as a medical professional. He appears to be using a child custody dispute to maximize his profits illegally. Not only is he not qualified to opine on the report of a forensic child custody evaluator, Dr. Metrikin remains resolute to perpetuate a fraudulent scheme by charging an outrageous hourly fee, abuse court procedures to collect fees and engage in fraudulent billing practices. Such conduct should be punished. I request that the OPMC discipline Dr. Metrikin in order to protect the integrity of the medical profession and ensure that such dishonest conduct does not continue.

If you should have any questions, please feel free to reach out to me at any time. I am happy to discuss this matter further and will provide any documentation that may aid the OPMC in evaluating this complaint or conducting an investigation against Dr. Metrikin. I thank the OPMC for its time and attention to this matter.

Best regards,

Anthony Zappin

Enclosures

# ATTACHMENT A

**COHEN RABIN STINE SCHUMANN LLP**
Attorneys at Law
7 Times Square, 38ᵗʰ Floor
New York, New York 10036

Tel.: (212) 512-0825                                    Fax: (212) 202-0589

Harriet Newman Cohen
Bonnie E. Rabin                                                Direct dial: 212-512-0812
Martha Cohen Stine                                   E-Mail address: brabin@crsslaw.com
Gretchen Beall Schumann*
Paul C. Kurland
Tim James
Amanda Laird Creegan*
Ewidiki Poumpouridis
Lindsay R. Pfeffer*
Robert Pagano, Legal Assistant
      *also admitted in New Jersey                     September 10, 2014

**BY HAND**
Hon.  Deborah A.  Kaplan, J.S.C.
Supreme Court of the State of New York
County of New York
60 Centre Street, Part 20, Courtroom 540
New York, New York 10007                       Re:   Zappin v. Comfort
                                               Index No. 301568/14

Dear Justice Kaplan:

        I am the attorney for the child ▮▮▮ Zappin.  The evidentiary hearing as to whether
supervised visitation for the father shall be continued or discontinued is scheduled to begin on
September 15ᵗʰ.  In connection therewith, I respectfully request that the parties be directed to pay
a $10,000 retainer to:            Aaron S. Metrikin, M.D. (CV attached)

                         115 Central Park West, Ste. 12

                        New York, New York 10023,  212 - 988-6230

        Dr. Metrikin is a board certified licensed psychiatrist and Diplomat, American Board of
Psychiatry and Neurology. Dr. Metrikin will assist me in my review of Dr. Alan Ravitz's forensic
report and other medical records and sit at counsel table during the hearing. Dr. Metrikin's customary
hourly charge for a 45 minute hour is $800. Dr. Metrikin has agreed to accept $300 an hour for a 60
minute hour in this case.  I am submitting this letter to the Court with copies to both sides in
accordance with the provisions of the Order appointing me ▮▮▮ Zappin's attorney.

                                Respectfully submitted,

                                COHEN RABIN STINE SCHUMANN LLP

                                By: /s/ _____

                                        Harriet Newman Cohen

HNC/so

cc:    Robert Wallack, Esq.  (via email)
Anthony Zappin, Esq. (pro se)(via email)

C:\ZAPPIN - COMFORT\LETTERS\COURT9-10-14.wpd

## CURRICULUM VITAE - AARON S. METRIKIN, M.D.

Date of Birth:     09/10/1965
Address:           115 Central Park West
                   Suite 12
                   New York, New York
                   10023
                   212 - 9886230
Place of Birth:    Johannesburg, South Africa

### EDUCATION:

* 1983    Matriculation Certificate, King David High School, Johannesburg
* 1990    M.D. University of the Witwatersrand Medical School, Johannesburg
          South Africa

### POST GRADUATE TRAINING:

* 1991-1992    Internship at Groote Schuur Hospital, Cape Town, South Africa Obstetrics
               and Gynecology, Pediatric Surgery, Internal Medicine and Oncology
* 1992-1993    Medical Research Council, Cape Town, South Africa:
               Post-internship Medical Research Council Scholar
               Senior House Officer at Somerset Hospital Out-patient HIV clinic
* 1993-1996    Resident and in the Department of Psychiatry at New York University Medical
               Center
* 1996-1997    Chief Resident Department of Psychiatry, NYU Medical Center/Bellevue
               Hospital
* 1997-1999    Fellow in the Division of Alcohol and Substance Abuse, Department of
               Psychiatry, NYU Medical Center/Bellevue Hospital, New York City
* 1997 - 2007  NYU Medical Center, Psychoanalytic Institute

### HOSPITAL APPOINTMENTS AND EMPLOYMENT:

* 1998-1999    Acting Medical Director, Bellevue Hospital Outpatient Alcohol Clinic
* 1999-2000    Clinical Instructor, NYU Medical Center
               Director Methadone Rehabilitation Program, Bellevue Hospital
               Clinical Director Buprenoephine / Network Therapy research project
* 2000-2007    Director, Consultation Liaison Psychiatry Service LHH
* 1998-2007    Part-time private practice
* 2007- present  Full-time private practice

### ACADEMIC APPOINTMENTS:

* 1997-present   Clinical Assistant Professor, NYU Medical Center

## LICENSURE AND CERTIFICATION:

* 1991        South African Medical and Dental Council
* 1997        New York State License # 205490
* 1999        Diplomat, American Board of Psychiatry and Neurology
* 2007        Psychoanalyst, NYU Psychoanalytic Institute

## AWARDS:

* 1992        Post-Internship Medical Research Council Scholarship, South Africa
* 1997        Excellence in Medical Student Education Award, Department
              of Psychiatry, New York University Medical Center

## COMMITTEE ASSIGNMENTS AND LEADERSHIP POSITIONS:

* 1984        Student Coordinator -Muldersdrift Community Health Clinic
* 1985        Editor of *Auricle*, medical students newspaper
* 1988        Coordinator - National Union of South African Students Health Directive
* 1988        Interviewing Committee for prospective medical students, University of
              the Witwatersrand Medical School, Johannesburg, South Africa
* 1992        Regional Committee for Community Based HIV Home Care in Cape
              Town, South Africa
* 1994-1996   Class representative to the NYU Department of Psychiatry Graduate
              Education Steering Committee
* 1996-1997   Chief Resident NYU Department of Psychiatry/Bellevue Hospital

## MEMBERSHIPS OF PROFESSIONAL ORGANIZATIONS:

* 1994        American Medical Association
* 1994        American Psychiatric Association
* 1995        Bellevue-NYU Psychiatric Society
* 1998        American Society of Addiction Medicine
* 1998        American Psychoanalytic Association

## TEACHING EXPERIENCE:

* 1986-1988   Mathematics and enrichment teacher at PROTEC (a non profit
              institution of informal education for black students).
              Johannesburg, South Africa

2

- 1992-1993     Fourth year medical student AIDS seminar tutor, University of Cape Town Medical School, South Africa.
- 1995-1999     1st and 2nd year medical student tutor in Human Behavioral Sciences and Psychopathology, NYU Medical Center.
- 1997- 2007    Psychotherapy and substance abuse treatment supervisor for second and third year residents in the Department of Psychiatry at NYU Medical Center
- 2000-present  Consultation Liaison Psychiatry supervisor for 3rd and 4th year residents in the Department of Psychiatry at NYU Medical Center
- 2000-present  Consultation Liaison Psychiatry preceptor for 3rd year medical students in the Department of Psychiatry at SUNY Downstate Medical Center

## BIBLIOGRAPHY:

### Original Reports:

Metrikin AS, Galanter M, Consultation – Liaison Psychiatry Database (2000 Update) Substance Abuse editor. General Hospital Psychiatry 1999, 21(6): 496-497

Metrikin AS, Zwarenstein M, Steinberg MH, Van der Vyver E, Maartens G, Wood R: *Is HIV /AIDS a primary care disease? Appropriate levels of outpatient care for patients with HIV/AIDS.* **AIDS** 1995,9:619-623.

Metrikin AS, Galanter M, Bunt G, Dermatis H. *Somatization, Anxiety, and depression in a drug free residential therapeutic community.*Submitted for publication 1999.

### Abstracts:

Paper presentation to the National Home Based Care Conference hosted by the AIDS unit of the Department of Health, South Africa, 1992. *Towards home care for persons with AIDS in South Africa.*.

Metrikin AS, Zwarenstein M, Steinberg MH, A retrospective chart review of ± 400 HIV infected patients at Somerset Hospital, *Disease progression and WHO staging of disease,*.1993.

Paper presentation to the World Association of Psychiatric Rehabilitation Conference, New York 1995. *The Training of Psychiatry Residents in Psychiatric Rehabilitation.*

# ATTACHMENT B

## COHEN RABIN STINE SCHUMANN LLP

### Attorneys at Law

11 Times Square - 10th floor
New York, New York 10036
Telephone: 212-512-0825
Telecopier: 212-202-6100

Harriet Newman Cohen
Bonnie Rabin
Martha Cohen Stine
Gretchen Beall Schumann*
Paul C. Kurland
Tim James
Evridiki Poumpouridis
Amanda Laird*
Lindsay R. Pfeffer*
Laura A. Tucker
Robert Pagano, Legal Assistant
    *also admitted in New Jersey

Direct dial: (212) 512-0801
E-Mail address: hcohen@crsslaw.com

March 4, 2015

**BY FAX: (212) 401-9037**
Hon. Deborah A. Kaplan
Supreme Court, New York County
60 Centre Street, 5th Floor
New York, New York 10007

          Re:   *Zappin v. Comfort*
               Index Nos. 301568/14, 301578/14, 350075/14

Dear Justice Kaplan:

    Attached please find the Attorney for the Child's Updated Witness List.

          Respectfully submitted,

          COHEN RABIN STINE SCHUMANN LLP

          By: _____
                Harriet Newman Cohen

HNC/mem
Encl.

cc:   Anthony Zappin, Esq., via email anthony.zappin@gmail.com
      Robert Wallack, Esq., via email rwallack@wallackfirm.com

C:\ZAPPIN < COMFOR IXETTERSICOURT (3) 3 4 14.wpd

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ANTHONY ZAPPIN,

               Plaintiff,

   - against -

CLAIRE COMFORT,

               Defendant.

Index Nos. 301568/2014 and
350075/2014

---

### UPDATED WITNESS LIST  SUBMITTED BY
### ATTORNEY FOR THE CHILD
### MARCH 3, 2015

The Attorney for the Child submits the following list of witnesses, whom she may call at

trial, in the above captioned action, scheduled to commence Friday, March 6, 2015:

**Claire Comfort, plaintiff;**
**Anthony Zappin, defendant;**
**CFS Supervisors (on stand 9/15/14);**
**Parents of Ms. Comfort;**
**Parents of Mr. Zappin;**
**Dr. Alan Ravitz (neutral forensic);**
**Robert W. Brooks, M.D.** (Mr. Zappin's personal psychiatrist);
**Aaron S. Metrikin, M.D.** (board-certified psychiatrist called to assist AFC as permitted by Court
Order);
**Amy De Mattis, M.D.** (pediatrician; Westside Pediatrics);
**Lilly Pavlinavic, Ph.D.** (Ms. Comfort's therapist);
**Amanda C. Melendez** (nanny).

The Attorney for the Child reserves the right to call additional witnesses that are deemed

necessary, including rebuttal witnesses, if necessary, at the trial of this matter.

               Respectfully submitted:

               **HARRIET NEWMAN COHEN**
               **ATTORNEY FOR THE CHILD**

Index No. 301568; 301578; 350075 Year 20 14

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

ANTHONY ZAPPIN,

Plaintiff,

- against -

CLAIRE COMFORT,

Defendant.

### UPDATED WITNESS LIST SUBMITTED BY
### ATTORNEY FOR THE CHILD ("AFC") MARCH 3, 2015

COHEN RABIN STINE SCHUMANN LLP

Attorneys for        for the Child

11 TIMES SQUARE - 10TH FLOOR
NEW YORK, NEW YORK 10036
212-512-0825

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.

Dated: March 3, 2015 _____        Signature _____ _____
                                              HARRIET NEWMAN COHEN

                                    Print Signer's Name _____

Service of a copy of the within                                    is hereby admitted.

Dated:

                                    Attorney(s) for

PLEASE TAKE NOTICE

☐ NOTICE OF ENTRY    that the within is a (certified) true copy of a
                     entered in the office of the clerk of the within-named Court on                    20.

☐ NOTICE OF SETTLEMENT    that an Order of which the within is a true copy will be presented for settlement to the
                          Hon.                           , one of the judges of the within-named Court,
                          at
                          on                    20      , at                    M.

Dated:

                                    COHEN RABIN STINE SCHUMANN LLP

                                    Attorneys for

To:                                 11 TIMES SQUARE - 10TH FLOOR
                                    NEW YORK, NEW YORK 10036

# ATTACHMENT C

≡ ▾   Search for people, jobs, companies and more...   🔍   Advanced   ✉ 🏳 🔔 ☐

Home    Profile    Connections    Jobs    Interests                        Business Services    Try Premium for free

Aaron Of Columbia Law? - Apply Now For Inclusion In The Exclusive Who's Who Of Distinguished Alumni | Read More »



## Aaron Metrikin, M.D.

Psychiatrist, Addiction Specialist, Psychoanalyst · 115
Central Park West, Suite 12
New York, New York · Medical Practice

| Current | Lenox Hill Hospital, Aaron S. Metrikin, M.D., New York University School of Medicine |
| Previous | Lenox Hill Hospital, NYU Langone Medical Center/Bellevue Hospital |
| Education | Institute for Psychoanalytic Education, Affiliated with NYU School of Medicine |

**Send Aaron InMail**                    161

https://www.linkedin.com/pub/aaron-metrikin-m-d/10/929/49        Contact Info

**Ads You May Be Interested In**

Franchise Development BIZ
Turn-Key Opportunity to Own
the #1 Franchise Document &
Development Company

AttorKey Leads (10 Free)
AttorKey? We Need Your
Conduct to New Clients. Sign
Up and Get Leads Today!

Are You an Attorney?
We need more attorneys in your
area. Apply now for
membership.

**In Common with Aaron**

◐ Aaron



**Background**

### 📋 Summary

Specialist in evaluation and treatment of anxiety, depression, mood, cognitive and all addiction disorders including alcohol, cocaine, opiate, amphetamine, prescription drug abuse and sex addiction. I provide comprehensive assessments of the biological and psychosocial issues that may result in stress, conflict, interpersonal problems, frustration, work related difficulties and substance use disorders. State of the art psychopharmacology as well as intensive and focused talk therapy are the cornerstones of my practice.

### 📋 Experience

**Attending Psychiatrist**
Lenox Hill Hospital
July 2000 – Present (14 years 10 months) | Greater New York City Area

Voluntary Faculty
Teaching Staff for Residents and Medical Students in the Department of Psychiatry

**Owner**
Aaron S. Metrikin, M.D.
July 1997 – Present (17 years 10 months) | 115 Central Park West Suite 12, New York, New York

Highly experienced psychiatrist, addiction specialist and psychoanalyst in private practice on Upper/ West Side of Manhattan. Specialist services include outpatient and in-patient detoxification, interventions, Buprenorphine management for opioid dependence, psychodynamic therapy, couples therapy, drug counseling and relapse prevention. Close to all public transportation.

**Clinical Assistant Professor, Department of Psychiatry**
New York University School of Medicine
1997 – Present (18 years) | New York, New York                    **🔲 NYU**

Attending Psychiatrist as Voluntary Faculty

**Director, Consultation Liaison Services, Department of Psychiatry**
Lenox Hill Hospital
July 2000 – June 2007 (7 years) | New York City

**Director, Buprenorphine Treatment and Research Program**
NYU Langone Medical Center/Bellevue Hospital
January 1999 – June 2006 (7 year 6 months)



Top Skills

| | |
|---|---|
| 16 | Psychotherapy |
| 15 | Treatment |
| 13 | Psychiatry |
| 9 | Family Therapy |
| 6 | Mental Health |
| 5 | Clinical Supervision |
| 4 | Psychodynamic... |
| 4 | Adolescents |
| 4 | Crisis Intervention |
| 3 | CBT |

Aaron also known about...

| | | | |
|---|---|---|---|
| 3 Addiction Recovery | 3 Mindfulness | 3 Group Therapy | 3 Behavioral Health |
| 3 Psychology | 3 Board Certified | 2 Post Traumatic Stress | 2 Dual Diagnosis |
| 2 Psychoanalysis | | | |

## Education

**Institute for Psychoanalytic Education Affiliated with NYU School of Medicine**
Psychoanalyst, Psychoanalysis
1999 – 2007

Activities and Societies: American Psychoanalytic Association.

**New York University School of Medicine**
Fellowship, Addiction Psychiatry
1997 – 1999

Activities and Societies: Director, Outpatient Alcohol Clinic – Bellevue Hospital 1999

**New York University School of Medicine**
Resident, Psychiatry
1993 – 1997

Activities and Societies: Chief Resident, 1996/7

**University Of Cape Town, Groote Schuur Hospital**
Internship, Medicine, Surgery, Pediatrics and OBGYN
1990 – 1991

**University of the Witwatersrand**
Medical Doctor, Medicine and Surgery
1983 – 1989

Activities and Societies: National Union or South African Students, Medical Students Council, Chief Editor Aurich, Medical Student Newspaper

# ATTACHMENT D

What is LinkedIn?   Join Today   Sign In



# Aaron Metrikin, M.D.

Psychiatrist; Addiction Specialist;
Psychoanalyst : 115 Central Park West, Suite
12

188 connections

New York, New York | Medical Practice

| | |
|---|---|
| Current | Lenox Hill Hospital, Aaron S. Metrikin, M.D., New York University School of Medicine |
| Previous | Lenox Hill Hospital, NYU Langone Medical Center/Bellevue Hospital |
| Education | Institute for Psychoanalytic Education Affiliated with NYU School of Medicine |

## Search by name:

Over 300 million professionals are already on LinkedIn. Find who you know.

[ First Name ]   [ Last Name ]   🔍

Example: Jeff Weiner

## Ads You May Be Interested In



**Remote Control Solution**
Control your computer remotely with TeamViewer - Start now!

**Award Winning Printing!**
Now thru end of August, use code Aug35 at checkout and save 35%!

**Download Report**
Data Scientists Say Bad Data & Lack of Time for Analysis Are Top Obstacles

## Join LinkedIn and access Aaron's full profile. It's free!

As a LinkedIn member, you'll join 300 million other professionals who are sharing connections, ideas, and opportunities.

- See who you know in common
- Get introduced
- Contact Aaron directly

[ View Aaron's Full Profile ]

---

## Experience

### Attending Psychiatrist

Lenox Hill Hospital

July 2000 – Present (15 years 2 months) | Greater New York City Area



Voluntary Faculty
Teaching Staff for Residents and Medical Students in the Department of Psychiatry

---

### Owner

Aaron S. Metrikin, M.D.

July 1997 – Present (18 years 2 months) | 115 Central Park West, Suite 12, New York, New York

Highly experienced psychiatrist, addiction specialist and psychoanalyst in private practice on Upper West Side of Manhattan. Specialist services include outpatient and in-patient detoxification, interventions, Buprenorphine management for opioid dependence, psychodynamic therapy, couples therapy, drug counseling and relapse prevention. Close to all public transportation.

---

### Clinical Assistant Professor, Department of Psychiatry

New York University School of Medicine

1997 – Present (18 years) | New York, New York

**🔷 NYU**

Attending Psychiatrist on Voluntary Faculty



**Director, Consultation Liaison Services, Department of Psychiatry**

Lenox Hill Hospital

July 2005 – June 2007 (2 years) | New York City

**Director, Buprenorphine Treatment and Research Program**

NYU Langone Medical Center/Bellevue Hospital

January 1999 – June 2000 (1 year 5 months)

## Skills

| Treatment | Psychotherapy | Adolescents | Crisis Intervention | Family Therapy |
| CBT | Psychiatry | Mental Health | Clinical Supervision | Post Traumatic Stress |
| Dual Diagnosis | Addiction Recovery | Mindfulness | Group Therapy |
| Psychoanalysis | See 4+ |

## Education

**Institute for Psychoanalytic Education Affiliated with NYU School of Medicine**

Psychoanalyst, Psychoanalysis

1998 - 2007

Activities and Societies: American Psychoanalytic Association

**New York University School of Medicine**

Fellowship, Addiction Psychiatry

1997 - 1998

Activities and Societies: Director, Outpatient Alcohol Clinic - Bellevue Hospital 1999

**New York University School of Medicine**

Resident, Psychiatry

1993 - 1997

Activities and Societies: Chief Resident, 1996/7

**University Of Cape Town, Groote Schuur Hospital**

Internship, Medicine, Surgery, Pediatrics and OBGYN

1990 - 1991

**University of the Witwatersrand**

Medical Doctor, Medicine and Surgery

1983 – 1989

Activities and Societies: National Union of South African Students, Medical Students Council, Chief Editor Auricle, Medical Student Newspaper



## View Aaron's full profile to...

* See who you know in common
* Get introduced
* Contact **Aaron** directly

[ View Aaron's Full Profile ]

Not the Aaron Motsoaledi, M.D. you're looking for? View more

LinkedIn member directory: a b c d e f g h i j k l m n o p q r s t u v w x y z more  |  Browse members by country

© 2016  |  User Agreement  |  Privacy Policy  |  Community Guidelines  |  Cookie Policy  |  Copyright Policy  |  Guest Controls

# ATTACHMENT E

*Aaron S. Metrikin, M.D.*
*115 Central Park West*
*Suite 12*
*New York, New York  10023*
*(212) 988-6230*
*ametrikin@verizon.net*

TIN:077829138
NPI:1861563124

Zappin/Comfort
C/O Harriet Cohen

Mar 31, 2015

---

**For professional services**

Expert Psychiatric Witness
$700/hr

March 16, 2015

5 hours @$700/hour - lost revenue due to
last minute cancellation of court proceedings.
(I was able to reinstate 3 hours of clinical practice)

Total          **$3,500.00**

# ATTACHMENT F

At the Matrimonial Term, Part 20, of the
Supreme Court of the State of New York,
held in and for the County of New York, at
the Courthouse thereof, 60 Centre Street,
New York, New York, on the 13th day of
February, 2015.

PRESENT: HON. DEBORAH A. KAPLAN
-------------------------------------------------X
ANTHONY ZAPPIN,

                          Plaintiff,              Decision and Order

        -against-                                 Index No. 301568/2014

CLAIRE COMFORT,

                          Defendant.
-------------------------------------------------X
-------------------------------------------------X
CLAIRE COMFORT,

                          Plaintiff,

        -against-                                 Index No. 301578/2014
                                                          313020/2014
ANTHONY ZAPPIN,

                          Defendant.
-------------------------------------------------X
-------------------------------------------------X
The People of the State of
New York Ex. Rel. ANTHONY ZAPPIN,
acting on behalf of ██████ ZAPPIN, an infant

                          Petitioner,

        -against-                                 Index No. 350075/2014

CLAIRE COMFORT,

                          Respondent.
-------------------------------------------------X

IT IS HEREBY ORDERED: that an evidentiary hearing in the above captioned matters is scheduled for March 5, 2015 at 10 a.m, March 6, 2015 at 10 a.m, March 9, 2015 at 10 a.m., March 10, 2015 at 10 a.m., March 12, 2015 at 10 a.m., and March 13, 2015 at 10 a.m. A decision and order concerning the consolidation of these matters for trial shall be issued separately.

The parties are directed to contact Dr. Alan Ravitz immediately to schedule a date and time for his continued testimony. The parties and the attorney for the child are further directed to file and serve an updated witness list on or before March 2, 2015.

This constitutes the decision and order of the court.

ENTER:

Hon. Deborah A. Kaplan
J.S.C.

**DEBORAH A. KAPLAN**
**J.S.C.**

2

# APPENDIX

# EXHIBIT V

 **Department of Health**

ANDREW M. CUOMO
Governor

HOWARD A. ZUCKER, M.D., J.D.
Commissioner

SALLY DRESLIN, M.S., R.N.
Executive Deputy Commissioner

August 27, 2015

Anthony J. Zappin
194 West 10th Street, Apt. D1
New York, NY 10014

OPMC # 15-08-4682

Dear Mr. Zappin:

In accordance with New York State (NYS) Public Health Law Section 230, the Office of Professional Medical Conduct (OPMC) has reviewed your August 7, 2015 correspondence regarding Aaron Metrikin, M.D. This office is responsible for investigating allegations of professional misconduct by physicians, physician assistants and specialist assistants. We assessed the allegations you raised and the physician's actions in the context of New York State Education Law Section 6530 that defines the parameters of medical misconduct.

You allege that Dr. Metrikin was not qualified to "do a peer review of a forensic child custody report and is over billing for his services.

Physicians in New York State are entitled to develop their medical opinion statements. OPMC's authority and jurisdiction falls under administrative law. If at some time in the future Dr. Metrikin's actions or reports are determined by court/legal action to be a violation of law, then that instance would be reported to our office for further review and determination. Disputes concerning the cost of services rendered by a physician are not among those definitions of misconduct.

We have concluded that the circumstances described in your correspondence do not constitute prosecutable professional misconduct in the practice of medicine. The information that you have supplied will be retained in our confidential files and no further action will be taken.

Sincerely,

M. Donovan
Central Intake Unit
Office of Professional Medical Conduct

# APPENDIX
# EXHIBIT W

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X

ANTHONY ZAPPIN,

                                    Plaintiff,        **AFFIDAVIT OF**
                                                      **ANTHONY ZAPPIN**
          -- against --
                                                      Index No. 301568/14

CLAIRE COMFORT,

                                                      Mot. Seq. #20
                                    Defendant.

--------------------------------------------------------------------X

STATE OF NEW YORK      )
                       : ss
COUNTY OF NEW YORK     )

ANTHONY ZAPPIN, being duly sworn, deposes and says:

1.      I submit this affidavit in support of my August 10, 2015 application for an emergency stay of the Court's July 22, 2015 Order requiring that I pay Harriet Newman Cohen attorneys' fees by August 7, 2015 (Mot. Seq. #12). I have not sought the requested relief in this Court or any other court. Furthermore, I notified counsel on August 5, 2015 that I intend to seek the emergency relief requested herein. (See Ex. 1, Aug. 5, 2015 E-mail from A. Zappin.)

## A.      My Financial Assets

2.      Per my updated Statement of Net Worth dated August 10, 2015 ("Updated SNW") attached hereto as Exhibit 2, excluding retirement accounts totaling $23,071.17, the sole asset of any value is a Ford Mustang automobile.[1] As discussed below, I am in the process of selling the Ford Mustang in order to satisfy Ms. Cohen's counsel fees. The assets previously stated in my

_____

[1] With respect to the Ford Escape purchased during the marriage, Ms. Comfort and I owe $9,547.29 on the loan. The car is only worth approximately $11,000 in its current condition.

March 3, 2015 affidavit were substantially depleted by counsel fees and expert expenses incurred as a result of this litigation. My current liabilities are over $94,000.00, almost exclusively incurred as a result of this litigation.

3.    My income of $230,000 per year currently equates to approximately $5,700 in net income every two weeks. (*See* Ex. 3, Aug. 7, 2015 Mintz Levin Pay Stub.) The cost of supervised access is between $5,700 and $6,500 a month. (*See* Ex. 4, Aug 6, 2015 CFS Invoice.) My remaining salary goes to such things as rent and utilities ($3,000 per month), necessities for Reid like clothing, diapers and educational toys (approximately $500 per month), servicing of student and automobile loans (approximately $550 per month), litigation expenses in this matter (approximately $1,000 - $2,000 per month), medical expenses (between $1,600 and $1,975 per month) and of course food and necessities for myself. Since the commencement of this litigation, I have incurred substantial credit card debt to fulfill these financial obligations. (*See* Ex. 2, Zappin Updated SNW.)

4.    In order to maximize my take-home pay, I no longer contribute to my 401k account at Mintz Levin as per the attached pay stub.[2] (*See* Ex. 3, Aug. 7, 2015 Mintz Levin Pay Stub.) I do contribute to my health savings account in the amount of $107 per paycheck. This helps to defray the costs of the high deductible in my health plan and my out-of-pocket medical expenses.[3]

---

[2] Ceasing the contribution to my 401k at Mintz Levin resulted in a $300 increase in my bi-weekly paycheck. Also, the Court's reference to my contributions to my 401k plan at the July 22, 2014 hearing appears to be based on my old pay stub from Latham & Watkins from April 2014.

[3] My in-network deductible is $2,000 per year and $5,000 per year for out-of-network providers. My psychiatrist, Dr. Robert Brooks, is an out-of-network provider whose monthly bills range from $1,500 - $1,850 per month. The contributions to my health savings account help defer the cost of my sessions with Dr. Brooks.

2

## B. Attempts to Satisfy the Ms. Cohen's Counsel Fees

5. I respectfully request that the Court grant an immediate stay of its July 22, 2015 Order for Mot. Seq. #12 requiring a total payment to Ms. Cohen by August 7, 2015, particularly to permit me time to sell the Ford Mustang. Furthermore, due to my financial circumstances, a payment plan for Ms. Cohen's fees is reasonable and warranted. I ask that the Court modify the July 22, 2015 Order to permit me to pay Ms. Cohen in installments of $1,000 per month and pay her the proceeds of the sale of the Ford Mustang once it is sold to satisfy her counsel fees.

6. In light of the above financial constraints, I am attempting to satisfy the amount owed to Ms. Cohen as soon as possible. I sent her a check for $2,000 on August 6, 2015. Additionally, I sent a check for $2,500 to her for Dr. Metrikin's retainer.

7. Also, on August 6, 2015, I sent Ms. Cohen a letter proposing a payment schedule for the fees owed. Specifically, I asked if Ms. Cohen would agree to a payment schedule whereby I would pay her $1,500 on the first of each month. (See Ex. 5, Aug. 6, 2015 Ltr. to H. Cohen.) Additionally, I represented to her that I am in the process of selling the Ford Mustang and will pay her the proceeds immediately once it is sold.[4] Unfortunately Ms. Cohen has refused that offer and any attempt to try to work out a payment schedule. (See Ex. 6, Aug. 8, 2015 E-mail from H. Cohen.) It appears she will be seeking a money judgment. In light of my offer to pay Ms. Cohen to the best of my ability, a money judgment that will destroy my credit helps no one and is to the detriment of the child.

---

[4] After the Ford Mustang was paid off in November 2013, the title was sent by Ford Motor Credit to the parties' prior marital residence in Washington, DC. Since Ms. Comfort forced the sale of the house around that time, the title was lost. I have contacted both Ford Motor Credit and the West Virginia Department of Motor Vehicles to try to have a new title issued. It appears that it will take a few more weeks, hopefully no later than the end of August 2015, for the West Virginia Department of Motor Vehicles to issue a new title so the car can be sold.

3

## C.    Ms. Cohen Misrepresented the Amount She Has Been Paid by Ms. Comfort

8.    It should be noted that contrary to Ms. Cohen's assertion in her sworn affirmation

of March 3, 2015 seeking counsel fees (Mot. Seq. #12),[5] Ms. Comfort's financial records indicate

that as of April 21, 2015 (nearly two months after Ms. Cohen's motion) she had only paid Ms.

Cohen $6,841.92 of the $18,286.32 in fees owed up to January 1, 2015.[6] (*See* Ex. 7, April 21,

2015 Financial Discovery.) Accordingly, Ms. Comfort appears to be in arrears of at least

$11,444.46 to Ms. Cohen as of April 21, 2015. Why Ms. Cohen did not and has not pursued a

money judgment or file any motion to enforce the Court's orders concerning payment of her fees

against Ms. Comfort is unclear.

9.    A stay of execution of the July 22, 2015 Order (Mot. Seq. #12) is warranted given

the discrepancies in Ms. Cohen's statements in her affirmations and Ms. Comfort's financial

records. Since the Court relied on Ms. Cohen's statements at the July 22, 2015 hearing, both the

Court and myself are entitled to an opportunity to explore the status of fees owing to Ms. Cohen

---

[5] In her affirmation of March 3, 2015, Ms. Cohen swore under penalty of perjury that Ms. Comfort had paid all of her fees through January 31, 2015. Specifically, Ms. Cohen stated that:

> Ms. Claire Comfort, the defendant mother in the matrimonial action and the respondent in the *Habeas Corpus* proceeding is current through January 31, 2015 on her court ordered obligations for 50% of my fees payable under the Court's August 11, 2014 and October 27, 2014 Orders of Appointment. Ms. Comfort has paid the undersigned her one-half ($5,000) of the court-ordered retainer fee of $10,000 as well as her one-half of the invoices sent to her by CRSS for the invoice(s) covering the period August 11, 2014 to January 31, 2015 for the Matrimonial Action and October 27, 2014 through January 31, 2015 for the *Habeas Corpus* Proceeding.

(Mar. 3, 2015 Cohen Aff. at fn. 9 (Mot. Seq. #12).)

[6] Ms. Comfort's April 21, 2015 production was in response to a March 31, 2015 Subpoena *Duces Tecum* requesting that she provide: "All document sufficient to show the source of payment for any services rendered by ... Harriet Cohen on behalf of Reid Zappin since Harriet Cohen's appointment by the Court as Attorney for the Child ...." (Ex. 8, Mar. 31, 2015 Subpoena *Duces Tecum*.)

4

by Ms. Comfort. More importantly, however, if Ms. Cohen is allowing Ms. Comfort to pay her fees in installments and in light of the financial disparity of the parties as shown herein, I should be entitled to a similar treatment as Ms. Comfort and afforded a payment schedule to satisfy Ms. Cohen's counsel fees.

## D.    Reallocation of the Fees May Be Warranted

10.    Since the commencement of this litigation in April 2014, Ms. Comfort has failed to provide any updated financial information concerning her compensation from Weil Gotshal & Manges LLP ("Weil Gotshal"). However, press releases and other documentation publicly available from Weil Gotshal indicate that Ms. Comfort is earning a $250,000 per year salary and received a bonus of at least $70,000 for a total compensation of approximately $320,000 in 2014.[7] (*See* Ex. 8, Nov. 25, 2014 Weil Gotshal Bonus Press Release; Ex. 9, Weil Gotshal Pay Scale.) It should be further noted that Ms. Comfort will receive a bonus of $85,000 in just a few months. (*See* Ex. 8.) With my salary being $230,000 and a bonus of $2,000, Ms. Comfort will make well over $100,000 per year more than me.[8]

11.    Given that Ms. Comfort earns almost 50% more than me and that I have supervised access costs of between $5,700 and $6,300 per month, the percentage of fees payable to Ms. Cohen should be reallocated both retroactively and prospectively. Equity and fairness demands that based on Ms. Comfort's income, she should be required to pay 70% of Ms. Cohen fees and 30% should be afforded to me.

---

[7] Ms. Comfort may have received a higher bonus since there is a discretionary "kicker" component above the base of $70,000.

[8] In the event that Ms. Comfort is disputing the above characterization of her compensation, she should produce documents to that effect.

5

### E.    Ms. Comfort's HIPAA Releases

12.    In the Court's July 22, 2015 Order (Mot. Seq. #15), Ms. Comfort was ordered to provide HIPAA waivers for her medical records from her treating psychologist Msses. Kelly Peck and Kate Walker in Washington State. However, Ms. Comfort is withholding HIPAA waivers releasing her psychotherapy notes from her sessions with both psychologists. These notes are both relevant and necessary for the November 2015 custody and access trial.

13.    Since these medical records reside in Washington State, it will take a substantial amount of time to obtain local subpoenas, serve the subpoenas and return responsive documents. Given that the custody and access trial is looming, Ms. Comfort should be ordered to produce the proper executed HIPAA waivers within twenty-four (24) hours of service of an order to show cause on this application to ensure the records are available for trial.

Dated:          August 10, 2015
                New York, NY                          ANTHONY ZAPPIN

Sworn to before me this
16th day of August, 2015

Notary Public

Johnny M. Fields
Notary Public, State of New York
No. 01FA6293785
Qualified in New York County
Commission Expires December 16th, 2017

6

# EXHIBIT 9

# Associate Bonus Watch: 3 More Firms Match Simpson

By STACI ZARETSKY

5 Comments / 23 Shares / Nov 25, 2014 at 6:00 PM

### WEIL GOTSHAL — MEMORANDUM — 2014 BONUSES

The Management Committee is pleased to announce our 2014 bonus payments for Associates in good standing. Bonuses will be paid on January 30, 2015. All bonuses will be subject to the customary prorations. Salary increases for elevation in class year will be paid on January 30th and will be retroactive to January 1st.

On behalf of all Weil Partners, thank you for your hard work and dedication over the past year.

| Class Year | 2014 Overall Strong Bonus |
|---|---|
| 2014 | $15,000 prorated |
| 2013 | $15,000 |
| 2012 | $25,000 |
| 2011 | $40,000 |
| 2010 | $55,000 |
| 2009 | $70,000 |
| 2008 | $85,000 |
| 2007 | $100,000 |
| 2006 | $100,000 |
| 2005 & More Senior | case by case |

PREVIOUS   1   2   3   4