UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ANTHONY ZAPPIN,

                              Plaintiff,

              - against -

MATTHEW F. COOPER,                                              Case No. 16-cv-5985-KPF
a Justice of the Supreme Court
of the State of New York, in his
individual and personal capacity,

                              Defendant.
-------------------------------------------------------------- X

**PLAINTIFF ANTHONY ZAPPIN'S MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANT
MATTHEW F. COOPER'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Anthony Zappin
1827 Washington Blvd.
Huntington, WV 25701
(304) 654-6195 (tel.)
anthony.zappin@gmail.com
*Plaintiff, Pro Se*

Plaintiff Anthony Zappin ("Plaintiff") submits his opposition to Defendant Matthew F. Cooper's ("Justice Cooper") motion to dismiss the November 8, 2016 Amended Complaint ("Amended Complaint") in this action.  Plaintiff asserts various tort claims and a constitutional claim under 42 U.S.C. § 1983 for Justice Cooper's unlawful and extrajudicial actions of publishing and personally disseminating to the media a September 18, 2015 sanctions decision ("Sanctions Decision") in Plaintiff's matrimonial matter, *Zappin v. Comfort*, Index No. 301568/14 (Sup. Ct. N.Y. Cnty.)  ("*Zappin v. Comfort*").  As alleged in the Amended Complaint, Justice Cooper made knowingly and demonstrably false statements in the Sanctions Decision concerning Plaintiff that were designed to irreparably harm Plaintiff's reputation and professional standing.  Justice Cooper now asserts various legal theories requesting that this Court dismiss the Amended Complaint.  As explained below, Justice Cooper's motion to dismiss lacks merit and should be denied.

## STATEMENT OF FACTS

In order to fully address the numerous legal contentions Justice Cooper raises in his motion to dismiss, Plaintiff hereby incorporates the facts as alleged in the Amended Complaint as if fully set forth in this opposition memorandum.

## LEGAL STANDARD

In deciding a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *SEC v. Lyon*, 529 F. Supp.2d 444, 449 (S.D.N.Y. 2008).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A motion to dismiss must be denied unless "it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court's function on a motion to dismiss is not to "weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Beldon*, 754 F.2d 1059, 1067 (2d Cir. 1985). The issue in a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support his claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

## ARGUMENT

In moving to dismiss the Amended Complaint, Justice Cooper asserts a smorgasbord of legal doctrines ranging from absolute immunity to sovereign immunity to collateral estoppel in an apparent attempt to see what may stick.  Each contention, however, misses the mark.  In fact, in his motion to dismiss, Justice Cooper fails to address controlling precedent and applicable law, much of which was raised in the Amended Complaint, that holds his actions to be unlawful and extrajudicial.  Moreover, each ground Justice Cooper asserts as a basis for dismissal would require this Court to fundamentally transform the allegations in the Amended Complaint.  As explained more fully below, Justice Cooper's motion to dismiss should be denied in its entirety.

## I.    Justice Cooper Is Not Entitled to Judicial Immunity

Justice Cooper asserts that this action is barred by the doctrine of absolute judicial immunity.  This contention fails as a matter of law.  As set forth below, Justice Cooper is not entitled to judicial immunity for the publication and dissemination of the Sanctions Decision.

### A.    Justice Cooper's Dissemination of the Sanctions Decision Was Extrajudicial

The Amended Complaint alleges that Justice Cooper personally disseminated the Sanctions Decision to several news outlets and tabloid journalists in an effort to generate maximum coverage and publicity for the decision. (*See* Am. Compl. at ¶ 25.)  Justice Cooper conceded on-the-record

at a November 2, 2015 hearing that, at his direction, his law clerk sent the Sanctions Decision to *The New York Law Journal* at the e-mail address "decisions@alm.com." (*See id*. at ¶ 27.) The address "decisions@alm.com" is not an official channel of communication between the New York State judiciary and *The New York Law Journal*. Rather, that address is a tip line, which is published in every edition of *The New York Law Journal* to solicit "decisions of interest" from the public. (*See* Zappin Decl. at ¶ 2, Ex. 1.)

In addition to providing the Sanctions Decision to *The New York Law Journal*, the Amended Complaint alleges that Justice Cooper also disseminated the decision to at least three reporters at three different news outlets. (*See* Am. Compl. at ¶¶ 30, 34.) Counsel for *The New York Law Journal* confirmed that Justice Cooper provided the Sanctions Decision directly to its reporter Benjamin Bedell. (*See id*. at ¶ 31.) Mr. Bedell wrote an article entitled "Attorney Sanctioned for Handling His Own Divorce," which repeated several of Justice Cooper's false and defamatory statements contained in the Sanctions Decision. (*See id*. at ¶ 33, Ex. 8.) The Amended Complaint alleges that further investigation confirmed that Justice Cooper provided Mr. Bedell an unsigned advanced draft copy of the Sanctions Decision, which differed from the version provided to the parties and entered in the New York County Clerk's Office. (*See id*. at ¶ 32, Ex. 7.)

Similarly, the Amended Complaint alleges that Justice Cooper provided advanced copies of the Sanctions Decision to Julia Marsh at *The New York Post* and Barbara Ross at *The Daily News*. (*See id*. at ¶ 34.) Both reporters were in possession of copies of the Sanctions Decision well before its publication. (*See id*. at ¶ 34.) Furthermore, both reporters confirmed to Plaintiff and his counsel at an October 6, 2015 hearing in *Zappin v. Comfort* that they had received it from Justice Cooper's chambers. (*See id*. at ¶ 35.) On September 22, 2015, Julia Marsh wrote an article in *The New York Post* entitled "Patent-lawyer a 'Fool' for Representing Himself in Divorce Battle:

3

Judge." (*See id.* at ¶ 36, Ex. 9.)  Likewise, on September 22, 2015, Barbara Ross wrote an article

entitled "Manhattan Lawyer Fined $10G for Bulling Judge and Attorney in His Divorce Case."

(*See id.* at ¶ 37, Ex. 10.)  Both articles substantially repeated Justice Cooper's false and defamatory

statements about Plaintiff.

Based on Justice Cooper's own admissions and the allegations in the Amended Complaint,

Justice Cooper is not entitled to judicial immunity for his *ex parte* contact with the media to

personally disseminate the Sanctions Decision.  The New York Court of Appeals has addressed

the very issue raised in this case and concluded that a judge personally sending a decision to *The*

*New Y*ork Law Journal for publication is <u>not</u> a judicial act.  The Court of Appeals has stated:

> Even though that be true, a judge has no official duty in connection with any
> publication of opinions except in official reports.  The publication of an opinion
> begins when the judicial decision is complete, and though in some degree connect
> with the exercise of a judicial function, ***since the law imposes upon the judge no***
> ***duty to published opinions in unofficial reports, acts connected with such***
> ***publications are not performed by the judge in his judicial capacity.  The judge's***
> ***rights and duties there are the same as those of any private person and if he***
> ***chooses to act he must be held liable like any other person for damages resulting***
> ***from a wrongful act*** ….

*Murray v. Brancato*, 290 N.Y. 52, 57 (N.Y. 1942) (emphasis added).  In the First Department, *The*

*New York Law Journal* is still an unofficial reporter of judicial decisions.  This is confirmed by

N.Y. Judiciary Law § 91(1), which only recognizes the publication as an official publication for

notices, calendars and advertisements in the First Department – not judicial decisions.

Accordingly, Justice Cooper's admitted personal dissemination of the Sanctions Decision to *The*

*New York Law Journal* was <u>not</u> a judicial act, extinguishing any claim of judicial immunity.

Justice Cooper's attempts to disregard the Court of Appeal's decision in *Murray v.*

*Brancato* are unavailing.  First, Justice Cooper cites the Second Department case *Sassower v.*

*Finnerty*, 96 A.D.2d 585, 587-88 (2nd Dept. 1983) for the proposition that "subsequent cases have

held that arranging to publish a case in the *Law Journal* 'is now a judicial act entitled to absolute immunity.'" (Def. Br. at 12.)  Unlike the First Department, after the Court of Appeals decision in *Murray v. Brancato* the Second Department explicitly recognized *The New York Law Journal* as an official reporter for decisions.  *See* N.Y. Judiciary Law § 91(2).  Thus, the case is inapplicable.

Next, Justice Cooper cites *Beary v. West Publishing Co.*, 763 F.2d 66, 69 (2d. Cir. 1985) and *Nationwide Tarps, Inc. v. Midwest Canvas Corp.*, 228 F.Supp.2d 202, 211 (N.D.N.Y. 2002) for the proposition that *Murrary v. Brancato* is no longer good law.  (*See* Def. Br. at 12, fn. 4.)  The courts in *Beary* and *Nationwide Tarps* only rejected *dicta* in the *Murray v. Brancto* decision expressing doubt as to its view on the application of the Fair Report Privilege to the facts of the case.[1]  Neither the Second Circuit nor the Northern District of New York disturbed *Murray v. Brancato*'s holding with respect to judicial immunity. In fact, New York State courts continue to cite *Murray v. Brancato* today for its holdings with respect to judicial immunity.  *See Jordan v. Schlesinger*, 27 N.Y.S.2d 874, 875 (1st Dept. 2016); *Munroe v. Park Ave. South Management*, 952 N.Y.S.2d 11, 12 (1st Dept. 2012); *Lowman v. Dankert*, 835 N.Y.S. 795, 796 (4th Dept. 2007).

Justice Cooper lastly asserts that "in an age of online legal research … the distinction between releasing decisions to official and unofficial reporters is untenable." (Def. Br. at 12, fn. 4.)  In support of this contention, he cites the District of Massachusetts, which has stated:

> But with the advent of electronic research and **with the requirement that court filings be available on public court websites**, it makes no sense to consider these opinions unavailable or unpublished.

---

[1] In *Murray v. Brancato*, the Court of Appeals expressed doubt as to the application of the Fair Report Privilege (now codified in N.Y. Civil Rights Law § 74) was "intended to apply to the publication by a judge of an opinion written by himself." *See Murray*, 290 N.Y. at 59.  Today, the rejection of *Murray v. Brancato*'s views in *dicta* of the application of the Fair Report Privilege is no surprise given that changes in that statute requiring reinterpretation of that branch of the decision.  In 1943 when *Murray v. Brancato* was decided, the Fair Report Privilege permitted an exception to the privilege upon a showing of "actual proof of malice." *See id.* at 58.  When the statute was re-codified in 1962 as N.Y. Civil Rights Law § 74, the Fair Report Privilege was modified to provide absolute immunity for a "fair and true report of any judicial proceeding."

*Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 648 F.Supp.3d 226, 235-36 (D. Mass. 2009) (emphasis added).  Justice Cooper's contention and citation to *Vertex Surgical* is undercut by the fact that the Sanctions Decision is <u>not</u> publicly available on the New York State's eCourts system when searching the *Zappin v. Comfort* matter.  In fact, the eCourts system has a "Document Search" that specifically allows a user to "[f]ind published decisions by index number and county." (*See* Zappin Decl. at ¶ 3, Ex. 2.)  A search for *Zappin v. Comfort* returns "No documents found." (*See id*. at ¶ 4, Ex. 3.)  Indeed, as discussed *infra*, the Sanctions Decision is considered a sealed matrimonial filing by the New York County Clerk's Office and the only reason it is publicly available is because of Justice Cooper's extrajudicial actions of disseminating it publicly.

Justice Cooper's argument in support of judicial immunity entirely fails to address his extrajudicial conduct of providing an unsigned draft of the decision to reporter Benjamin Bedell at *The New York Law Journal* as well as his providing advanced copies of the Sanctions Decision to Julia Marsh at *The New York Post* and Barbara Ross at *The Daily News* (which Justice Cooper does not deny in his motion to dismiss).  "It is well-settled that making allegedly false statements to the news media does not qualify as a judicial act."  *Barret v. Harrington*, 130 F.3d 246, 260-61 (6th Cir. 1997).  Justice Cooper's *ex parte* communications with these reporters was akin to releasing a press release to the media containing false and defamatory statements, which has been held not to be a judicial act.  *See Yoder v. Workman*, 244 F.Supp.3d 1077, 1080 (S.D.W.Va. 2002) ("A press release about the recusal order was not a judicial act and, as such, absolute judicial immunity does not shield its author.")  In sum, Justice Cooper's actions of disseminating the Sanctions Decision – as well as unsigned advanced versions of it – to a handful of bloggers and tabloid reporters in order to generate publicity for the decision cannot be characterized as a judicial

act or "judicial in nature." *See Dupree v. Bivona*, 2009 WL 82717, at *1 (2d Cir. 2009) ("Judicial immunity … does not extend to acts that are 'not judicial in nature' ….").

B.     Justice Cooper Acted in Complete Absence of All Jurisdiction
       In Imposing Sanctions on Plaintiff Extinguishing Judicial Immunity[2]

Justice Cooper is not entitled to judicial immunity in this case because he acted wholly in the absence of subject matter jurisdiction in determining the merits of Plaintiff's OPMC complaint. In the Sanctions Decision, Justice Cooper's basis for imposing a $10,000 sanction on Plaintiff was because Plaintiff filed a complaint against the Attorney for the Child's retained expert, Dr. Aaron Metrikin with the New York Office of Professional Medical Conduct ("OPMC").  (*See* Am. Compl., Ex. 1 at 18-22.)  In imposing sanctions, Justice Cooper necessarily determined the merits of Plaintiff's OPMC complaint deeming it "frivolous."  (*See id*.)  However, Justice Cooper had no subject matter jurisdiction whatsoever to adjudicate the merits of a complaint filed in administrative action before an independent quasi-judicial body, particularly where Justice Cooper concedes that the aggrieved party, Dr. Metrikin, had not petitioned the court for relief.

The doctrine of judicial immunity "protects judges from civil actions even when they perform judicial acts in excess of their authority, even when such acts are allegedly done maliciously or corruptly." *Maestri v. Jutfosky*, 860 F.2d 50, 52 (2d Cir. 1988), *citing Stump v. Sparkman*, 435 U.S. 349 (1978).  "The courts, however, have made a critical distinction:  a judge who performs a judicial act in excess of his or her jurisdiction is immune to civil suit; a judge who acts in the clear absence of jurisdiction is not."  *Id*.  In other words, "[n]ot protected … are those judicial acts carried out in clear absence of jurisdiction over the subject matter involved." *Ramirex v. Platt*, 1988 WL 127452, at *1 (E.D.N.Y. 1988).

---

[2] Plaintiff raised this jurisdictional challenge in the First Department, but it was not decided by that court. *See Zappin v. Comfort*, 49 N.Y.S.3d 6 (1st Dept. 2017).

No reasonable person could conclude that Justice Cooper had jurisdiction to determine the merits of Plaintiff's OPMC complaint.  Here, it was the Attorney for the Child who demanded that Justice Cooper determine the merits of Plaintiff's complaint filed with the OPMC, not the purported aggrieved party Dr. Metrikin.  The Attorney for the Child had no standing to demand relief on behalf of Dr. Metrikin, however.  This is confirmed by Justice Cooper's own finding in the Sanctions Decision that the Attorney for the Child was not acting on Dr. Metrikin's behalf in seeking damages or sanctions and that there was "no evidence that the expert was even aware of the relief being sought."  (Am. Compl., Ex. 1 at 22.)  Moreover, the Attorney for the Child did not allege, nor could she prove, that Plaintiff caused an injury-in-fact to her in order to confer standing upon herself that would allow her to demand any relief for Plaintiff's OPMC complaint.  *See Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir.) (To establish standing a litigant "must therefore allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief.")

"In order for the court to rule in this or in any case, it must have jurisdiction; there must be before it a justiciable case or controversy, brought by a person who has standing to bring it, when it is ripe for decision."  *Ecodyne Corp. v. Croll-Reynolds Eng. Co., Inc.*, 491 F. Supp. 194, 195 (D. Conn. 1979).  "Standing goes to the jurisdictional basis of a court's authority to adjudicate a dispute."  *Allen v. Wright*, 468 U.S. 737, 750-751 (1984); *see also* Siegel N.Y. Practice § 136, at 232 (4th Edition).  Where the Attorney for the Child was not an aggrieved party, there was no genuine controversy, and where there is no genuine controversy, there is no subject matter jurisdiction.[3]  *Stark v. Goldberg*, 746 N.Y.S.2d 280, 281 (1st Dept. 2002); *Axelrod v. New York Teachers' Retirement Sys.*, 546 N.Y.S.2d 489, 490 (3rd Dept. 1989).

---

[3] It can further be said that Justice Cooper unlawfully usurped subject matter from the OPMC by acting as a *sua sponte* appellate court reviewing the OPMC's determination to dismiss Plaintiff's complaint against Dr. Metrikin.

Justice Cooper also had no authority to sanction Plaintiff for conduct undertaken outside the context of the *Zappin v. Comfort* litigation.  Subject matter jurisdiction with respect to sanctions in New York State courts is conferred by 22 NYCRR § 130-1.1(a).  The rule authorizes a court of record to impose sanctions against a party or an attorney who engages in "frivolous" conduct in the course of an action, as defined by 22 NYCRR § 130-1.1(c).  Plaintiff's OPMC complaint was filed with a wholly separate and independent quasi-judicial administrative body pursuant to N.Y. Public Health Law § 230 and outside the purview of the *Zappin v. Comfort* litigation.  New York State trial courts have repeatedly held that they lack jurisdiction to impose sanctions on litigants for actions taken outside the context of the litigation or in separate actions.  *See Matter of Passalacqua*, 2008 N.Y. Misc. LEXIS 8184, at *22 (Sup. Ct. Nassau Cnty. Dec. 9, 2008); *Canzona v. Atanasio*, 2012 N.Y. Misc. LEXIS 6797, at *6 (Sup. Ct. Suffolk Cnty. Aug. 16, 2012); *Nichols v. Branton*, 995 N.Y.S.2d 450, 455 (Sup. Ct. Columbia Cnty. Sept. 24, 2014).

Thus, Justice Cooper knowingly acted in the complete absence of jurisdiction by passing on the merits of Plaintiff's OPMC complaint foreclosing any entitlement to judicial immunity.  In this case, Justice Cooper's conduct is even more extreme than that in the *Maestri* matter determined by the Second Circuit.  In that case, Judge Joseph Jutkofsky was denied judicial immunity for signing warrants outside of his territorial jurisdiction.  *See Maestri*, 860 F.2d at 53.  In the instant case, Justice Cooper rendered a decision where he himself concedes there was no aggrieved party seeking relief, which was in apparent unlawful review of an administrative decision and where the actionable conduct took place totally outside the context of the pending litigation and in another

---

While the OPMC dismissed the complaint determining that it was a billing dispute, Justice Cooper, sitting as an apparent reviewing court of the OPMC's determination, went further to make a determination on the merits that Plaintiff's complaint was "frivolous."  (*See* Am. Compl., Ex. 1 at 18-22.)  The Supreme Court only has jurisdiction to review an agency determination upon the commencement of an Article 78 proceeding, which was not filed in this case.  *See Chinatown Apartments, Inc. v. Lee*, 641, N.Y.S.2d 483, 485 (Civil Ct. N.Y. Cnty. 1995) (restating the "general rule that challenges to an administrative determination may only be made in an Article 78 proceeding").

judicial forum entirely.   Unlike Judge Jutkofsky's conduct, Justice Cooper's usurpation of authority indelibly stigmatized a litigant, destroyed two legal careers and irreparably harmed an infant child.  Accordingly, Justice Cooper cannot make a colorable claim to judicial immunity.

C.    Justice Cooper's Publication of the Sanctions Decision Was Extrajudicial As It Violated N.Y. Domestic Relations Law § 235 Sealing Matrimonial Files

In his motion to dismiss, Justice Cooper places all his eggs in the basket that he is entitled to judicial immunity because the Sanctions Decision was not "statutorily sealed" under N.Y. Domestic Relations Law § 235 ("DRL 235").  But even Justice Cooper's contention with respect to DRL 235 misinterprets the law and lacks merits.

A judicial officer acts in clear absence of jurisdiction "where a statute plainly divests a court of jurisdiction over the performance of a certain act."  *Topolski v. Wrobleski*, 2014 WL 2215761, at 4 (N.D.N.Y. 2014).  Here, DRL 235 plainly divests a judicial officer of authority to release matrimonial files for public viewing:

> ***An officer of the court*** with whom the proceedings in a matrimonial action … [is] filed, or his clerk, either before or after termination of the suit, ***shall not permit a copy of any*** of the pleadings, affidavits, ***findings of fact, conclusions of law,*** judgment of dissolution, written agreement of separation or memorandum thereof, or testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party, except by order of the court.

(emphasis added); *see also Danziger v. Hearst Corp.*, 304 N.Y. 244, 248 (N.Y. 1952).

Since DRL 235 was codified in 1962, it has been amended six times in an effort to provide greater confidentiality to litigants.  *See Mason v. Cohn*, 108 Misc.2d 674, 676 (Sup. Ct. N.Y. Cnty. 1981) ("[DRL 235] declares such [matrimonial] files to be confidential.  Amendments to section 235 … indicate a continuing legislative intent to main such confidentiality.")  Indeed, the Court of Appeals has held that "[DRL 235], which prohibits the taking of copies, or even the inspection of records in matrimonial proceedings by any one other than the parties or their counsel, manifests a

clear legislative design that those proceedings be kept secret and confidential." *Shiles v. News Syndicate Co.*, 27 N.Y.2d 9, 13 (1970); *see also Stevenson v. News Syndicate Co.*, 96 N.Y.S.2d 751, 753 (2nd Dept. 1950).

Justice Cooper contends that DRL 235 only "prohibits the release of specifically enumerated documents in matrimonial actions," which does not include "motion decisions or orders." (Def. Br. at 11.) Justice Cooper's only support for this theory are citations to published matrimonial cases, many of which are redacted with initials or first names only.[4] (*See id.* at 12.) Unfortunately, Justice Cooper's argument fails for several reasons.

As an initial matter, DRL 235 permits the unsealing of cases "by order of the court." Justice Cooper provides no evidence that the courts in his cited cases issued their decisions without an unsealing order. With respect to the Sanctions Decision, Justice Cooper does not contend that it was accompanied by an unsealing order as permitted in DRL 235. Thus, in order for Justice Cooper's interpretation of DRL 235 to hold any water, he must show that the cited decisions were issued without an unsealing order, which he has not done.

Furthermore, courts in New York State do not share Justice Cooper's limited interpretation of DRL 235 and have repeatedly stated that the statute provides sealing for all "files" and "records" in matrimonial actions.[5] *See Kodsi v. Gee*, 864 N.Y.S.2d 9, 10 (1st Dept. 2008) ("[DRL] 235

---

[4] Justice Cooper also cites Judge Scheinkman's Practice Commentaries for the proposition that DRL 235 does not include court decisions and orders. (*See* Def. Br. at 11.) However, Judge Scheinkman provides no case law or statutory authority for his conclusion. Rather, his theory is the same as Justice Cooper's, *e.g.*, "the case reporters are replete with reported decisions" in matrimonial cases. Unfortunately, this reasoning does not withstand scrutiny.

[5] County Clerks in New York State have taken a similar view of matrimonial files. For instance, the Nassau County Clerk issued an informal opinion taking the position without limitation that "matrimonial records may not be released to any other person than a party, or the attorney or counsel of a party." (*See* Zappin Decl. at ¶ 5, Ex 4.) In New York County, only a party or their counsel may access matrimonial files. Thus, if this Court were to go to the New York County Clerk's Office and request a copy of the Sanctions Decision, it would be turned away. Additionally, the Sanctions Decision is not available on the state court's eCourts system maintained by the County Clerk's Office and is not returned when searching *Zappin v. Comfort* on eCourt's "Document Search" feature for published decisions. (*See id.* at ¶ 4.)

mandates that ***all papers filed*** in a matrimonial matter be designated as confidential" (emphasis added).); *Tornheim v. Blue White Food Prods. Corp.*, 901 N.Y.S.2d 307, 308 (2nd Dept. 2010) ("[DRL 235] prohibits a court employee from disseminating papers filed in a matrimonial action ...."); *Parker v. Parker*, 2 Misc.3d 484, 492 (Sup. Ct. Nassau Cnty. Dec. 8, 2003) (same).   In *Stevenson v. Hearst Consol Pub.*, 214 F.2d 902 (2d Cir. 1954), the Second Circuit broadly interpreted N.Y. Civil Practice Act 127 (the predecessor to DRL 235) to include a wife's supporting affidavit attached to a motion for alimony, even though the statute at the time only mentioned "pleadings or testimony."   Even Justice Cooper himself stated on the record that he took the view that the entire matrimonial file was "presumptively sealed" two months prior to issuing the Sanctions Decision.   (*See* Am. Compl. at ¶ 47.)

Most striking, Justice Cooper's contention fails based on the plain language of the statute. DRL 235 prohibits the dissemination of "findings of fact" and "conclusions of law."  As this Court is well-aware, findings of fact and conclusions of law are not always found in neatly titled documents, but more often than not are included in written decisions.  *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on facts without a jury... the court must find facts specially and state its conclusions of law separately.  The findings and conclusions … may appear in an opinion or memorandum of decision filed by the court."); *see also* CPLR 4213(b) ("The decision of the court may be oral or in writing and shall state the facts it deems essential.")  Indeed, courts in matrimonial matters in New York State have equated findings of fact and conclusions of law with written decisions required by CPLR 4213(b).  *See Stanford v. Union Labor Life Ins. Co.*, 345 N.Y.S.2d 928, 932-33 (Sup. Ct. Monroe Cnty. 1973).

Justice Cooper cannot dispute that "findings of fact" and "conclusions of law" in matrimonial cases are unquestionably protected from dissemination by DRL 235.  The statute,

moreover, does not discriminate as to the form of the document that they are contained in when they are filed.   In the instant case, Justice Cooper necessarily made "findings of fact" and "conclusions of law" throughout the Sanctions Decision.[6]  These findings included, for example, Justice Cooper's assertions that Plaintiff "harmed" his ex-wife and son, that Plaintiff made "postings" on the Internet about the Attorney for the Child, that Plaintiff's OPMC complaint was "frivolous" and that he acted in bad faith in filing it.  (*See generally* Am. Compl. at Ex. 1.)  Justice Cooper's motion to dismiss even concedes that he made findings of fact or "factual determinations" in the Sanctions Decision.  (*See* Def. Br. at fns. 5-6.)  Similarly, Justice Cooper made conclusions of law, such as his concluding that Plaintiff was not entitled to qualified immunity in filing the OPMC complaint.  (*See* Am. Compl., Ex. 1 at 18-22.)  The Sanctions Decision was absolutely entitled to the sealing protections of DRL 235 as a result.

In sum, Justice Cooper's contention that DRL 235 was not violated by the dissemination of the Sanctions Decision is contrary on prevailing case law, the established conduct of the judiciary, the conduct of county clerk's entrusted with matrimonial files and the plain language of the statute. By publishing and disseminating the Sanctions Decision, Justice Cooper engaged in conduct that was plainly prohibited by statute rendering his actions extrajudicial.  Accordingly, Justice Cooper is not entitled to judicial immunity for such conduct and may be held liable civilly.

## II.     The Eleventh Amendment Does Not Bar This Action
Against Justice Cooper in His Individual and Personal Capacity

Plaintiff's Amended Complaint seeks to hold Justice Cooper civilly liable in his individual and personal capacity for extrajudicial conduct, namely the publication and dissemination of the

---

[6] Justice Cooper's Sanctions Decision resulted in a judgment against Plaintiff.  *See* 22 NYCRR §130-1.2.  "It is fundamental that a judgment upon the merits must rest upon findings of fact express in some form either by the verdict of a jury, or by the findings of the court; otherwise, the judgment has nothing to support it."  *Jones v. Gould*, 129 N.Y.S 1038, 1040 (1st Dept. 1911).

13

Sanctions Decision to the media as discussed above. "Suits against state officials in their personal capacity are not barred by the Eleventh Amendment, even for actions required by their official duties." *New York State Correctional Officers & Police Benevolence Ass'n., Inc. v. New York*, 911 F.Supp.2d 111, 131 (N.D.N.Y. 2012); *see also Hafer v. Melo*, 502 U.S. 21, 22 (1991) (holding state official may be personally liable for actions taken in their official capacity). Justice Cooper's contention that this action is barred by Eleventh Amendment sovereign immunity disregards the allegations in the Amended Complaint and established precedent. His unfounded attempts to try to convert this matter into an official capacity suit should be denied.

### III.     The *Rooker-Feldman* Doctrine Does Not Bar This Action Where Plaintiff <u>Seeks Money Damages and Does Not Seek to Overturn the State Court Sanction</u>

Justice Cooper contends that this action is barred by the *Rooker-Feldman* doctrine because he contends that "the injuries alleges throughout the [Amended Complaint] – Plaintiff's purported reputational harm, emotional distress, loss of economic opportunity and the prejudice he claims to have suffered at the custody trial – were allegedly caused by the Sanctions Decision." (Def. Br. at 17.) This contention fundamentally misconstrues and misapprehends Plaintiff's claims. Plaintiff is not complaining of harm caused by the imposition of the sanction or Justice Cooper's issuance of the Sanctions Decision. What Plaintiff seeks relief from is Justice Cooper's separate and distinct unlawful extrajudicial conduct of publishing and disseminating the Sanctions Decision to the media and tabloid newspapers, which he knew contained false and inappropriate statements that would cause harm to Plaintiff. The *Rooker-Feldman* doctrine does not divest a federal court of jurisdiction of an "independent claim based on an injury not 'caused by' the state-court judgment, even if the claim denies a legal conclusion of the state court." *Estate of Keys v. Union Planters Bank, N.A.*, 578 F.Supp.2d 629, 637 (S.D.N.Y. 2008).

To highlight this point, Plaintiff does not seek injunctive relief or request that this Court overturn the imposition of the sanction.  Rather, Plaintiff has asked this Court in the Amended Complaint to award compensatory monetary damages for the harm Justice Cooper inflicted through his unlawful and extrajudicial conduct.  "*Rooker-Feldman* does not apply to … claims that only seek monetary damages or prospective injunctive relief and do not seek to overturn a [judgment]." *McKnight v. Middleton*, 699 F.Supp.2d 515, 516 (E.D.N.Y. 2010).

Moreover, in his motion to dismiss, Justice Cooper claims that *Rooker-Feldman* is applicable simply because it "would require this Court to review the accuracy of the state court's determination."  (Def. Br. at 17.)  This is not a basis for invoking the *Rooker-Feldman* doctrine when the alleged harm stems from an act independent of the simple issuance of the state court ruling.  In *Exxon Mobil v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 293 (2005), the Supreme Court held that the *Rooker-Feldman* does not deprive a district court of subject-matter jurisdiction:

> simply because a party attempts to litigate in federal court a matter previously litigated in state court.  If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party …, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*see also Hoblock v. Albany County. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005) ("[A] plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone run afoul of *Rooker-Feldman*.").  Thus, the *Rooker-Feldman* doctrine does not bar this action merely because this Court may make findings at odds with the Sanctions Decision.  Justice Cooper's reliance on the *Rooker-Feldman* doctrine is consequently without merit.[7]

---

[7] It should further be noted that should this Court determine Justice Cooper acted in clear absence of jurisdiction in determining the merits of Plaintiff's OPMC complaint and imposing sanctions, the Sanctions Decision would in effect be void.  "There is an exception to the *Rooker-Feldman* doctrine.  Courts have held that when a state court judgment is void, *Rooker-Feldman* does not apply."  *Rey v. Laureda*, 324 B.R. 499, 453 (E.D.N.Y. 2005).

## IV.   <u>Collateral Estoppel Does Not Apply to Plaintiff's Claims</u>

Justice Cooper erroneously contends that Plaintiff's claims that Justice Cooper made knowingly false and defamatory statements about Plaintiff are precluded based on the doctrine of collateral estoppel as those factual determinations were decided against Plaintiff in the Sanctions Decision.  "The doctrine of collateral estoppel bars religitation of an issue which has necessarily been decided in a prior action and is determinative of the issues disputed in the present action, ***provided that there was a full and fair opportunity to contest the decision*** now alleged to be controlling."  *Mahler v. Campagna*, 876 N.Y.S.2d 143, 144 (2nd Dept. 2009) (emphasis added). In the interests of fairness, "[d]oubts should be resolved against imposing preclusion."  *Beuchel v. Bain*, 97 N.Y.2d 295, 304-305 (N.Y. 2001).

Collateral estoppel cannot be applied in this case because Plaintiff had no opportunity to be heard on several of Justice Cooper's factual determinations and statements as they were not raised in the briefing papers and never previously litigated before the state court.[8]  This includes, but is not limited to, Justice Cooper's statements that Plaintiff:  (i) was unfit to practice law; (ii) had harmed his child (and ex-wife); (iii) attempted to subject his son to unnecessary medical exams; (iii) had intentionally delayed commencement of the trial; (iv) sent an inappropriate handwritten note to Judge Anthony Epstein; (v) made discourteous statements to opposing counsel, Robert Wallack; (vi) had paid no child support; and (vii) had used his law license as a tool to bully and intimidate.  (*See* Am. Compl. at Ex. 5.) And because they were not litigated in the motion

---

[8] Collateral estoppel can only be applied to determinations that are "essential to the decision."  *Yates v. U.S.*, 354 U.S. 298, 336 (1957).  "The rule is that a judgment does not work an estoppel as to unessential facts, even though put in issue by the pleadings and directly decided …." *In re Neal*, 427 N.Y.S.2d 432 (1st Dept. 1980).  Justice Cooper's basis for imposing sanctions on Plaintiff for the filing of the OPMC complaint against Dr. Metrikin.  (*See* Am. Compl., Ex. 1 at 18-22.)  The remaining factual determinations, the vast majority of which are provided as "background," were not necessary or essential to the imposition of sanctions warranting the application of collateral estoppel.

papers, Plaintiff was denied a full and fair opportunity to dispute them on appeal in the First Department where the record was constrained to only the motion papers underlying the interlocutory order, *i.e.,* the Sanctions Decision. *See* CPLR 5526; *see also* Am. Compl. at Ex. 5. It simply cannot be said that Plaintiff had a full and fair opportunity to litigate these factual determinations by Justice Cooper sufficient to apply collateral estoppel.

In the few instances where issues or factual contentions were discussed or mentioned in the underlying motion papers, Plaintiff did not have a full and fair opportunity to litigate because Justice Cooper deliberately and intentionally misrepresented the alleged facts in the ultimate Sanctions Decision. These factual determinations include, but are not limited to, Justice Cooper's assertion that Plaintiff: (i) concealed information from the OPMC in his complaint; and (ii) made "postings" on the Internet about the Attorney for the Child. (*See* Am. Compl. at Ex. 5.) Where a trial court judge deliberately and intentionally misrepresents and manufactures the parties' factual contentions in the ultimate decision, it cannot be said that the litigants had a full and fair opportunity to litigate those determinations.

Justice Cooper nonetheless contends that the Plaintiff is collaterally estopped from contesting his factual determinations because the First Department found that the Sanctions Decision was "amply supported" by the record.[9] (Def. Br. at 6.) This contention fails for two reasons. First, as discussed above, the record before the First Department only consisted of the underlying motion papers, which could not have supported all of Justice Cooper's ancillary and

---

[9] Justice Cooper points to the First Department's statement that Plaintiff had "fair notice" that sanctions were being considered in contending that Plaintiff had a full and fair opportunity to oppose the sanctions. (*See* Def. br. at 6.) This disregards the clear conflict between the Sanctions Decision that the Attorney for the Child's sanction request was initially raised in her reply papers (*see* Am. Compl., Ex. 1 at 20.) and the First Department's decision that states the Attorney for the Child requested sanctions in her moving affirmation.[9] *See Zappin v. Comfort*, 49 N.Y.S.3d 6, 7 (1st Dept. 2017). More importantly, the First Department's decision does not assert that Plaintiff had "fair notice" of every challenged factual determination and statement made by Justice Cooper in the Sanctions Decision. This includes the numerous ancillary and background statements made by Justice Cooper in the Sanctions Decision that were not a basis for imposing sanctions, but that are being contested in this proceeding as false and defamatory.

constructive findings dating back to the predecessor *Zappin v. Comfort* litigation in the District of Columbia.  Plaintiff simply did not have a full and fair opportunity to defend himself on appeal against all of Justice Cooper's factual determinations and attacks that were unrelated to the issues briefed in the two motion sequences on the limited record before the Appellate Division.

Second, and more importantly, in order to apply collateral estoppel, the issues must have been determined by a previous court.  In other words, "in order for a judgment to be preclusive, the issue in question must have been actually decided …."  *Postlewaite v. McGraw-Hill*, 333 F.2d 42, 48 (2d Cir. 2003).  The First Department's decision affirming the Sanctions Decision consisted of three conclusory paragraphs that lacked any analysis or detail.  *See Zappin v. Comfort*, 49 N.Y.S.3d 6 (1st Dept. 2017).  For instance, the First Department found that Plaintiff engaged in "unprofessional outrageous and malicious conduct on multiple occasions," but failed to provide any details or specificity as to what the purported conduct was.  *See id*.  It simply cannot be said that each and every one of Justice Cooper's over two dozen factually incorrect and false statements contained in the Sanctions Decision was "actually decided" by the First Department, particularly on the incomplete record before that court necessary to fully review those statements.  Accordingly, where the scope of an order is unclear, collateral estoppel should not be applied.  *See NAMA Holdings, Inc. v. Greenberg Traurig, LLP*, 880 N.Y.S.2d 34, 35 (1st Dept. 2009) ("Nor does the doctrine of collateral estoppel conclusively bar plaintiff's claim because the scope the scope of the arbitral ruling is not entirely clear ….").

V.   **The Amended Complaint Sufficiently Pleads Tort and Section 1983 Claims**

Justice Cooper claims that Plaintiff's Amended Complaint fails to state a claim.  In support of this contention, Justice Cooper largely relies on a rehashing of legal arguments proffered in

support of the various immunity, abstention and estoppel doctrines he raises.  All of these arguments fail for the reasons previously set forth above and more fully detailed below.

     A.    <u>Plaintiff Has Sufficiently Plead a Claim of Defamation</u>

Plaintiff has sufficiently plead each and every element of his defamation claim.  *See Rosner v. Amazon.com*, 18 N.Y.S.3d 155, 157 (2nd Dept. 2015).  The Amended Complaint asserts, in great detail, that Justice Cooper knowingly and intentionally published false statements concerning Plaintiff that harmed his reputation and professional standing.  (*See* Am. Compl. at ¶¶ 51-84, 142, Ex 5.)  The publication of the statements was without privilege or authorization.  (*See id*. at ¶¶ 46-50, 145.)  Justice Cooper's statements were made to multiple third parties.  (*See id*. at ¶¶ 25-37, 144.)  And, the Amended Complaint alleges that Justice Cooper's defamatory statements caused him special harm, *e.g.* the loss of his employment, and that certain statements were defamatory *per se*.  (*See id*. at ¶¶ 45, 51-84.)

Justice Cooper asserts that Plaintiff's defamation claim fails because Plaintiff "cannot show that Justice Cooper published the Sanctions Decision 'without privilege or authorization.'"  (Def. Br. at 20.)  As explained *infra* in Sections I(A)-(C), Justice Cooper's publication of the Sanctions Decision was neither privileged nor authorized as it was an extrajudicial act, which is confirmed by the Court of Appeal's decision in *Murray v. Brancato*, and was done in violation of N.Y. Domestic Relations Law § 235.  Moreover, Justice Cooper alleges that Plaintiff is collaterally estopped from challenging the falsity of the defamatory statements contained in the Sanctions Decision.  Again, as explained *infra* in Section IV, Justice Cooper's factual statements and determinations are not entitled to preclusive effect.  Accordingly, Justice Cooper's motion to dismiss on Plaintiff's defamation claim must be denied.

B.      Plaintiff Has Sufficiently Plead Intentional Infliction of Emotional Distress

Justice Cooper asserts that his conduct of merely publishing the Sanctions Decision was not "extreme or outrageous" sufficient to state a claim for intentional infliction of emotional distress ("IIED").   (Def. Br. at 21-22.)  However, he ignores the fact that the Amended Complaint sets forth in detail that he provided advanced copies of the Sanctions Decisions directly to a blogger and two of New York's most infamous tabloid, *The New York Post* and *The Daily News*.  (*See* Am. Compl. at ¶¶ 25-37.) As such, the facts of this case warrant a finding that Justice Cooper engaged in "extreme and outrageous," particularly given his role as a member of the judiciary.  Plaintiff can think of no more outrageous conduct than a judicial officer deliberately soliciting tabloid media attention to a private and confidential matrimonial proceeding, a proceeding in which Justice Cooper was entrusted to decide the well-being of an infant child.  Rather than carry out his judicial duty, he turned the child into tabloid fodder inflicting direct harm on the infant.  This was in addition to costing both Plaintiff and his ex-wife their jobs as attorneys at prominent law firms.[10]

Justice Cooper's remaining contentions are a question of fact for a jury.  The Amended Complaint sufficiently alleges a claim of IIED based Justice Cooper deliberately subjecting Plaintiff to intentional infliction of emotional distress by unlawfully disseminating the Sanctions Decision to tabloids with the intention of exposing Plaintiff to public ridicule.  (*See* Am. Compl. at ¶¶ 91-93.) As a result, Justice Cooper's motion to dismiss the IIED claim should be denied.

C.      Plaintiff Has Sufficiently Plead a Claim for Tortious Interference

In the Amended Complaint, Plaintiff alleges that Justice Cooper tortiously interfered with his business relations/prospective economic advantage, namely his employment.  (*See* Am. Compl.

---

[10] In addition to Plaintiff losing his job at *Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.*, Plaintiff's ex-wife was terminated from *Weil Gotshal & Manges LLP* in 2016 as a direct result of the publicity surrounding *Zappin v. Comfort* generated solely by Justice Cooper.

at ¶¶ 85-90, 153-156.) Plaintiff has plead detailed facts in the Amended Complaint sufficient to meet each element of tort and to state a claim for tortious interference. *See 2626 BWAY LLC v. Broadway Metro Assocs. LP*, 2011 WL 3631959, at *8 (Sup. Ct. N.Y. Cnty. Aug. 11, 2011).

Justice Cooper rehashes the contention that Plaintiff's tortious interference claim fails because the Sanctions Decision was not a "statutorily sealed" document enjoined from publication. (*See* Def. Br. at 22.)  Again, Justice Cooper's publication of the Sanctions Decision was neither privileged nor authorized and it was specifically prohibited by statute. *See infra* at Sections I(A)-(C).  Justice Cooper additionally contends that in publishing and disseminating the Sanctions Decision he did not intentionally interfere with Plaintiff's employment, "act[] solely out of malice, or use[] dishonest, unfair or improper means." (*Id.* at 23.)  Where the Amended Complaint alleges facts to support the allegation that Justice Cooper acted with malice and used dishonest means to harm Plaintiff, his intent is a question of fact that should be determined by a jury, not during the pleading stage. *See Konowitz v. Archway School Inc.*, 409 N.Y.S.757, 759 (2nd Dept. 1978) (holding that the issue of malice is a question of fact for the jury)

D.   Plaintiff Has Sufficiently Plead a Claim for *Prima Facie* Tort

Justice Cooper alleges that Plaintiff's *prima facie* tort claim fails because the Amended Complaint does not plausibly allege that Justice Cooper published the Sanctions Decision with malice or that he intended to harm Plaintiff.  (*See* Def. Br. at 23.) This contention defies the objective facts of this case.  If Justice Cooper's intended purpose of issuing the Sanctions Decision was merely to "resolve several outstanding motions and cross-motions in the Divorce Action," as he claims, then there was no need to publish or disseminate the Sanctions Decision.  And if he truly felt the need to publish the Sanctions Decision to "instruct and edify the matrimonial bar concerning the risks of self-representation in matrimonial cases," as he claims, then he could have

21

achieved his desired result by redacting the names on the Sanctions Decision and restraining himself from disseminating an unsigned draft copy to a blogger at *The New York Law Journal* and reporters at *The New York Post* and *The Daily News*.  Or, Justice Cooper could have truthfully represented to the public that Plaintiff **was represented by counsel**.  (*See* Am. Compl. at ¶ 41.)

With these facts in mind, there can be no question that Justice Cooper intended nothing less than complete destruction of Plaintiff's reputation and professional livelihood. Justice Cooper's intent to not only harm Plaintiff, but to destroy his livelihood can be inferred by the fact that Justice Cooper personally disseminated the Sanctions Decision to a blogger and two tabloid reporters to generate publicly.  (*See id.* at ¶¶ 25-37, 144.)  It can further be inferred from the fact that Justice Cooper intentionally made false statements and contrived factual determinations to impugn Plaintiff's character and professional standing.  (*See id.* at ¶¶ 51-84, 142, Ex. 5.) Accordingly, Justice Cooper's motion to dismiss the *prima facie* tort claim must be denied, particularly where Plaintiff has alleged sufficient facts to support the claim.  *See id.* at ¶¶ 158-161; *Freihofer v. Hearst Corp.* 490 N.Y.S.2d 735, 741 (N.Y. 1985).

> E.  Plaintiff Has Sufficiently Plead a Constitutional Violation Pursuant to 42 U.S.C. § 1983 under *Powers v. Coe*, 728 F.2 97 (2d Cir. 1984)

Plaintiff's Amended Complaint asserts a claim under 42 U.S.C. § 1983 based on Justice Cooper deliberately seeking pretrial publicity through the unlawful dissemination of the Sanctions Decision that deprived Plaintiff of a fair custody trial in *Zappin v. Comfort*.  Plaintiff alleges this constitutional claim under precedent set forth in *Powers v. Coe*, 728 F.2d 97 (2d Cir. 1984) and *Jovanovic v. City of New York*, 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006).  Those cases stand for the proposition that "[t]o prevail upon a claim for denial of a fair trial due to prejudicial publicity, a plaintiff must establish three elements:  (1) that there were improper leaks; (2) that the

plaintiff had *in fact* been denied a fair trial; and (3) that other remedies were not available, or were used to no avail to alleviate the effects of the leaks." *Jovanovic*, 2006 WL 2411541 at *14.

Plaintiff has sufficiently plead all three elements of the § 1983 claim in the Amended Complaint.   First, Plaintiff has alleged an improper leak, *e.g.*, Justice Cooper's unlawful dissemination of the Sanctions Decision to the media that contain confidential and statutorily sealed information.  (*See* Am. Compl. at ¶ 94.)  Next, the Plaintiff has alleged numerous facts to support a finding that he was denied a fair custody trial.  (*See id*. at ¶¶ 95-137.)  Lastly, Plaintiff did attempt to remedy the prejudice through the only means available, *i.e.*, recusal of Justice Cooper from the trial.  (*See id*. at ¶ 96.)  Plaintiff's request was denied.  (*See id*.)

In his motion to dismiss, Justice Cooper does not address *Powers v. Coe* or *Jovanovic v. City of New York*, even though they were identified in the Amended Complaint as the basis for Plaintiff's § 1983 claim.  Instead, Justice Cooper recycles his prior collateral estoppel and judicial immunity arguments.  Moreover, Justice Cooper contends, without addressing the allegations in the Amended Complaint, that the "allegation that the publication of the Sanctions Decision prejudiced [Plaintiff] at the ensuing custody trial is wholly illogical."  (*See* Def. Br. at 25.)  This argument simply does not withstand scrutiny.

Justice Cooper's unlawful publication and dissemination of the Sanctions Decision denied Plaintiff a fair custody trial in two key respects.  First, Justice Cooper's unlawful dissemination of the Sanctions Decision to the media containing false statements concerning Plaintiff's character and professional competence was the direct result of Plaintiff's loss of employment less than two months before the custody and access trial.  (*See* Am. Compl. at ¶ 45.)  Plaintiff was unable to bear the extreme financial burden of the custody trial to adequately defend himself after the loss of his employment.  (*See id*. at ¶ 98-108.)  This was particularly so where Justice Cooper imposed

onerous financial hurdles on Plaintiff just to get evidence admitted (*e.g.*, through demands for unnecessary expert witnesses) and witnesses on the stand (*e.g.*, the forensic custody evaluator, Wendy Comfort), while ordering Plaintiff to pay the Attorney for the Child and her law partner Paul Kurland a wholly exorbitant $600 per hour each in addition to supervised visitation at a rate of $150 per hour, which Plaintiff ultimately could not withstand.

Second, and more importantly, Justice Cooper's unlawful dissemination of the Sanctions Decision denied Plaintiff a neutral arbiter at the custody and access trial as a result of the pretrial publicity.  (*See id*. at ¶ 95.)  When Justice Cooper reached out to the press to disseminate the Sanctions Decision that viciously attacked Plaintiff, he instantly placed his credibility at odds with Plaintiff and publicly implicated himself as an "interested" party in the case.  Several appellate courts have harshly criticized judges who have contacted the media concerning a pending cases finding that it compromises the appearance of impartiality.  *See U.S. v. Cooley*, 1 F.3d 985, 995 (10th Cir. 1993) (holding that a judge's deliberate choice to inject "strong views" on a pending case in the media forum "conveyed an uncommon interest … in the subject matter" and "created the appearance that the judge had become an active participant in [the litigation]"); *In re Boston's Children First*, 233 F.3d 164, 170 (1st Cr. 2001) (noting that, in highly publicized cases, "even ambiguous comments [by a judge] may create the appearance of impropriety" and "in fact, the very rarity of such public statements, and the ease with which they may be avoided, make it likely that a reasonable person will interpret such statements as evidence of bias"); *see also Ligon v. City of New York*, 736 F.3d 118, 124 (2d Cir. 2013).

In this case, it was no different.  With the Sanctions Decision, Justice Cooper had already indicated to the public that he had predetermined that Plaintiff was a "bad person" and that he was intent on shutting Plaintiff down.  In fact, Justice Cooper forecasted his ultimate findings in *Zappin*

*v. Comfort* in the Sanctions Decision.  For instance, Justice Cooper wrote that Plaintiff had "harmed" his child and his ex-wife without hearing so much as a shred of evidence.  (*See* Am. Compl., Ex. 1 at 3.)  He repeatedly attacked Plaintiff as dishonest and abusive.  (*See id*. at 2-4, 18-24.)  Justice Cooper unnecessarily and callously placed the world on notice that Plaintiff's visitation with his child was supervised.  (*See id*. at 13-14.)  And in conjunction with his vicious attacks at Plaintiff's character, motivations and professional competence, Justice Cooper alerted the world that Plaintiff had been accused by his wife of domestically abusing her, something that should have remained confidential throughout the proceeding.  (*See id*. at 2, 7.)  Like a self-fulfilling prophecy, Justice Cooper made findings of fact in his February 29, 2016 custody decision to ensure that every one of these determinations and statements in the Sanctions Decision was supported, reinforced and indefinitely echoed.

No reasonable person could conclude that Plaintiff had any chance whatsoever at the custody and access trial in *Zappin v. Comfort* with Justice Cooper as the sole factfinder after he publicly placed his credibility at issue by disseminating of the Sanctions Decision to the media. Where Plaintiff attempted to contest Justice Cooper's conduct in publishing the Sanctions Decision and his factual determinations as untrue and manufactured, Justice Cooper used the remainder of the proceeding to attack Plaintiff's credibility, motivations and livelihood as a means of bolstering his own veracity and the validity of the Sanctions Decision.  (*See* Am. Compl. at ¶¶ 94-138.) Without question, Justice Cooper's publication and dissemination of the Sanctions Decision denied Plaintiff his right to a full and fair custody trial.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that Defendant's motion to dismiss the Amended Complaint be denied in its entirety.

Dated:      April 27, 2017
                Huntington, WV

_____

ANTHONY ZAPPIN
1827 Washington Blvd.
Huntington, WV 25701
(304) 654-6195 (tel.)
anthony.zappin@gmail.com
*Plaintiff, Pro Se*